# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

------------------------------------------------

| | |
|---|---|
| DENNIS MELCHIOR; LINDA LETIER; TERESA KIRK-JUNOD; ROBERT HAWRYLAK; JOSEPH F. BROCK; JR.; RAYMOND G. HEFFNER; JOHN MADDEN; THOMAS D. GREEN; MAUREEN A. GREEN; DOMINICK BELLIZZIE; JANET KAMINSKI; CYNTHIA BUTLER; WILLIAM BUTLER; EDWARD WOODS; GLEN W. COLE, JR.; JOHN BUTLER; ROBERT BETZ; MICHAEL D. GROFF; SHAWN P. CARLIN; MARCY H. KERSHNER; JOHN W. HARVEY; LAURIE H. SUTHERLAND; WILLIAM M. SUTHERLAND; BRUCE CHASAN; RANDAL BOYER, JR. AS POA FOR CHANTAL BOYER; ROY MILLS; JACE A. WEAVER; GEORGE S. ROADKNIGHT; ROBERT DELROCCO; LEONARD GOLDSTEIN; DAVID JAKEMAN; FRED BARAKAT; NEIL BENJAMIN; MARK NEWKIRK; MICHAEL SWAN; BARBARA BARR; MICHAEL BARR; JOSEPH CAMAIONI; JORDAN LEPOW; MARILYN SWARTZ; ROBERT L. YORI; JOAN L. YORI; MARK A. TARONE; RAYMOND D. FERGIONE; RAYMOND BRUCE BOEHM; ROBIN LYNN BOEHM; PATRICIA CROSSIN-CHAWAGA; CHARLES P. MOORE; JAMES E. HILTON; DOUGLAS C. KUNKEL; BONNIE LEE BEEMAN; ERNEST S. LAVORINI; ELIZABETH ANN DOYLE; JOSEPH GREENBERG; PAUL J. DAVIS; WILLIAM P. BETZ, JR.; and DONALD DEMPSEY, on behalf of themselves and all others similarly situated, | Case No.: 2:20-cv-05562 <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| vs. | |
| DEAN VAGNOZZI; CHRISTA VAGNOZZI; ALBERT VAGNOZZI; ALEC VAGNOZZI; SHANNON WESTHEAD; JASON ZWIEBEL; | |

------------------------------------------------

```
-----------------------------------------------------------
ANDREW ZUCH;
MICHAEL TIERNEY;
PAUL TERENCE KOHLER;
JOHN MYURA;
JOHN W. PAUCIULO;
ECKERT SEAMANS CHERIN & MELLOTT, LLC;
SPARTAN INCOME FUND, LLC;
PISCES INCOME FUND LLC;
CAPRICORN INCOME FUND I, LLC;
MERCHANT SERVICES INCOME FUND, LLC;
COVENTRY FIRST LLC;
PILLAR LIFE SETTLEMENT FUND I, L.P.;
PILLAR II LIFE SETTLEMENT FUND, L.P.;
PILLAR 3 LIFE SETTLEMENT FUND, L.P.;
PILLAR 4 LIFE SETTLEMENT FUND, L.P.;
PILLAR 5 LIFE SETTLEMENT FUND, L.P.;
PILLAR 6 LIFE SETTLEMENT FUND, L.P.;
PILLAR 7 LIFE SETTLEMENT FUND, L.P.;
PILLAR 8 LIFE SETTLEMENT FUND, L.P.;
ATRIUM LEGAL CAPITAL, LLC;
ATRIUM LEGAL CAPITAL 2, LLC;
ATRIUM LEGAL CAPITAL 3, LLC;
ATRIUM LEGAL CAPITAL 4, LLC;
FALLCATCHER, INC.;
PROMED INVESTMENT CO., L.P.; and
WOODLAND FALLS INVESTMENT FUND, LLC,

                              Defendants.
-----------------------------------------------------------
```

## <u>INTRODUCTION</u>

Plaintiffs Dennis Melchior, Linda Letier, Teresa Kirk-Junod, Robert Hawrylak, Joseph

Brock, Raymond G. Heffner, John Madden, Thomas D. Green, Maureen A. Green, Dominick

Bellizzie, Janet Kaminski, Cynthia Butler, William Butler, Edward Woods, Glen W. Cole, Jr.,

John Butler, Robert Betz, Michael D. Groff, Shawn P. Carlin, Marcy H. Kershner, John W.

Harvey, Laurie H. Sutherland, William M. Sutherland, Bruce Chasan, Randal Boyer, Jr. as POA

for Chantal Boyer, Roy Mills, Jace A. Weaver, George S. Roadknight, Robert DelRocco, Leonard

Goldstein, David Jakeman, Fred Barakat, Neil Benjamin, Mark Newkirk, Michael Swan, Barbara

Barr, Michael Barr, Joseph Camaioni, Jordan Lepow, Marilyn Swartz, Robert L. Yori, Joan L.

Yori, Mark A. Tarone, Raymond D. Fergione, Raymond Bruce Boehm, Robin Lynn Boehm, Patricia Crossin-Chawaga, Charles P. Moore, James E. Hilton, Douglas C. Kunkel, Bonnie Lee Beeman, Ernest S. Lavorini, Elizabeth Ann Doyle, Joseph Greenberg, Paul J. Davis, William P. Betz, Jr., and Donald Dempsey ("Plaintiffs") bring this Complaint individually and on behalf of all others similarly situated, against Dean Vagnozzi; Albert Vagnozzi; Alec Vagnozzi; Shannon Westhead; Jason Zwiebel; Andrew Zuch; Michael Tierney; Paul Terence Kohler; John Myura; John W. Pauciulo; Eckert Seamans Cherin & Mellott, LLC; Spartan Income Fund, LLC; Pisces Income Fund LLC; Capricorn Income Fund I, LLC; Merchant Services Income Fund, LLC; Coventry First LLC; Pillar Life Settlement Fund I, L.P.; Pillar II Life Settlement Fund, L.P.; Pillar 3 Life Settlement Fund, L.P.; Pillar 4 Life Settlement Fund, L.P.; Pillar 5 Life Settlement Fund, L.P.; Pillar 6 Life Settlement Fund, L.P.; Pillar 7 Life Settlement Fund, L.P.; Pillar 8 Life Settlement Fund, L.P.; Atrium Legal Capital, LLC; Atrium Legal Capital 2, LLC; Atrium Legal Capital 3, LLC; Atrium Legal Capital 4, LLC; Fallcatcher, Inc.; Promed Investment Co., L.P.; and Woodland Falls Investment Fund, LLC (collectively, "Defendants"),[1] and allege as follows upon personal knowledge as to themselves and their own acts and experience, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this action pursuant to the federal Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), and state law claims for negligent misrepresentation, breach of fiduciary duties, conspiracy, fraud, unjust enrichment, aiding and

---

[1] Pursuant to one or more orders entered by the U.S. District Court for the Southern District of Florida in the case styled *Securities and Exchange Commission v. Complete Business Solutions Group, Inc., et al.*, Case Nos. 9:20-cv-81205 and 1:20-cv-23071 ("SEC Action"), litigation against certain Defendants named herein is stayed. The instant Complaint is not intended to violate the terms of such stay, but rather, is brought for purposes of satisfying and/or tolling the applicable statutes of limitations for Plaintiffs' and the proposed Class' claims against any such individuals or entities.

abetting fraud, and aiding and abetting breach of fiduciary duties, to recover millions of dollars' worth of investments by individuals who were fraudulently induced by Defendants to use their hard-earned savings to purchase unsecured securities backed by risky merchant cash advance loans to small businesses.

2.       Defendant Dean J. Vagnozzi ("Vagnozzi"), and his corporate alter ego, non-party ABetterFinancialPlan.com LLC d/b/a/ A Better Financial Plan ("ABFP") – through numerous pass-through shell companies dominated and controlled by Vagnozzi – and Defendants John W. Pauciulo ("Pauciulo"),[2] and Eckert Seamans Cherin & Mellott, LLC ("Eckert Seamans," together with Pauciulo, the "Eckert Defendants"), conspired to advertise, market and sell ABFP merchant cash advance investments, which are unregistered securities, as a purportedly safer and more profitable alternative to registered securities like stock and bonds ("Merchant Cash Advance Investments").

3.       Vagnozzi is well known in the Greater Philadelphia region for his ubiquitous AM radio advertisements promoting ABFP and its four types of investments – merchant cash advance funds, life settlement funds, litigation funding, and real estate funds. However, Vagnozzi's radio advertisements never mentioned that in May 2019, he agreed to pay a state-record $490,000 to settle charges by the Pennsylvania Department of Banking and Securities that he was selling securities without a license. At the time, Dulcey Antonucci, spokesperson for the Pennsylvania Department of Banking and Securities and Secretary Robin L. Wiessmann, reported: "This is the largest settlement with an individual in department history."[3] The investments that the Pennsylvania Bureau of Securities Compliance and Examinations charged Vagnozzi for selling

---

[2] All of Plaintiffs' allegations against Pauciulo are limited to his involvement in the scheme alleged herein in his capacity as partner at Eckert Seamans.
[3] Joseph N. DiStefano, "Record Pa. fines against broker Vagnozzi, Philly's Par Funding," Philadelphia Inquirer (July 27, 2019), https://www.inquirer.com/business/par-funding-20190727.html

through ABFP without proper registration consist of high-interest notes issued by a Philadelphia-based small-business lending company, Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding").[4]

4.     Vagnozzi and ABFP also failed to disclose to prospective investors the fact that in February 2020, the Texas Securities Board issued an Emergency Cease-And-Desist Order against ABFP for fraud violations in connection with its offer and sale of ABFP Merchant Cash Advance Investments.

5.     Nor did Vagnozzi's ABFP radio ads and other marketing to potential investors ever disclose the nearly $500,000 settlement he entered into with the SEC on July 14, 2020, after a lengthy investigation, "for his offering and selling unregistered securities in violation of Section 5 of the Securities Act and acting as an unregistered broker-dealer in violation of Section 15(a) of the Exchange Act, in connection with the sale of securities…."[5] These penalties arose from Vagnozzi's and ABFP's promotion and sale of millions of dollars of illegal unregistered investment funds, named Pillar 1 through 8, comprised of ownership interests in life settlement contracts during the period from April 2013 through August 2017. In addition, from May 2018 through September 2018, Vagnozzi (through ABFP) acted as an unregistered broker and earned transaction-based compensation by raising funds for a separate entity, Fallcatcher, Inc., without being associated with a registered broker-dealer in violation of Section 15(a) of the Exchange Act.[6] Prior violations of state and federal securities laws by Vagnozzi and ABFP are unrelated to the SEC action filed on July 24, 2020 (the "SEC Action"). *See Securities and Exchange Commission*

---

[4] *Id.*
[5] *See* Order Instituting Administrative and Cease-And-Desist Proceedings Pursuant to Section 8A of the Securities Act Of 1933, Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, And Imposing Remedial Sanctions and a Cease-And-Desist Order (SEC).
[6] *Id.*

*v. Complete Business Solutions Group, Inc., et al.*, Case Nos. 9:20-cv-81205 and 1:20-cv-23071 ("SEC Action").

6.      Non-party Par Funding, also a defendant in the SEC Action, offers fast money to small-business owners like truckers or restaurateurs at interest rates as high as 400%. Par Funding gets around lending regulations by claiming that they are not making loans, but instead are buying the revenue a business will generate in the future at a discount. According to a Bloomberg News article, this "new industry is in some ways a reincarnation of the loan-sharking rackets of a bygone era. Cash-advance companies use a legal document called a confession of judgment to stack the deck against borrowers, just as payday lenders did a century ago. Small-business lending was once infiltrated by the mob. Today it's again a magnet for crooks, including some with alleged ties to organized crime."[7]

7.      The controller of Par Funding, Joseph LaForte ("LaForte"), goes by the aliases "Joe Mack," "Joe Macki," and "Joe McElhone," in an effort to conceal his identity as a twice-convicted felon. LaForte founded Par Funding with his wife, Lisa McElhone ("McElone") in 2011 "after serving more than two years in prison for stealing $14 million in a real estate scam and running an illegal gambling operation."[8]

8.      The complaint filed by the SEC on July 24, 2020 ("SEC Complaint"), alleges that Par Funding, LaForte and McElhone "operated a scheme wherein they raise investor money through unregistered securities offerings." According to the SEC Complaint, "[f]rom August 2012 until approximately December 2017, Par Funding primarily issued promissory notes and offered them to the investing public directly and through a network of sales agents," which included

---

[7] Zachary R. Mider and Zeke Faux, "Fall Behind on These Loans? You Might Get a Visit From Gino," Bloomberg News, December 20, 2018, https://www.bloomberg.com/graphics/2018-confessions-of-judgment-visit-from-gino/
[8] *Id*.

Defendant Vagnozzi.[9]   However, the SEC Complaint contends that "[t]his changed in early January 2018, when Par Funding learned it was under investigation by the Pennsylvania Department of Banking and Securities for violating state securities laws through its use of unregistered agents."[10]

9.      In September 2018, Par Funding falsely claimed that it had terminated its agreements with its unregistered sales agents. In truth, Par Funding had identified a new way to fuel its loans using so-called "Agent Funds" exclusively created to sell their own promissory notes to the investing public through unregistered securities offerings. The Agent Funds are compensated by Par Funding through Par Funding promissory notes that offer higher rates of return than those offered by the Agent Funds' notes, which the Agent Funds must pay to investors.[11]

10.      Defendant Vagnozzi, through his alter ego companies Non-parties ABFP and ABFP Management Company, LLC, recruits individuals to create the Agent Funds, offering them the opportunity to open a "turnkey" Agent Fund ready to issue and sell securities,  equipped with training, marketing materials, and an "Agent Guide," as well as a Private Placement Memorandum, corporate registration, and offering materials created by Pauciulo in his capacity as a partner of Eckert Seamans and as longtime counsel to Vagnozzi and ABFP. The Agent Funds are managed by Vagnozzi through his company ABFP Management Company, LLC, and are monitored and coordinated by his associate, Perry S. Abbonizio. Vagnozzi operates Agent Funds which issue, offer, and sell unregistered securities in the form of purported promissory notes and limited partnership interests to investors.[12]

---

[9] *See* SEC Complaint.
[10] *Id*.
[11] *Id*.
[12] *Id*.

11.     In order to carry out their fraudulent scheme, Defendants created and disseminated false and misleading radio advertisements and engaged in deceptive in-person solicitations in order to persuade individuals, including retirees and others on fixed incomes, to purchase merchant cash investments pursuant to false and misleading Private Placement Memoranda and Subscription Agreements with a series of Delaware limited liability companies and limited partnerships that were formed, promoted and syndicated by Defendants.

12.     At all times relevant to this action, Defendant Vagnozzi falsely represented to the investing public that the ABFP Merchant Cash Advance Investments were safer than anything available on Wall Street, claiming:

> I make ZERO guarantees.  Never have.  But the 4 investments we have offer higher returns with ***less risk than anything you can find on wall-street*** and without using annuities.  It is that simple…. We have a few investments that traditionally require a lot of capital to get involved with…which is why you won't find them at Vanguard….or any other traditional cookie cutter advisor.[13]

(emphasis added). Defendant Pauciulo, in his capacity as a partner of Eckert Seamans and as longtime counsel to Vagnozzi and ABFP, has attended numerous ABFP investment seminars and participated in investor conference calls and other communications with ABFP investors, and thus, would have been aware of this and similar statements concerning risks and expected returns of the ABFP investments (including merchant cash advance funds, life settlement funds, litigation funding, and real estate funds). However, given the continued existence of such advertisements, it is apparent that Pauciulo and Eckert Seamans did not take any measures to correct or repudiate such statements.

---

[13] Post by Dean Vagnozzi,*White Coat Investor* (Apr. 8, 2019), available at https://www.whitecoatinvestor.com/forum/personal-finance-and-budgeting/4957-has-anyone-experience-with-dean-vagnozzi-039-s-financial-plan/page5

13.     Vagnozzi has regularly made countless similar statements concerning the purported low-risk and relative safety of investments in ABFP funds through radio advertisements, investing seminars with free steak dinners, and even in interviews with reporters. By way of example, Vagnozzi's radio ads for ABFP merchant cash investments state: "Every single one of those investors earns a 10 percent annual return with their interest check deposited into their bank account on the same day every month and all of their principal is return to them after just one year."[14] It is likely that Defendants Pauciulo and Eckert Seamans, given their position as longtime counsel to Vagnozzi and ABFP, and in view of Paucilo's attendance at ABFP investment seminars, participation in investor conference calls and other communications with ABFP investors, would have been aware of this and many other advertisements for ABFP's investment offerings. Yet, given the persistence of such advertisements, it is apparent that Pauciulo and Eckert Seamans took no steps to correct or repudiate such statements.

14.     Defendant Vagnozzi would have been unable to carry out his fraudulent scheme without the counsel and assistance of long-time co-conspirators Pauciulo and Eckert Seamans, who have advised Vagnozzi and the ABFP entities for more than 16 years. By creating, preparing and disseminating sophisticated Private Placement Memoranda and Subscription Agreements for the ABFP investments signed by Plaintiffs and the Class, as well as the underlying promissory notes between ABFP and Par Funding, Pauciulo and Eckert Seamans have given Vagnozzi and ABFP the veneer of being a financially stable, trustworthy method of investing with minimum risk potential.

---

[14] Joseph N. DiStefano, "Record Pa. fines against broker Vagnozzi, Philly's Par Funding," Philadelphia Inquirer (July 27, 2019), https://www.inquirer.com/business/par-funding-20190727.html

15.     Indeed, Vagnozzi's relentless boasting in ABFP's advertising, seminars, and other public forums of his long-time affiliation with Eckert Seamans and the firm's key role in creating the ABFP investments lends credibility to these high risk, unregistered investment vehicles:

> *We worked with one of Philadelphia's largest law-firms* [sic] to put an infrastructure together to allow like minded [sic] investors the opportunity to pool their money to take advantage of these *proven investments that have historically delivered much better returns with a lot less risk*. Simple [sic]. Traditional advisors are restricted by a broker dealer [sic] telling them what they can offer their clients. I am not restricted. I am NOT a stock broker.[15]

(emphasis added)..

16.     For his part, Defendant Pauciulo has publicly acknowledged his role in creating the ABFP investments, Private Placement Memoranda, and Subscription Agreements. However, these trappings of financial establishment are nothing more than a sham. In reality, the underlying merchant cash advance agreements were the lowest grade paper imaginable.

17.     As part of their sales pitch, Defendants routinely provided prospective investors with information sheets that falsely represented, *inter alia,* that the Merchant Cash Advance Investments were insured and that the underlying merchant cash loans had a default rate of only 1.38%:

**Merchant Cash Advance**
- **Interest paid monthly**
- **Principal returned in 1, 2 or 3 years**
- **Portfolio insured**
- **1.38% default rate**

---

[15] Post by Defendant Vanozzi on "White Coat Investor," on April 8, 2019, https://www.whitecoatinvestor.com/forum/personal-finance-and-budgeting/4957-has-anyone-experience-with-dean-vagnozzi-039-s-financial-plan/page5

18.　　The information sheet quoted above also included a table outlining tiered rates of return based on the amounts invested, which Defendants used to induce Plaintiffs and the Class to make larger investments than they otherwise would have made:

| $100k – $250k | $250k - $500k | $500k+ |
|:---:|:---:|:---:|
| 10% | 12% | 14% |

19.　　Although Defendants publicly claimed that merchant cash borrowers of Par Funding defaulted at rates as low as 1%, the SEC Complaint reveals that the true rate of default was at least 10%. This is further supported by the growing number of lawsuits commenced by Par Funding against its borrowers. Indeed, according to the SEC Complaint, Par Funding had filed over 1,000 lawsuits seeking more than $145 million in missed payments by November 2019, and more than 1,200 lawsuits seeking $150 million in delinquent payments by January 2020.

20.　　The following diagram illustrates the financial structure of the unsecured and unregistered ABFP Merchant Cash Advance Investments:



21.　　As the Merchant Borrowers ("D" in the above diagram) defaulted on their Merchant Cash Advance Agreements, cash flow to Par Funding ("C" in the diagram) was cut off, causing Par Funding to default on promissory notes to ABFP ("B" in the diagram), and, like falling dominos, causing ABFP to stop making monthly interest payments to investors like Plaintiffs and

the Class ("A" in the diagram).

22.     With thousands of defaults during 2019 and early 2020, Par Funding's business was in a death spiral months before COVID-19 mandated the closure of businesses in mid-March 2020. Even so, the COVID-19 shutdown provided Defendants with the opportunity to belatedly disclose Par Funding's failing business and halt investors' monthly interest payments, which Par Funding's lending operations could no longer support.

23.     In response to the collapse of its merchant cash advance business, Par Funding has made a largely futile attempt to recoup its merchant cash loans by filing thousands of confessions of judgment against the merchant borrowers. As these confessions of judgment typically force the small businesses to seek bankruptcy protection, Par Funding's merchant cash advance loans are ultimately rendered uncollectible.

24.     Panic ensued among ABFP investors following the decision to terminate interest payments in early March 2020. At around that same time, Vagnozzi released a video to ABFP investors to assuage these concerns, falsely assuring ABFP investors that they had nothing to worry about and that he would receive money from Par Funding to resume monthly interest payments. Less than two weeks later, in late March 2020, Vagnozzi admitted to the same investors that Par Funding was insolvent but that he was working with his attorney on deal with Par Funding to restructure the ABFP investments so that investor payments could resume ("Exchange Notes Offerings").

25.     Notwithstanding Par Funding's acknowledged illiquidity, by the end of April 2020, Vagnozzi had succeeded in fraudulently inducing most of his investors to enter into so-called Exchange Notes Offerings in conjunction with a restructuring of ABFP's agreements with Par Funding. Under the Exchange Notes Offerings, ABFP Merchant Cash Advance investors would

receive 4% interest payments instead of the promised 10% interest, and the repayment of principal would be delayed from the promised 1-year term to 7 years. For ABFP investors, who include elderly and/or disabled persons on fixed incomes, the payment terms of the Exchange Notes Offerings were an unmitigated disaster. As time went on, however, it became clear that the Exchange Notes Offerings were nothing more than a sham. After making only two reduced monthly interest payments to investors in June and July 2020, Defendants defaulted on the Amended and Restated Notes and breached the Exchange Notes Agreements between ABFP and investors.

26.     Thereafter, on July 27, 2020, the U.S. District Court for the Southern District of Florida entered an order granting the SEC's *Ex Parte* Motion for the Appointment of a Receiver over the corporate Defendants in the SEC Action, including non-parties Par Funding, ABFP, ABFP Management, ABFP Income Fund, LLC, and the ABFP Income Funds (the "Receivership Entities").[16] Pursuant to the July 27 order, the Receiver took custody, control, and possession of all Receivership Entities. As reported in The Philadelphia Inquirer, "[t]he receiver, Florida lawyer Ryan Stumphauzer, locked out the principals of Par Funding and of King of Prussia company A Better Financial Plan, among others, over the weekend, court filings show."[17] In addition, "the court froze 35 bank and brokerage accounts associated with various defendants." The asset freeze extends to assets of A Better Financial Plan and two of its funds that invested in Par Funding. It was said in a court filing to have $24.5 million in one of those funds and $13.3 million in the other."[18]

---

[16] *See SEC v. CBSG, Inc., et al*, No. 9:20-cv-81205-RAR, at Dkt. 36 (July 27, 2020).
[17] Erin Arvedlund, "Par Funding, A Better Financial Plan offices taken over by receiver, locks changed," The Philadelphia Inquirer (Aug. 5, 2020).
[18] *Id*.

27.     On July 31, 2020, FBI agents raided the Philadelphia offices of Par Funding in order to execute search warrants.[19] Then, on August 7, 2020, the FBI arrested LaForte and took custody of LaForte's private plane, $2.5 million in cash found hidden in bundles at his properties, and a $10 million bank account controlled by LaForte and his wife.[20] It was reported that LaForte, in speaking to undercover FBI agents, "allegedly laid out his plan to fly bulk shipments of cash obtained through Par Funding, to the tiny Caribbean island of Nevis" where "he hoped to buy himself citizenship and keep his money out of the reach of investigators in the United States."

28.     Defendants' fraudulent merchant cash advance investment scheme has compromised every investment sold by ABFP, including the non-parties ABFP Multi-Strategy Fund, LP and ABFP Multi-Strategy Fund 2, LP, and Defendants Pillar Life Settlement Fund I, L.P.; Pillar II Life Settlement Fund, L.P.; Pillar 3 Life Settlement Fund, L.P.; Pillar 4 Life Settlement Fund, L.P.; Pillar 5 Life Settlement Fund, L.P., Pillar 6 Life Settlement Fund, L.P., Pillar 7 Life Settlement Fund, L.P., and Pillar 8 Life Settlement Fund, L.P. (the "ABFP Life Settlement Funds"), Atrium Legal Capital, LLC, Atrium Legal Capital 2, LLC, Atrium Legal Capital 3, LLC, and Atrium Legal Capital 4, LLC (the "ABFP Litigation Funding Investments"), ABFP real estate investments, including Woodland Falls Investment Fund, LLC, and other alternative asset investments, including Fallcatcher, Inc. and Promed Investment Co., L.P., and left investors in these funds with dubious prospects of recouping their principal, let alone receiving the double-digit returns that Defendants promised.

29.     While ABFP investors have been left out in the cold, Defendant Vagnozzi and his associates have profited handsomely from his sales of ABFP investments and as an agent raising

---

[19] Erin Arvedlund, Joseph N. DiStefano and Jeremy Roebuck, "FBI raided Par Funding offices in Philly as part of $500 million fraud investigation," The Philadelphia Inquirer (July 31, 2020).
[20] Jeremy Roebuck, "Feds: Philly-based cash advance tycoon threatened to flee country with millions in his private plane before his arrest," The Philadelphia Inquirer (Aug. 11, 2020).

funds for Par Funding. According to Defendant Pauciulo, Vagnozzi-related sales were "by far the largest" of Par's agents in Pennsylvania, Arizona, Delaware, Florida, New Jersey, Texas and Virginia, who were listed in Par's SEC filing earlier this year.[21] According to the SEC filing, the agents, including Vagnozzi, were paid a total of $3.6 million in "finder's fees" for locating buyers of securities for Par Funding. However, Defendant Pauciulo is quoted as saying that Vagnozzi's share of those fees are only "a fraction of what he has made" from the sale of other investments.[22]

## JURISDICTION AND VENUE

30.     This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 based on Plaintiffs' claims for violations of the Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. §§ 1961-68. The Court has subject-matter jurisdiction over Plaintiffs' state-law claims because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 139l(b)(2) because a substantial part of the events or omissions giving rise to this action occurred here. In addition, many of the Plaintiffs' Subscription Agreements with ABFP contains a forum selection provision providing for disputes to be adjudicated within this District.

32.     Each Defendant is subject to the personal jurisdiction of this Court because each Defendant has voluntarily subjected itself/himself/herself to the jurisdiction of this Court; regularly transacts business within this District, and/or has purposefully availed himself of the jurisdiction of this Court for the specific transactions at issue.

---

[21] Joseph N. DiStefano, "Record Pa. fines against broker Vagnozzi, Philly's Par Funding," Philadelphia Inquirer (July 27, 2019), https://www.inquirer.com/business/par-funding-20190727.html
[22] Id.

## PARTIES

### Plaintiffs

33.     Plaintiff Dennis Melchior is an adult individual and a resident and domiciliary of the Commonwealth of Pennsylvania who maintains his principal residence in Kennett Square, Chester County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about June 4, 2019, Plaintiff purchased $300,000 of unregistered securities in the form of a so-called "Class C Promissory Note" issued by ABFP Income Fund, LLC. Under the terms of this investment, ABFP Income Fund, LLC was obligated to make payments to Plaintiff in the amount of $3,000 a month commencing on July 13, 2019 and continuing until June 13, 2020, and Plaintiff's principal was to be repaid in full on or before June 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     In April 2020, Plaintiff Melchior was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by ABFP Income Fund Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP, ABFP Management, ABFP Income Fund, LLC and ABFP Income Fund Parallel, LLC defaulted on the Amended and Restated Notes

and breached the Exchange Agreement between ABFP Income Fund, LLC, ABFP Income Fund Parallel, LLC and Plaintiff Melchior.

      c.     To date, Defendants have failed to repay Plaintiff any of his principal in this investment. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

34.     Plaintiff Teresa Kirk-Junod is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains her principal residence in Churchville, Bucks County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about November 7, 2019, Ms. Kirk-Junod purchased $100,000 of unregistered securities in the form of promissory notes in Pisces Income Fund LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $833.33 a month commencing on February 29, 2020, and continuing until January 30, 2021, and Plaintiff's principal was to be repaid in full on or before January 25, 2021. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      b.     In April 2020, Ms. Kirk-Junod was fraudulently induced by Defendants, including Vagnozzi, Pisces Income Fund LLC, Pisces Income Fund Parallel LLC, Pauciulo and Eckert Seamans, to enter into the sham Pisces Income Fund Exchange Offering, through which she acquired worthless Amended and Restated Notes issued by Pisces Income Fund Parallel LLC. After making only two reduced monthly interest payments, Defendants, including Vagnozzi, Pisces Income Fund LLC and Pisces Income

17

Fund Parallel LLC, defaulted on the Amended and Restated Notes and breached the Exchange Agreement between Pisces Income Fund LLC, Pisces Income Fund Parallel LLC and Plaintiff Kirk-Junod.

      c.      To date, Defendants have failed to repay Plaintiff any of her principal in this investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

35.     Plaintiff Linda Letier is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains her principal residence in Kennett Square, Chester County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on April 2, 2019, Letier purchased $125,000 of unregistered securities in the form of promissory notes in ABFP Income Fund 3, LLC. Under the terms of this investment, Letier expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $ 1,041.00, and repayment of her principal in March 2020.

      b.      On November 6 and 7, 2019, Letier invested $261,000 in the Pisces Income Fund LLC. Pursuant to the terms of the Private Placement Memorandum and Subscription Agreement, Letier expected to receive a 12% annual return in the form of 12 monthly payments in the amount of $2,610, and repayment of her principal in November 2020. In March 2020, Defendants defaulted on these investments and breached the Subscription Agreements.

c.      In April 2020, Plaintiff Letier was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund 3 Parallel, LLC and Pisces Income Fund Exchange Offerings, through which she acquired worthless Amended and Restated Notes issued by ABFP Income Fund 3 Parallel, LLC and Pisces Income Fund Parallel LLC.

d.      After making only two reduced monthly interest payments in June and July 2020, Vagnozzi, ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC, Pisces Income Fund LLC and Pisces Income Fund Parallel LLC, defaulted on the Amended and Restated Notes and breached the Exchange Note Agreements between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC, Pisces Income Fund LLC, Pisces Income Fund Parallel LLC and Plaintiff Letier.

e.      To date, Defendants have failed to repay Plaintiff any of her principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

36.     Plaintiff Robert Hawrylak is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains his principal residence in Upper Chichester, Delaware County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a false and misleading Private Placement Memorandum and Subscription Agreement, on or about April 18, 2019, Mr. Hawrylak purchased $50,000 of unregistered securities in the form of promissory notes issued by Spartan Income Fund, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $333.33 a month commencing on June 13, 2019, and continuing

until May 13, 2020, and Plaintiff's principal was to be repaid in full on or before May 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     In April 2020, Plaintiff Hawrylak was fraudulently induced by Defendants, including Vagnozzi, Spartan Income Fund, LLC, Spartan Income Fund Parallel LLC, Pauciulo and Eckert Seamans, to enter into the sham Spartan Income Fund Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by Spartan Income Fund Parallel LLC. After making only two reduced monthly interest payments, Defendants, including Vagnozzi, Spartan Income Fund LLC and Spartan Income Fund Parallel LLC, defaulted on the Amended and Restated Notes and breached the Exchange Notes Agreement between Spartan Income Fund LLC, Spartan Income Fund Parallel LLC and Plaintiff Hawrylak.

c.     To date, Defendants have failed to repay Plaintiff any of his principal in this investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

37.     Plaintiff Joseph F. Brock, Jr. is an adult individual who is a resident and domiciliary of the State of Michigan and who maintains his principal residence in Richland, Kalamazoo County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum dated March 1, 2019 and Subscription Agreement, on or about March 19, 2019, Plaintiff Brock used qualified retirement funds to purchase $200,000 of unregistered securities in the form of two so-called "Class B" promissory notes issued by non-party

ABFP Income Fund 3, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $1,666.66 (*i.e.*, $833.33 x 2) a month commencing on April 28, 2019, and continuing until March 28, 2020, and Plaintiff's principal was to be repaid in full on or before March 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

        b.        In April 2020, Plaintiff Brock was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 3 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 3, LLC and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes and breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff Brock.

        c.        Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in 2010, Plaintiff Brock used qualified retirement funds to] purchase $169,000 of unregistered securities in the form of limited partnership interests issued by Pillar Life Settlement Fund I, L.P.

        d.        To date, Defendants have failed to repay Plaintiff Brock any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

38.      Plaintiff Raymond G. Heffner is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Philadelphia, Philadelphia County. During the Class Period, Plaintiff invested in unregistered

securities that were promoted and offered by Defendants.

a.  Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about August 21, 2019, he used qualified retirement funds to purchase $530,000 of unregistered securities in the form of a so-called "Class C Promissory Note" issued by non-party ABFP Income Fund 4, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $6,183.33 a month commencing on October 15, 2019 and continuing until September 15, 2022, and Plaintiff's principal was to be repaid in full on or before September 10, 2022. In March 2020, Defendants and ABFP Income Fund 4, LLC defaulted on the investment and breached the Subscription Agreement.

b.  In April 2020, Plaintiff Heffner was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 4 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 4 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 4, LLC and ABFP Income Fund 4 Parallel, LLC, defaulted on the Amended and Restated Notes and breached the Exchange Notes Agreement between ABFP Income Fund 4, LLC, ABFP Income Fund 4 Parallel, LLC and Plaintiff Heffner.

c.  To date, Defendants have failed to repay Plaintiff any of his principal in this investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

39.  Plaintiff John Madden is an adult individual who is a resident and domiciliary of the State of Texas who maintains his principal residence in Katy, Fort Bend County. Pursuant to a

materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around early 2013, he used qualified retirement funds to purchase $100,000 of unregistered securities in the form of limited partnership interests issued by Pillar 3 Life Settlement Fund, L.P. To date, Defendants have failed to repay Plaintiff any of his principal in this investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

40.     Plaintiff Thomas D. Green is an adult individual who is a resident and domiciliary of the State of New Jersey and who maintains his principal residence in Pennsauken, Camden County. During the Class Period, Plaintiff Thomas D. Green invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about March 15, 2019, Plaintiff Thomas Green used qualified retirement funds to purchase $620,000 of unregistered securities in the form of a so-called "Class E Promissory Note" issued by non-party ABFP Income Fund, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $7,750 a month commencing on April 28, 2019 and continuing until March 28, 2020, and Plaintiff's principal was to be repaid in full on or before March 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about June 15, 2018, Plaintiff Thomas Green purchased $100,000 of unregistered securities in the form of promissory notes issued by Atrium Legal Capital, LLC. Under the terms of this investment, Defendants

were obligated to repay Plaintiff's principal plus interest (accrued at an annual rate of 14%) for 4 years, with the sum of $168,896.02 due on or before June 15, 2022.

c.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about August 30, 2018, Plaintiff Thomas Green used qualified retirement funds to purchase $100,000 of unregistered securities in the form of shares of common stock issued by Fallcatcher, Inc., a Delaware corporation.

d.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around 2010, Plaintiff Thomas Green purchased $100,000 of unregistered securities in the form of shares of a limited partnership issued by Pillar Life Settlement Fund I, L.P.

e.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around 2014, Plaintiff Thomas Green purchases $211,000 of unregistered securities in the form of limited partnership interests issued by Pillar 4 Life Settlement Fund, L.P.

f.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about May 13, 2020, Plaintiff Thomas Green used qualified retirement funds to purchase $100,000 of unregistered securities in the form of limited partnership interests issued by Promed Investment Co., L.P., a Delaware limited partnership of which Defendant Vagnozzi is the sole member.

g.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about October 7, 2019, Plaintiff Thomas Green qualified retirement funds to purchase $100,000 of unregistered securities in the

form of limited partnership interests issued by Woodland Falls Investment Fund, LLC, a Delaware limited liability company of which Defendant Vagnozzi is the sole member.

      h.      In all, Thomas Green invested $1,331,000 in unregistered securities promoted and sold by Defendant Vagnozzi, but Defendants have failed to repay any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

41.    Plaintiff Maureen A. Green, the wife of Plaintiff Thomas D. Green, is an adult individual who is a resident and domiciliary of the State of New Jersey and who maintains her principal residence in Pennsauken, Camden County.

      a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about March 4, 2020, Plaintiff Maureen Green used qualified retirement funds to purchase $299,000 of unregistered securities in the form of a so-called "Class C Promissory Note" issued by non-party ABFP Income Fund, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $2,990 a month commencing on April 15, 2020 and continuing until March 15, 2021, and Plaintiff's principal was to be repaid in full on or before March 10, 2021. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      b.      To date, Defendants have failed to repay Plaintiff any of her principal in this investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

42.    Plaintiff Dominick Bellizzie is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains his principal residence in Coatesville,

Chester County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on October 9, 2019, Bellizzie and Plaintiff Janet Kaminski jointly purchased $100,000 of unregistered securities in the form of promissory notes in ABFP Income Fund 2, LLC. Under the terms of this investment, Mr. Bellizzie and Ms. Kaminski expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $769.50 for two consecutive months and then a larger payment in the third month of approximately $1,382.48 or $1,386.92, and repayment of their principal in October 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on March 28, 2019, Bellizzie invested $105,000 in the ABFP Income Fund 3, LLC. Under the terms of the Private Placement Memorandum and Subscription Agreement, Plaintiff Bellizzie expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $875, and repayment of his principal in March 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c.      In April 2020, Plaintiff Bellizzie was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC.

d.      To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

43.     Plaintiff Janet Kaminski is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains her principal residence in Coatesville, Chester County. Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on October 9, 2019, Plaintiffs Kaminski and Bellizzie purchased jointly $100,000 unregistered securities in the form of promissory notes issued by ABFP Income Fund 2, LLC, as detailed above. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement. To date, Defendants have failed to repay Plaintiffs any of their principal investment. Plaintiffs have been damaged as a result of Defendants' fraudulent scheme alleged herein.

44.     Plaintiff Cynthia Butler is an adult individual who is a resident and domiciliary of the State of New Jersey and who maintains her principal residence in Haddon Heights, Camden County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about October 10, 2019, Plaintiff Cynthia Butler purchased $300,000 of unregistered securities in the form of a so-called "Class B Promissory Note" issued by non-party ABFP Income Fund 4, LLC. Under the terms of this investment, Defendants were obligated to make payments to Ms. Butler in the amount of $3,000 a month commencing on October 10, 2019, and continuing until October 10, 2020, and Ms. Butler's principal was to be repaid in full on or before October

10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      In April 2020, Ms. Butler was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund 4, LLC Exchange Offering, through which she acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 4 Parallel, LLC. Vagnozzi, ABFP Income Fund 4, LLC and ABFP Income Fund 4 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 4 LLC, ABFP Income Fund 4 Parallel, LLC and Plaintiff Cynthia Butler.

c.      To date, Defendants have failed to repay Plaintiff any of her principal investment. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

45.    Plaintiff William Butler, the husband of Plaintiff Cynthia Butler, is an adult individual who is a resident and domiciliary of the State of New Jersey and who maintains his principal residence in Haddon Heights, Camden County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about July 10, 2019, Plaintiff William Butler purchased $399,000 of unregistered securities in the form of a so-called "Class B Promissory Note" issued by non-party ABFP Income Fund 3, LLC. Under the terms of this investment, Defendants were obligated to make payments to Mr. Butler in the amount of $3,325 a month commencing on August 13, 2019 and continuing until July 13, 2020, and Mr. Butler's principal was to be repaid in full on or before July 10, 2020. In March

2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      b.    On or about February 25, 2020, Plaintiff William Butler purchased $501,000 of unregistered securities in the form of a so-called "Class C Promissory Note" issued by non-party ABFP Income Fund 6, LLC. Under the terms of this investment, Defendants were obligated to make payments to Mr. Butler in the amount of $5,845 a month commencing on March 30, 2020 and continuing until March 2, 2021. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      c.    In April 2020, Plaintiff William Butler was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund 3, LLC Exchange Notes Offering and the ABFP Income Fund 6, LLC Exchange Notes Offering, through which he acquired worthless Amended and Restated Notes issued by non-parties ABFP Income Fund 3 Parallel, LLC and ABFP Income Fund 6 Parallel, LLC, respectively. Vagnozzi, ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC, ABFP Income Fund 6, LLC, and ABFP Income Fund 6 Parallel, LLC, defaulted on the Amended and Restated Notes, and breached the Exchange Notes Agreements between ABFP Income Fund 3 LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff William Butler, and the Exchange Notes Agreement between ABFP Income Fund 6 LLC, ABFP Income Fund 6 Parallel, LLC and Plaintiff William Butler.

      d.    To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

46.    Plaintiff Edward Woods is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania who maintains his principal residence in West Chester,

Chester County. Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in March 2020, he purchased $75,000 of unregistered securities in the form of limited partnership interests issued by non-party ABFP Multi-Strategy Fund 2, LP. To date, Defendants have failed to repay Plaintiff any of his principal in this investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

47.     Plaintiff Glen W. Cole, Jr. is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains his principal residence in Philadelphia, Philadelphia County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, Plaintiff Cole purchased $125,000 of unregistered securities in the form of limited partnership interests issued by Pillar 7 Life Settlement Fund, L.P.

b.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about September 5, 2018, Plaintiff Cole purchased $200,000 of unregistered securities in the form of limited partnership interests issued by non-party ABFP Income Fund 2, L.P. On or about September 25, 2019, Plaintiff Cole rolled over his investment in ABFP income Fund 2, L.P. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c.     To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff Cole has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

48.     Plaintiff John Butler is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania who maintains his principal residence in Exton, Chester County. Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or about 2011, he used qualified retirement funds to purchase $100,000 of unregistered securities in the form of limited partnership interests issued by Pillar II Life Settlement Fund, L.P. Plaintiff John Butler has not received repayment of his principal investment. Plaintiff John Butler has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

49.     Plaintiff Michael D. Groff is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania who maintains his principal residence in Pottstown, Montgomery County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in January 2020, Plaintiff Groff purchased $60,000 of unregistered securities in the form of so-called "Promissory Notes" issued by non-party ABFP Income Fund 6, LLC. Under the terms of this investment, Defendants were obligated to make payments to Mr. Groff in the amount of 10 percent monthly, which was to continue for a term of 12 months. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     In April 2020, Plaintiff Groff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 6, LLC Exchange Notes Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 6 Parallel LLC. Vagnozzi,

ABFP Income Fund 6, LLC, and ABFP Income Fund 6 Parallel, LLC, defaulted on the Amended and Restated Notes, and breached the Exchange Agreement between ABFP Income Fund 6 LLC, ABFP Income Fund 6 Parallel LLC and Plaintiff Groff.

      c.     To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

50.    Plaintiff Robert Betz is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Schwenksville, Montgomery County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, he purchased $101,000 of unregistered securities in the form of promissory notes issued by non-party ABFP Income Fund 3, LLC. Under the terms of this investment, Defendants were obligated to make 10% monthly interest payments to Plaintiff for 12 months, and Plaintiff's principal was to be repaid in full at the end of this 12-month term. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      b.     In April 2020, Plaintiff Betz was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 3 Exchange Notes Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and

they breached the Exchange Notes Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff Betz.

      c.      To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

51.      Plaintiff Shawn P. Carlin is an adult individual who is a resident and domiciliary of the State of New Jersey who maintains his principal residence in Williamstown, Gloucester County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about April 21, 2018, Plaintiff Carlin purchased $300,000 of unregistered securities in the form of a so-called "Class C Promissory Note" issued by non-party ABFP Income Fund, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $3,000 a month commencing on June 25, 2018 and continuing until May 25, 2019, and Plaintiff's principal was to be repaid in full on or before May 25, 2019. In or around May 2019, Defendants induced Plaintiff to roll over his investment for another year. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      b.      In April 2020, Plaintiff Carlin was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund Exchange Notes Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund, LLC, and ABFP

Income Fund Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund, LLC, ABFP Income Fund Parallel, LLC and Plaintiff Carlin.

      c.     To date, Defendants have failed to repay Plaintiff any of his principal. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

52.     Plaintiff Marcy H. Kershner is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains her principal residence in West Chester, Chester County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, Ms. Kershner used qualified retirement funds to purchase $113,178 of unregistered securities in the form of promissory notes issued by Pisces Income Fund LLC. Under the terms of this investment, Defendants were obligated to make 12 monthly payments to Plaintiff in the amount of approximately $833.33, after which Plaintiff's principal was to be repaid in full. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      b.     In April 2020, Ms. Kershner was fraudulently induced by Defendants, including Vagnozzi, Pisces Income Fund LLC, Pisces Income Fund Parallel LLC, Pauciulo and Eckert Seamans, to enter into the sham Pisces Income Fund Exchange Offering, through which she acquired worthless Amended and Restated Notes issued by Pisces Income Fund Parallel LLC. After making only two reduced monthly interest payments, Vagnozzi, Pisces Income Fund LLC, and Pisces Income Fund Parallel LLC,

defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between Pisces Income Fund LLC, Pisces Income Fund Parallel LLC and Plaintiff Kershner.

c.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around April 2018, Ms. Kershner purchased $100,000 of unregistered securities in the form of promissory notes issued by non-party ABFP Income Fund LLC. Under the terms of this investment, Defendants were obligated to make 12 monthly payments to Plaintiff in the amount of approximately $833.33, after which Plaintiff's principal was to be repaid in full. When this investment reached its maturity in or around April 2019, Defendants, including Shannon Westhead, fraudulently Plaintiff to rollover her investment for another 12 months. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

d.     In April 2020, Ms. Kershner was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund Exchange Offering, through which she acquired worthless Amended and Restated Notes issued by ABFP Income Fund Parallel LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund LLC, and ABFP Income Fund Parallel LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Note Agreement between ABFP Income Fund LLC, ABFP Income Fund Parallel LLC and Plaintiff Kershner.

e.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, Plaintiff used both cash and qualified retirement funds to purchase $100,000 of unregistered securities in the form of limited

partnership interests issued by Pillar 8 Life Settlement Fund, L.P. also known as the "Gibraltar Fund."

    f.    To date, Defendants have failed to repay Plaintiff any of her principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

53.    Plaintiff John W. Harvey is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains his principal residence in Exton, Chester County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

    a.    Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about January 25, 2020, Plaintiff Harvey purchased $100,000 of unregistered securities in the form of promissory notes issued by non-party ABFP Income Fund 6, LLC. Under the terms of this investment, Defendants were obligated to make payments to Mr. Harvey in the amount of $833.33 a month commencing on February 28, 2020 and continuing until January 25, 2022. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

    b.    In April 2020, Plaintiff Harvey was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund 6, LLC Exchange Note Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 6 Parallel. In August 2020, Vagnozzi, ABFP, ABFP Income Fund 6, LLC, and ABFP Income Fund 6 Parallel, LLC, defaulted on the Amended and Restated Notes, and breached the Exchange Agreement between ABFP Income Fund 6 LLC, ABFP Income Fund 6 Parallel and Plaintiff Harvey.

c.      To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

54.     Plaintiff Laurie H. Sutherland is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains her principal residence in Perkiomenville, Montgomery County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about September 10, 2019, Ms. Sutherland and her husband, Plaintiff William Sutherland, purchased $120,000 unregistered securities in the form of "Class A" promissory notes in ABFP Income Fund 4, LLC. Under the terms of this investment, Mr. and Ms. Sutherland expected to receive at least a 10% annual return in the form of 12 monthly payments in the amount of $1,000 and repayment of their principal on or about September 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      In April 2020, Mr. and Ms. Sutherland were fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund 4 Exchange Note Offering, through which they acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 4 Parallel, LLC.

c.      After making only two reduced monthly interest payments in June and July 2020, Vagnozzi, ABFP, ABFP Income Fund 4, LLC, and ABFP Income Fund 4 Parallel, LLC, defaulted on the Amended and Restated Notes, and breached the Exchange Notes Agreements.

d.      To date, Defendants have failed to repay Mr. and Ms. Sutherland any of their principal investment. Plaintiffs have been damaged as a result of Defendants' fraudulent scheme alleged herein.

55.      Plaintiff William M. Sutherland, the husband of Plaintiff Laurie H. Sutherland, is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains his principal residence in Perkiomenville, Montgomery County. The investments that Mr. Sutherland made with his wife are set forth in the preceding paragraph.

56.      Plaintiff Bruce Chasan is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains his principal residence in Bryn Mawr, Montgomery County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about January 17, 2019, Plaintiff Chasan purchased $100,000 of unregistered securities in the form of promissory notes issued by non-party ABFP Income Fund 2, L.P. Under the terms of this investment, Mr. Chasan expected to receive 10% interest on his investment paid in 12 monthly installments, and the full repayment of his principal in January 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      In April 2020, Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, caused ABFP Income Fund 2, L.P., to enter into the sham ABFP Income Fund Exchange Note Offering, through which Plaintiff acquired worthless Amended and Restated securities issued by non-party ABFP Income Fund 2 Parallel L.P.

c.      Pursuant to a materially false and misleading Private Placement

Memorandum dated February 1, 2017 and Subscription Agreement, on or about October 28, 2017, Plaintiff Chasan purchased $75,000 of unregistered securities in the form of limited partnership interests issued by Pillar 8 Life Settlement Fund, L.P.

d.      To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

57.      Plaintiff Chantal Boyer, by and through her husband, Randal Boyer, Jr., who serves as her Power of Attorney, is a totally disabled adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania. The Boyers maintain their principal residence in Phoenixville, Chester County.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around 2014, Plaintiff Boyer purchased $50,000 of unregistered securities in the form of limited partnership interests issued by Pillar 4 Life Settlement Fund, L.P.

b.      To date, Defendants have failed to repay Plaintiff Boyer her principal in this investment despite Defendants' representation that she would be repaid within 3 to 6 years. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

58.      Plaintiff Roy Mills is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Springfield, Delaware County. During the Class Period, Plaintiff Mills invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about March 7, 2019, Plaintiff Mills

39

purchased $240,000 of unregistered securities in the form of so-called "Class B" promissory notes issued by non-party ABFP Income Fund 3, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $2,000 a month commencing on April 13, 2019, and continuing until March 13, 2020, and Plaintiff's principal was to be repaid in full on or before March 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     In April 2020, Plaintiff Mills was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to entered into the sham ABFP Income Fund 3 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff.

c.     To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

59.     Plaintiff Jace A. Weaver is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Gilbertsville, Montgomery County. During the Class Period, Plaintiff Weaver invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about June 11, 2019, Plaintiff used

qualified retirement funds to purchase $101,000 of unregistered securities in the form of promissory notes issued by non-party ABFP Income Fund 3, LLC. Under the terms of this investment, Defendants were obligated to make 12 monthly payments to Plaintiff in the amount of $841.67 commencing on July 29, 2019 and continuing until June 28, 2020, and Plaintiff's principal was to be repaid in full on or before June 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      In April 2020, Plaintiff Weaver was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 3 Exchange Offering, through which he acquired the worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC, and Plaintiff.

c.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in December 2019, Plaintiff used qualified retirement funds to purchase $250,000 of unregistered securities in the form of promissory notes issued by non-party ABFP Income Fund 6, LLC. Under the terms of this investment, Defendants were obligated to make 12 monthly payments to Plaintiff in the amount of $2,500 commencing on January 28, 2020 and continuing until December 28, 2021, and Plaintiff's principal was to be repaid in full in December 2021. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

d.      In April 2020, Plaintiff Weaver was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 6 Exchange Offering, through which he acquired the worthless Amended and Restated Notes issued by non-party ABFP Income Fund 6 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 6, LLC, and ABFP Income Fund 6 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 6, LLC, ABFP Income Fund 3 Parallel, LLC, and Plaintiff.

e.      Pursuant to a false and misleading Private Placement Memorandum and Subscription Agreement/Limited Partnership Agreement, Plaintiff purchased $100,000 of unregistered securities in the form of partnership interests in the ABFP Multi-Strategy Fund 2, LP.

f.      To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

60.     Plaintiff George S. Roadknight is an adult individual who is a resident and domiciliary of the State of New Jersey and maintains his principal residence in Stratford, Camden County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about October 25, 2019, Mr. Roadknight purchased $50,000 of unregistered securities in the form of promissory notes issued by Pisces Income Fund LLC. Under the terms of this investment, Defendants were

obligated to make 12 monthly payments to Plaintiff in the amount of $416.66 commencing in November 2019, and continuing until October 2020, and Plaintiff's principal was to be repaid in full on or before November 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      b.     In April 2020, Mr. Roadknight was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham Pisces Income Fund Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by Pisces Income Fund Parallel LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP, Pisces Income Fund LLC, and Pisces Income Fund Parallel LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between Pisces Income Fund LLC, Pisces Income Fund Parallel LLC and Mr. Roadknight.

      c.     To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

61.    Plaintiff Robert DelRocco is an adult individual who is a resident and domiciliary of the State of New Jersey and maintains his principal residence in Raritan, Somerset County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.     Pursuant to a materially false and misleading Private Placement Memorandum dated March 1, 2019 and Subscription Agreement, on or about April 16, 2019, Plaintiff DelRocco purchased $200,000 of unregistered securities in the form of two so-called "Class B" promissory notes issued by non-party ABFP Income Fund 3, LLC.

Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $1,666.67 a month commencing on May 28, 2019, and continuing until April 28, 2020, and Plaintiff's principal was to be repaid in full on or about April 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b. Pursuant to a materially false and misleading Private Placement Memorandum dated March 1, 2019 and Subscription Agreement, on or about July 16, 2019, Plaintiff DelRocco purchased an additional $200,000 of unregistered securities in the form of two so-called "Class B" promissory notes issued by non-party ABFP Income Fund 3, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $1,666.67 a month commencing on August 28, 2019, and continuing until July 28, 2020, and Plaintiff's principal was to be repaid in full on or before July 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c. In April 2020, Plaintiff DelRocco was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 3 Exchange Note Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff.

d.      To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

62.     Plaintiff Leonard Goldstein is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Bala Cynwyd, Montgomery County. During the Class Period, Plaintiff Goldstein invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in January 2015, Plaintiff Goldstein purchased $60,000 of unregistered securities in the form of limited partnership interests issued by Pillar Life Settlement Fund I, L.P.

b.      To date, Defendants have failed to repay Plaintiff his principal in this investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

63.     Plaintiff David Jakeman is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Warminster, Bucks County. During the Class Period, Plaintiff Jakeman invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around December 2019, Plaintiff Jakeman purchased $100,000 of unregistered securities in the form of promissory notes issued by Atrium Legal Capital 2, LLC. Under the terms of this investment, Defendants were obligated to repay Plaintiff's principal plus interest (accrued at an annual rate of 6%

- 9%).

b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about March 20, 2020, Plaintiff Jakeman purchased $150,000 of unregistered securities in the form of promissory notes issued by Atrium Legal Capital 3, LLC. Under the terms of this investment, Defendants were obligated to make quarterly payments to Plaintiff in the amount of $3,750.00, and to repay his entire principal investment on or before March 25, 2022, but they defaulted.

c.      To date, Defendants have failed to repay Plaintiff his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

64.     Plaintiff Fred Barakat is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania who maintains his principal residence in Chadds Ford, Chester County. During the Class Period, Plaintiff Barakat invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, Plaintiff purchased $100,000 of securities in the form of partnership interests in non-party ABFP Multi-Strategy Investment Fund, LP.

b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in November 2019, Plaintiff purchased $251,000 of unregistered securities in the form of promissory notes in Pisces Income Fund LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $2,510 a month (12% annual interest) commencing in December 2019, and Plaintiff's principal was to be repaid in full after making the 12 monthly interest

payments. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c.     In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham Pisces Income Fund Exchange Note Offering, through which he acquired worthless Amended and Restated Notes issued by Pisces Income Fund Parallel LLC.

d.     After making only two reduced monthly interest payments in June and July 2020, Vagnozzi, Pisces Income Fund, and Pisces Income Fund Parallel LLC, defaulted on the Amended and Restated Notes, and breached the Exchange Notes Agreements.

e.     To date, Defendants have failed to repay Plaintiff his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

65.     Plaintiff Neil Benjamin is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Harleysville, Montgomery County. During the Class Period, Plaintiff Benjamin invested in unregistered securities that were promoted and sold by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about September 4, 2019, Plaintiff used qualified retirement funds to purchase $100,000 of unregistered securities in the form of a so-called "Class A Promissory Notes" issued by non-party ABFP Income Fund 4, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $833.33 a month commencing on October 28, 2019 and continuing until September 28, 2020, and Plaintiff's principal was to be repaid in full on

or before September 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund 4 Exchange Note Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 4 Parallel, LLC. After making only two reduced monthly interest payments in June and July 2020, Vagnozzi, ABFP Income Fund 4, LLC, and ABFP Income Fund 4 Parallel, LLC, defaulted on the Amended and Restated Notes, and breached the Exchange Notes Agreements.

c.      To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

66.     Plaintiff Mark D. Newkirk is an adult individual who is a resident and domiciliary of the State of New Jersey who maintains his principal residence in Mays Landing, Atlantic County. During the Class Period, Plaintiff invested $150,000 in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, Plaintiff purchased unregistered securities in the form of partnership interests issued by non-party ABFP Multi-Strategy Investment Fund, LP.

b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, Plaintiff purchased unregistered securities in the form of promissory notes issued by Atrium Legal Capital 4, LLC.

  c. To date, Defendants have failed to repay Plaintiff his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

67. Plaintiff Michael Swan is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Pottstown, Montgomery County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

  a. Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in April 2017, Plaintiff used qualified retirement funds to purchase $109,500 of unregistered securities in the form of limited partnership interests issued by Pillar Life Settlement Fund 8, L.P.

  b. To date, Defendants have failed to repay Plaintiff his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

68. Plaintiffs Barbara J. Barr and Michael Barr are married adults who are residents and domiciliaries of the Commonwealth of Pennsylvania who maintain their principal residence in Wallingford, Delaware County. During the Class Period, Plaintiffs invested in unregistered securities that were promoted and offered by Defendants.

  a. Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in January 2016, Plaintiff Barbara Barr used qualified retirement funds to purchase $250,000 of unregistered securities in the form of limited partnership interests issued by Pillar 6 Life Settlement Fund, L.P. In November 2019, Defendants fraudulently induced Plaintiff Barbara Barr to make an additional purchase of $15,584 of unregistered securities issued by the Pillar 6 Life Settlement Fund.

b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around January 2019, Plaintiff Barbara Barr used qualified retirement funds to purchase $112,000 of unregistered securities in the form of partnership interests issued by non-party ABFP Income Fund 2, L.P. Under the terms of this investment, Plaintiff expected to receive 10% interest on her investment paid in 12 monthly installments, and the full repayment of her principal in March 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c.      In April 2020, Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, caused ABFP Income Fund 2, L.P. to enter into the sham ABFP Income Fund Exchange Note Offering, through which Plaintiff acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 2 Parallel L.P. After only two payments, Defendants defaulted on the Exchange Notes.

d.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in January 2020, Plaintiff Michael Barr used qualified retirement funds to purchase $120,000 of unregistered securities in the form of promissory notes issued by Capricorn Income Fund I, LLC. Under the terms of this investment, Plaintiff expected to receive 10% interest on his investment paid in 12 monthly installments, and the full repayment of his principal in January 2021. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

e.      In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham Capricorn Income Fund I Parallel LLC Exchange Note Offering, through which he acquired worthless Amended

and Restated Notes issued by Capricorn Income Fund I Parallel LLC. After only two payments, Defendants defaulted on the Exchange Notes.

      f.      To date, Defendants have failed to repay Plaintiffs their principal in these investments. Plaintiffs have been damaged as a result of Defendants' fraudulent scheme alleged herein.

69.     Plaintiff Joseph Camaioni is an adult individual who is a resident and domiciliary of the State of New Jersey who maintains his principal residence in Williamstown, Gloucester County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about March 28, 2018, Plaintiff purchased $125,000 of unregistered securities in the form of partnership interests in non-party ABFP Multi-Strategy Investment Fund, LP.

      b.      To date, Defendants have failed to repay Plaintiff his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

70.     Plaintiff Jordan Lepow is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Philadelphia, Philadelphia County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about October 10, 2019, he purchased $50,000 of unregistered securities in the form of a so-called "Class A Promissory Note" issued by ABFP Income Fund 4, LLC. Under the terms of this investment, Defendants

were obligated to make payments to Plaintiff in the amount of $416.67 a month commencing on November 15, 2019 and continuing until October 15, 2020, and Plaintiff's principal was to be repaid in full on or before October 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 4 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 4 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP management, defaulted on the Amended and Restated Notes and breached the Exchange Notes Agreement between ABFP Income Fund 4, LLC, ABFP Income Fund 4 Parallel, LLC and Plaintiff.

c.     To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

71.     Plaintiff Marilyn Swartz is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains her principal residence in Philadelphia, Philadelphia County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on October 10, 2019, Plaintiff invested $50,000 in the ABFP Income Fund 3, LLC. Under the terms of the Private Placement Memorandum and Subscription Agreement, Plaintiff expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $416.67 beginning on

November 15, 2019, and continuing until October 15, 2020, with full repayment of her principal on or before October 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 3 Exchange Offering, through which she acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff.

c.     To date, Defendants have failed to repay Plaintiff any of her principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

72.     Plaintiff Robert L. Yori is an adult individual who is a resident and domiciliary of the State of Delaware and maintains his principal residence in Wilmington, New Castle County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, Plaintiff used qualified retirement funds to purchase $250,000 of unregistered securities in the form of promissory notes in non-party ABFP Income Fund 3, LLC. Under the terms of this investment, Plaintiff expected to receive a 10% annual return in the form of 12 monthly payments in the amount of

$2,083.33 commencing on May 13, 2019 and continuing until April 13, 2020, and repayment of his principal on or before April 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      In April 2020, Plaintiff was fraudulently induced by Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff.

c.      To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

73.     Plaintiff Joan L. Yori is an adult individual who is a resident and domiciliary of the State of Delaware and maintains her principal residence in Wilmington, New Castle County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about April 30, 2019, Plaintiff used qualified retirement funds to purchase $102,000 of unregistered securities in the form of so-called "Class B" promissory notes in ABFP Income Fund 3, LLC. Under the terms of this investment, Plaintiff expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $850, commencing on June 13, 2019 and continuing

until May 13, 2020, and repayment of her principal on or before May 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      In April 2020, Plaintiff was fraudulently induced by Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff.

c.      Pursuant to a false and misleading Private Placement Memorandum and Subscription Agreement/Limited Partnership Agreement, on or about August 1, 2018 and February 25, 2019, Plaintiff used qualified retirement funds to purchase a total of $200,000 of unregistered securities in the form of partnership interests issued by non-party ABFP Multi-Strategy Fund, LP

d.      To date, Defendants have failed to repay Plaintiff any of her principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

74.     Plaintiff Mark A. Tarone is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Folsom, Delaware County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about October 11, 2019, Plaintiff

purchased $50,000 of unregistered securities in the form of promissory notes issued by Atrium Legal Capital 2, LLC. Under the terms of this investment, Defendants were obligated to make quarterly payments to Plaintiff in the amount of $1,125, commencing on or about February 28, 2020, and to repay Plaintiff's principal in full no later than November 25, 2023. Defendants have defaulted on these quarterly interest payments.

b. Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about October 11, 2019, Mr. Tarone used qualified retirement funds to purchase $96,000 of unregistered securities in the form of promissory notes issued by Pisces Income Fund LLC. Under the terms of this investment, Defendants were obligated to make 12 monthly payments to Plaintiff in the amount of $800, commencing on or about December 30, 2019, and continuing until November 30, 2020, with the full repayment of Plaintiff's principal on or before November 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c. In April 2020, Mr. Tarone was fraudulently induced by Vagnozzi, Pisces Income Fund LLC, Pisces Income Fund Parallel LLC, Pauciulo and Eckert Seamans, to enter into the sham Pisces Income Fund Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by Pisces Income Fund Parallel LLC. After making only two reduced monthly interest payments, Vagnozzi, Pisces Income Fund LLC, and Pisces Income Fund Parallel LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between Pisces Income Fund LLC, Pisces Income Fund Parallel LLC and Mr. Tarone.

d.      To date, Defendants have failed to repay Plaintiff any of his principal on these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

75.      Plaintiff Raymond D. Fergione is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and maintains his principal residence in Holland, Bucks County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about June 7, 2019, Plaintiff purchased $340,000 of securities in the form of a so-called "Class B" promissory note issued by non-party ABFP Income Fund 3, LLC. Under the terms of the Private Placement Memorandum and Subscription Agreement, Plaintiff expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $2,833.33 beginning on July 28, 2019, and continuing until June 28, 2020, with full repayment of his principal on or before June 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 3 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached

the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff.

      c.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, as well as direct solicitations by Defendant Michael Tierney, on or about August 6, 2019, Plaintiff used qualified retirement funds to purchase $110,500 of unregistered securities in the form of so-called "Class B" promissory notes issued by Merchant Services Income Fund, LLC. Under the terms of the Private Placement Memorandum and Subscription Agreement, Plaintiff expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $920.83 beginning on September 13, 2019, and continuing until August 13, 2020, with full repayment of his principal on or before August 10, 2020. In March 2020, Defendants breached the subscription agreement with Plaintiff and defaulted on the Class B promissory notes.

      d.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about December 7, 2017, Plaintiff purchased $50,000 of unregistered securities in the form of promissory notes issued by Atrium Legal Capital, LLC. Under the terms of this investment, Defendants are obligated to pay Plaintiff interest at a rate of 14 percent annually, with the full payment of all interest and principal in the amount of $84,448.01, no later than December 15, 2021.

      e.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about July 30, 2018, Plaintiff used qualified retirement funds to purchase $111,800 of unregistered securities in the form of promissory notes issued by Atrium Legal Capital, LLC. Under the terms of this

investment, Defendants are obligated to pay Plaintiff interest at a rate of 14 percent annually, with the full payment of all interest and principal in the amount of $188,825.75, no later than August 15, 2022.

      f.     To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

76.    Plaintiff Raymond Bruce Boehm is an adult individual who is a resident and domiciliary of the State of New Jersey who maintains his principal residence in Somers Point, Atlantic County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about August 19, 2019, Plaintiff used qualified retirement funds to purchase $73,000 of unregistered securities in the form of a so-called "Class A Promissory Note" issued by non-party ABFP Income Fund 4, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $608.33 a month commencing on September 30, 2019 and continuing until August 30, 2020, and Plaintiff's principal was to be repaid in full on or before August 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

      b.     In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 4 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 4 Parallel, LLC. After making only two reduced

monthly interest payments, Vagnozzi, ABFP Income Fund 4, LLC, ABFP Income Fund 4 Parallel, LLC, defaulted on the Amended and Restated Notes and breached the Exchange Notes Agreement between ABFP Income Fund 4, LLC, ABFP Income Fund 4 Parallel, LLC and Plaintiff.

      c.     To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

77.     Plaintiff Robin Lynn Boehm is an adult individual who is a resident and domiciliary of the State of New Jersey who maintains her principal residence in Somers Point, Atlantic County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants. Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in 2020, Plaintiff purchased $122,000 of unregistered securities in the form of limited partnership interests issued by non-party ABFP Multi-Strategy Fund 2, LP. To date, Defendants have failed to repay Plaintiff any of her principal in this investment. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

78.     Plaintiff Patricia Crossin-Chawaga is an adult individual who is a resident and domiciliary of the State of Utah who maintains her principal residence in Kamas, Summit County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about September 11, 2014, Plaintiff used qualified retirement funds to purchase $99,000 of unregistered securities in the form

of limited partnership interests issued by Pillar 5 Life Settlement Fund, L.P.

b.      To date, Defendants have failed to repay Plaintiff her principal in this investment despite Defendants' representation that she would be repaid within 3 to 6 years. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

79.      Plaintiff Charles P. Moore is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Harleysville, Montgomery County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a false and misleading Private Placement Memorandum and Subscription Agreement/Limited Partnership Agreement, on or about February 11, 2020, Plaintiff purchased $100,000 of unregistered securities in the form of partnership interests in the ABFP Multi-Strategy Fund 2, LP.

b.      Pursuant to a materially false and misleading Private Placement Memorandum dated May 1, 2020, and Subscription Agreement, on or about May 13, 2020, 2020, Plaintiff used $100,000 of qualified retirement funds and $10,000 of cash to purchase $110,000 of unregistered securities in the form of limited partnership interests issued by Promed Investment Co., L.P., a Delaware limited partnership of which Defendant Vagnozzi is the sole member.

c.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about December 27, 2019, Plaintiff purchased $251,000 of unregistered securities in the form of so-called "Class B Promissory Notes" issued by non-party ABFP Income Fund 6, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount

of $2,510 per month commencing on February 15, 2020 and continuing until January 15, 2021, at which time Defendants were obligated to repay all of Plaintiffs' principal. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

        d.      In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 6, LLC Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 6 Parallel. In August 2020, Vagnozzi, ABFP Income Fund 6, LLC, and ABFP Income Fund 6 Parallel, LLC, defaulted on the Amended and Restated Notes, and breached the Exchange Agreement between ABFP Income Fund 6 LLC, ABFP Income Fund 6 Parallel and Plaintiff.

        e.      To date, Defendants have failed to repay Plaintiff any of his principal on these investments. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

80.     Plaintiff James E. Hilton is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Philadelphia, Philadelphia County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

        a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about April 11, 2019, Plaintiff used qualified retirement funds to purchase $134,000 of securities in the form of a so-called "Class B" promissory note issued by non-party ABFP Income Fund 3, LLC. Under the terms of the Private Placement Memorandum and Subscription Agreement, Plaintiff

expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $1,116.67 beginning on June 13, 2019, and continuing until May 13, 2020, with full repayment of his principal on or before May 10, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b. In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, ABFP and ABFP Management, to enter into the sham ABFP Income Fund 3 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 3, LLC, and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff.

c. To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

81. Plaintiff Douglas C. Kunkel is an adult individual who is a resident and domiciliary of the State of Washington and who maintains his principal residence in Renton, King County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a. Pursuant to a false and misleading Private Placement Memorandum and Subscription Agreement/Limited Partnership Agreement, on or about March 20, 2018, Plaintiff purchased $150,000 of unregistered securities in the form of partnership interests in the ABFP Multi-Strategy Investment Fund, LP.

b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about September 3, 2019, Plaintiff used qualified retirement funds to purchase $226,000 of unregistered securities in the form of so-called "Class D" promissory notes issued by Capricorn Income Fund I, LLC. Under the terms of this investment, Defendants were obligated to pay Plaintiff interest at a rate of 12% in 12 monthly installments of $2,636.67, commencing on October 25, 2019 and continuing until September 25, 2020, and the full repayment of his principal on or before September 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c.      In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham Capricorn Income Fund I Parallel LLC Exchange Note Offering, through which he acquired worthless Amended and Restated Notes issued by Capricorn Income Fund I Parallel LLC. After only two payments, Defendants defaulted on the Exchange Notes.

d.      To date, Defendants have failed to repay Plaintiff his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

82.     Plaintiff Bonnie Lee Beeman is an adult individual who is a resident and domiciliary of the State of Washington and who maintains her principal residence in Renton, King County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about March 7, 2019, Plaintiff used

qualified retirement funds to purchase $201,000 of unregistered securities in the form of so-called "Class C Notes" issued by Capricorn Income Fund I, LLC. Under the terms of this investment, Defendants were obligated to pay Plaintiff interest at a rate of 14% in 12 monthly installments of $2,345.00 commencing on April 25, 2019 and continuing until March 25, 2020, and the full repayment of her principal on or before March 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about October 17, 2019, Plaintiff Beeman and her husband, Plaintiff Douglas Kunkel, jointly purchased $100,000 of unregistered securities in the form of promissory notes issued by Capricorn Income Fund I, LLC. Under the terms of this investment, Plaintiffs expected to receive 12% interest on their investment paid in 12 monthly installments, and the full repayment of their principal in or around October 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c.      In April 2020, Plaintiffs were fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham Capricorn Income Fund I Parallel LLC Exchange Note Offering, through which they acquired worthless Amended and Restated Notes issued by Capricorn Income Fund I Parallel LLC. After only two payments, Defendants defaulted on the Exchange Notes.

d.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about February 13, 2019, Plaintiffs Beeman and Kunkel purchased $210,000 of unregistered securities in the form of a so-

called "Class C Promissory Note" issued by non-party ABFP Income Fund, LLC. Under the terms of this investment, Defendants were obligated to pay 14% interest on her investment paid in 12 monthly installments and Plaintiffs' principal was to be repaid in full in or around March 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

e.       Pursuant to a materially false and misleading Private Placement Memoranda and Subscription Agreements, in or around April 25, 2019, Plaintiffs Beeman and Kunkel purchased $250,000 of unregistered securities in the form of a so-called "Class C Promissory Note" issued by non-party ABFP Income Fund, LLC. Under the terms of this investment, Plaintiffs expected to receive 14% interest paid in 12 monthly installments, and the full repayment of her principal in or around March 2020. In March 2020, Defendants defaulted on this investment and breached the Subscription Agreements

f.       In April 2020, Plaintiffs were fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund Exchange Notes Offering, through which they acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund, LLC, and ABFP Income Fund Parallel, LLC, defaulted on the Amended and Restated Notes, and they breached the Exchange Agreement between ABFP Income Fund, LLC, ABFP Income Fund Parallel, LLC and Plaintiffs.

g.       Pursuant to a materially false and misleading Private Placement Memoranda and Subscription Agreements, in or around June 6, 2019, Plaintiffs Beeman and Kunkel purchased $151,000 of unregistered securities in the form of partnership

interests issued by non-party ABFP Income Fund 2, L.P. Under the terms of this investment, Plaintiffs expected to receive 14% interest paid in 12 monthly installments, and the full repayment of her principal in May 2020. In March 2020, Defendants defaulted on this investment and breached the Subscription Agreements.

h.      In April 2020, Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, caused ABFP Income Fund 2, L.P. to enter into the sham ABFP Income Fund Exchange Note Offering, through which Plaintiffs Beeman and Kunkel acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 2 Parallel L.P. After only two payments, Defendants defaulted on the Exchange Notes.

i.      To date, Defendants have failed to repay Plaintiffs their principal in these investments. Plaintiffs have been damaged as a result of Defendants' fraudulent scheme alleged herein.

83.     Plaintiff Ernest S. Lavorini is an adult individual who is a resident and domiciliary of the State of California and who maintains his principal residence in Lafayette, Contra Costa County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum dated February 1, 2017 and Subscription Agreement, on or about May 16, 2017, Plaintiff used qualified retirement funds to purchase $100,000 of unregistered securities in the form of limited partnership interests issued by Pillar 8 Life Settlement Fund, L.P. a/k/a Gibraltar Fund L.P.

b.      Pursuant to a materially false and misleading Private Placement Memorandum dated February 1, 2017 and Subscription Agreement, on or about May 24,

2017, Plaintiff used qualified retirement funds to purchase $58,500 of unregistered securities in the form of limited partnership interests issued by Pillar 8 Life Settlement Fund, L.P. a/k/a Gibraltar Fund L.P.

    c.    To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

84.    Plaintiff Elizabeth Ann Doyle is an adult individual who is a resident and domiciliary of the State of California and who maintains her principal residence in Lafayette, Contra Costa County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

    a.    Pursuant to a false and misleading Private Placement Memorandum and Subscription Agreement/Limited Partnership Agreement, on or about January 30, 2019, Plaintiffs Lavorini and Doyle purchased $500,000 of unregistered securities in the form of partnership interests in non-party ABFP Multi-Strategy Investment Fund, LP.

    b.    Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about April 16, 2020, Plaintiffs Lavorini and Doyle purchased $200,000 of unregistered securities in the form of promissory notes issued by Atrium Legal Capital 3, LLC. Under the terms of this investment, Defendants were obligated to make quarterly payments to Plaintiff in the amount of $5,000.00, and to repay their entire principal investment on or before April 25, 2022, but they defaulted.

    c.    To date, Defendants have failed to repay Plaintiffs any of their principal in these investments. Plaintiffs have been damaged as a result of Defendants' fraudulent scheme alleged herein.

85.     Plaintiff Joseph Greenberg is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Feasterville, Bucks County. During the Class Period, Plaintiff Greenberg invested in unregistered securities that were promoted and offered by Defendants.

a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about January 2, 2019, Plaintiff Greenberg used qualified retirement funds to purchase $150,000 of unregistered securities in the form of partnership interests in ABFP Multi-Strategy Investment Fund, LP.

b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on March 18, 2019, Plaintiff Greenberg invested $101,000 in the ABFP Income Fund 3, LLC. Under the terms of the Private Placement Memorandum and Subscription Agreement, Plaintiff Greenberg expected to receive a 10% annual return in the form of 12 monthly payments in the amount of $841.67 commencing on April 28, 2019 and continuing until March 28, 2020, with the full repayment of his principal on or before March 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

c.      In April 2020, Plaintiff Greenberg was fraudulently induced by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, to enter into the sham ABFP Income Fund Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 3, LLC and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes and breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3

Parallel LLC and Plaintiff Greenberg.

      d.      To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

86.      Plaintiff Paul J. Davis is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania, who maintains his principal residence in Broomall, Delaware County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

      a.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around 2012, Plaintiff used qualified retirement funds to purchase $135,000 of unregistered securities in the form of shares of a limited partnership issued by Pillar Life Settlement Fund 4, L.P.

      b.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in or around 2015, Plaintiff used qualified retirement funds to purchase $50,000 of unregistered securities in the form of limited partnership interests issued by Pillar Life Settlement Fund I, L.P.

      c.      To date, Defendants have failed to repay Plaintiff his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

87.      Plaintiff William P. Betz, Jr. is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania and who maintains his principal residence in Feasterville Trevose, Bucks County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum dated March 1, 2019 and Subscription Agreement, on or about May 20, 2019, Plaintiff purchased $150,000 of unregistered securities in the form of two so-called "Class B" promissory notes issued by non-party ABFP Income Fund 3, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $1,250.00 a month commencing on June 28, 2019, and continuing until May 28, 2020, and Plaintiff's principal was to be repaid in full on or before May 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     Pursuant to a materially false and misleading Private Placement Memorandum dated March 1, 2019 and Subscription Agreement, on or about June 14, 2019, Plaintiff used qualified retirement funds to purchase $234,500 of unregistered securities in the form of two so-called "Class B" promissory notes issued by non-party ABFP Income Fund 3, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $1,954.17 a month commencing on July 28, 2019, and continuing until June 28, 2020, and Plaintiff's principal was to be repaid in full on or before June 25, 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement

c.     In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 3 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 3 Parallel, LLC. After making only two reduced monthly interest payments, Defendants, including Vagnozzi, ABFP, ABFP management,

ABFP Income Fund 3, LLC and ABFP Income Fund 3 Parallel, LLC, defaulted on the Amended and Restated Notes and breached the Exchange Agreement between ABFP Income Fund 3, LLC, ABFP Income Fund 3 Parallel, LLC and Plaintiff.

d.      Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, on or about August 30, 2019, Plaintiff used qualified retirement funds to purchase $295,500 of unregistered securities in the form of notes issued by non-party ABFP Income Fund 4, LLC. Under the terms of this investment, Defendants were obligated to make payments to Plaintiff in the amount of $2,955 a month commencing in October 2019 and continuing until September 2020, and Plaintiff's principal was to be repaid in full in September 2020. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

e.      In April 2020, Plaintiff was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 4 Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 4 Parallel, LLC. After making only two reduced monthly interest payments, Vagnozzi, ABFP Income Fund 4, LLC and ABFP Income Fund 4 Parallel, LLC, defaulted on the Amended and Restated Notes and breached the Exchange Notes Agreement between ABFP Income Fund 4, LLC, ABFP Income Fund 4 Parallel, LLC and Plaintiff.

f.      To date, Defendants have failed to repay Plaintiff any of his principal in these investments. Plaintiff has been damaged as a result of Defendants' fraudulent scheme alleged herein.

88.     Plaintiff Donald Dempsey is an adult individual who is a resident and domiciliary

of the State of New Jersey and who maintains his principal residence in Columbus, Burlington County. During the Class Period, Plaintiff invested in unregistered securities that were promoted and offered by Defendants.

a.     Pursuant to a materially false and misleading Private Placement Memorandum and Subscription Agreement, in early 2020, Plaintiff Dempsey purchased $100,000 of unregistered securities in the form of so-called "Promissory Notes" issued by non-party ABFP Income Fund 6, LLC. Under the terms of this investment, Defendants were obligated to make payments to Mr. Dempsey in the amount of 10 percent monthly, which was to continue for a term of 12 months. In March 2020, Defendants defaulted on the investment and breached the Subscription Agreement.

b.     In April 2020, Plaintiff Dempsey was fraudulently induced by Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, to enter into the sham ABFP Income Fund 6, LLC Exchange Offering, through which he acquired worthless Amended and Restated Notes issued by non-party ABFP Income Fund 6 Parallel. In August 2020, Vagnozzi, ABFP Income Fund 6, LLC, and ABFP Income Fund 6 Parallel, LLC, defaulted on the Amended and Restated Notes, and breached the Exchange Agreement between ABFP Income Fund 6 LLC, ABFP Income Fund 6 Parallel and Plaintiff Dempsey.

c.     To date, Defendants have failed to repay Plaintiff any of his principal investment. Plaintiff has been damaged as a direct and proximate result of Defendants' fraudulent scheme alleged herein.

89.     The table below summarizes each of the Plaintiffs' investments in unregistered securities promoted and sold by Defendants:

| Fund | Plaintiff(s) | Amount Invested |
|---|---|---|
| ABFP Income Fund, LLC / ABFP Income Fund Parallel LLC | Dennis Melchior | $300,000 |
| | Thomas D. Green | $620,000 |
| | Maureen A. Green | $299,000 |
| | Shawn P. Carlin | $300,000 |
| | Marcy H. Kershner | $100,000 |
| | Bonnie Beeman & Doug Kunkel | $210,000 |
| ABFP Income Fund 2, L.P. / ABFP Income Fund 2 Parallel L.P. | Dominick Bellizzie & Janet Kaminski | $100,000 |
| | Glen W. Cole | $200,000 |
| | Bruce Chasan | $100,000 |
| | Barbara J. Barr & Michael Barr | $112,000 |
| | Bonnie Beeman & Doug Kunkel | $151,000 |
| | Bonnie Beeman & Doug Kunkel | $250,000 |
| ABFP Income Fund 3, LLC / ABFP Income Fund 3 Parallel, LLC | Joseph Brock | $200,000 |
| | Linda Letier | $125,000 |
| | Dominick Bellizzie | $105,000 |
| | W. Bruce Butler | $399,000 |
| | Robert Betz | $101,000 |
| | Roy Mills | $240,000 |
| | Jace A. Weaver | $101,000 |
| | Robert DelRocco | $400,000 |
| | Marilyn Swartz | $50,000 |
| | Robert Yori | $250,000 |
| | Joan L. Yori | $102,000 |
| | Raymond D. Fergione | $340,000 |
| | James E. Hilton | $134,000 |
| | Joseph Greenberg | $101,000 |
| | William P. Betz, Jr. | $150,000 |
| | William P. Betz, Jr. | $234,500 |
| ABFP Income Fund 4, LLC / ABFP Income Fund 4 Parallel, LLC | Raymond G. Heffner | $530,000 |
| | Cynthia Butler | $300,000 |
| | Laurie H. Sutherland & William M. Sutherland | $120,000 |
| | Neil Benjamin | $100,000 |
| | Jordan Lepow | $50,000 |
| | Raymond Bruce Boehm | $73,000 |
| | William P. Betz, Jr. | $295,500 |
| ABFP Income Fund 6, LLC / ABFP Income Fund 6 Parallel, LLC | Cynthia & W. Bruce Butler | $501,000 |

| | Michael D. Groff | $60,000 |
|---|---|---|
| | John W. Harvey | $100,000 |
| | Jace A. Weaver | $250,000 |
| | Donald Dempsey | $100,000 |
| | Charles P. Moore | $251,000 |
| Spartan Income Fund, LLC / Spartan Income Fund Parallel, LLC | Robert Hawrylak | $50,000 |
| Pisces Income Fund LLC / Pisces Income Fund Parallel LLC | Teresa Kirk-Junod | $100,000 |
| | Linda Letier | $261,000 |
| | Marcy H. Kershner | $113,178 |
| | George S. Roadknight | $50,000 |
| | Fred Barakat | $251,000 |
| | Mark Tarone | $96,000 |
| Capricorn Income Fund I, LLC / Capricorn Income Fund I Parallel LLC | Barbara J. Barr & Michael Barr | $120,000 |
| | Doug Kunkel | $226,000 |
| | Bonnie Beeman & Doug Kunkel | $100,000 |
| | Bonnie Beeman | $201,000 |
| Merchant Services Income Fund, LLC | Raymond Fergione | $110,500 |
| ABFP Multi-Strategy Fund, LP | Fred Barakat | $100,000 |
| | Mark D. Newkirk | $100,000 |
| | Joseph Camaioni | $125,000 |
| | Joan L. Yori | $200,000 |
| | Doug Kunkel | $150,000 |
| | E. Lavorini & E. Doyle | $500,000 |
| | Joseph Greenberg | $150,000 |
| ABFP Multi-Strategy Fund 2, LP | Edward Woods | $75,000 |
| | Jace A. Weaver | $100,000 |
| | Robin Lynn Boehm | $122,000 |
| | Charles P. Moore | $100,000 |
| Pillar Life Settlement Fund 1, LP | Thomas D. Green | $100,000 |
| | Joseph Brock | $169,000 |
| | Leonard Goldstein | $60,000 |
| | Paul J. Davis | $50,000 |
| Pillar 2 Life Settlement Fund, LP | John Butler | $100,000 |
| Pillar 3 Life Settlement Fund, LP | John Madden | $100,000 |
| Pillar 4 Life Settlement Fund, LP | Thomas D. Green | $211,000 |
| | Chantal Boyer | $50,000 |
| | Paul J. Davis | $135,000 |
| Pillar 5 Life Settlement Fund, LP | Patricia Crossin-Chawaga | $99,000 |

| | | |
|---|---|---|
| Pillar 6 Life Settlement Fund, LP | Barbara J. Barr & Michael Barr | $250,000 |
| Pillar 7 Life Settlement Fund, LP | Glen W. Cole, Jr. | $125,000 |
| Pillar 8 Life Settlement Fund, LP | Marcy H. Kershner | $100,000 |
| | Bruce Chasan | $75,000 |
| | Michael Swan | $109,500 |
| | Ernest S. Lavorini | $100,000 |
| | Ernest S. Lavorini | $58,500 |
| ATRIUM LEGAL CAPITAL, LLC | Thomas D. Green | $100,000 |
| | Raymond D. Fergione | $161,800 |
| ATRIUM LEGAL CAPITAL 2, LLC | David Jakeman | $100,000 |
| | Mark Tarone | $50,000 |
| ATRIUM LEGAL CAPITAL 3, LLC | David Jakeman | $150,000 |
| | E. Lavorini & E. Doyle | $200,000 |
| ATRIUM LEGAL CAPITAL 4, LLC | Mark D. Newkirk | $50,000 |
| FALLCATCHER, INC. | Thomas D. Green | $100,000 |
| PROMED INVESTMENT CO., L.P. | Thomas D. Green | $100,000 |
| | Charles P. Moore | $110,000 |
| WOODLAND FALLS INVESTMENT FUND, LLC | Thomas D. Green | $100,000 |
| | | |
| **TOTAL INVESTED** | | **$15,019,478** |

## **Defendants**

90.     Defendant Dean J. Vagnozzi is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania, who has a background as an insurance agent but is better known for doing business through the entity ABetterFinancialPlan.com d/b/a A Better Financial Plan, which Vagnozzi owns, controls, and/or exercises dominion over making it his corporate alter ego. Vagnozzi maintains his principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. In 2008, Defendant Vagnozzi obtained Series 6 and Series 63 broker-dealer licenses, both of which were suspended by the SEC, thus precluding him from engaging in the investment, banking and securities businesses.

91.     Defendant Vagnozzi's control over each of the ABFP entities identified herein included, without limitation, control over each entity's brokerage and bank accounts, signatory

authority over all contractual agreements entered into or on behalf of such entities, and every other aspect of these businesses.

92.    Defendant Christa Vagnozzi, the spouse of Defendant Dean Vagnozzi, is an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania. Upon information and belief, Defendant Christa Vagnozzi is in possession of money and other assets that were derived from her husband's fraudulent scheme.

93.    Defendant Alec Vagnozzi, the son of Defendant Dean Vagnozzi, is a former ABFP employee, and an adult individual who is a resident and domiciliary of the Commonwealth of Pennsylvania. Defendant Alec Vagnozzi is a member of the Pisces Income Fund, LLC, which sold high-risk merchant cash advance investments. Defendant Alec Vagnozzi made false and misleading statements to Plaintiffs and the Class concerning investments offered by ABFP for the purpose of selling such securities to investors during the Class Period.

94.    Defendant Albert Vagnozzi is an adult individual and the brother of Defendant Dean Vagnozzi who was an employee, agent and/or affiliate of ABFP during the Class Period. During the Class Period Defendant Albert Vagnozi served as member, promoter and seller of securities issued by Defendant Capricorn Income Fund I, LLC, which sold high-risk merchant cash advance investments. Defendant Albert Vagnozzi made false and misleading statements to Plaintiffs and the Class concerning investments offered by ABFP for the purpose of selling such securities to investors during the Class Period.

95.    Defendant Shannon Westhead is an adult individual and a former ABFP employee who is a member of the Pisces Income Fund, LLC, which sold high-risk merchant cash advance investments. Defendant Westhead made false and misleading statements to Plaintiffs and the Class concerning investments offered by ABFP for the purpose of selling such securities to investors

during the Class Period.

96.     Defendant Jason Zwiebel is an adult individual and a former ABFP employee who made false and misleading statements to Plaintiffs and members of the Class concerning investments offered by ABFP for the purpose of selling such securities to investors during the Class Period.

97.     Defendant Andrew Zuch is an adult individual and a former ABFP employee who made false and misleading statements to Plaintiffs and the Class concerning investments offered by ABFP for the purpose of selling such securities to investors during the Class Period.

98.     Defendant Michael Tierney is an adult individual and a former employee of ABFP. During the Class Period, Defendant Tierney served as member, promoter and seller of unregistered securities issued by Merchant Services Income Fund, LLC, which sold high-risk merchant cash advance investments. Defendant Tierney made false and misleading statements to Plaintiffs and the Class concerning investments offered by ABFP for the purpose of selling such securities to investors during the Class Period.

99.     Defendant Paul Terence Kohler is an adult individual and a former employee, agent and/or affiliate of ABFP. During the Class Period Defendant Kohler served as member, promoter and seller of unregistered securities issued by Defendant Capricorn Income Fund I, LLC, which sold high-risk merchant cash advance investments. Defendant Kohler made false and misleading statements to Plaintiffs and the Class concerning investments offered by ABFP for the purpose of selling such securities to investors during the Class Period.

100.     Defendant John Myura, an adult individual who is a resident of the State of Delaware, is a former ABFP employee is the sole member of Spartan Income Fund, LLC, which sold high-risk merchant cash advance investments. Defendant Myura made false and misleading

statements to Plaintiffs and the Class concerning investments offered by ABFP for the purpose of selling such securities to investors during the Class Period.

101.    Defendant John W. Pauciulo ("Pauciulo") is a partner in the law firm of Eckert Seamans Cherin & Mellott, LLC, who maintains his professional office at 50 South 16th St., 22nd Floor, Philadelphia, PA 19102. Pauciulo has been Vagnozzi's lawyer for at least 16 years and he has put together most, if not all, ABFP securities offerings. Pauciulo has played a central role in the fraudulent scheme alleged in this action. In a video for ABFP, Pauciulo acknowledged his professional obligations to make full and complete disclosures to prospective investors, stating: "And when I began working with Dean and we talked about investing in this asset class, *my job was to make sure that I created a document for an investor that they could pick up, read, and understand and get comfortable with the asset class, knowing that they had full and fair disclosure about the benefits and the potential risks of the asset class*." (Emphasis added). However, as detailed below, Pauciulo failed to create offering documents that truthfully, accurately, and completely disclosed the risks of the ABFP investments. Instead, he repeatedly made false and misleading statements and material omissions to investors for the purpose of enriching himself and Defendants.

102.    Defendant Eckert Seamans Cherin & Mellott, LLC ("Eckert Seamans") is a national law firm with approximately 350 attorneys, that maintain offices in 15 cities, including Philadelphia, Pennsylvania.

103.    Defendant Spartan Income Fund, LLC is a Delaware limited liability company that is engaged in the business of issuing unregistered merchant cash advance investments, and maintains its principal place of business at 24 Degas Circle, Wilmington, DE 19808. Former ABFP employee John Myura is the sole member of Spartan Income Fund, LLC. Defendants Vagnozzi,

ABFP and ABFP management were promoters and unregistered sellers of securities offered by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of merchant cash advance investments issued by this entity, including Private Placement Memoranda and Subscription Agreements.

104.     Defendant Pisces Income Fund LLC is a Delaware limited liability company that is engaged in the business of issuing unregistered merchant cash advance investments, and maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Former ABFP employees Shannon Westhead and Alec Vagnozzi are members of the Pisces Income Fund LLC. Defendants Dean Vagnozzi, ABFP, ABFP Management, Shannon Westhead and Alec Vagnozzi were promoters and sellers of unregistered securities offered by this entity and raised at least **$14,800,000** from **96** investors. Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of merchant cash advance investments issued by this entity, including Private Placement Memoranda and Subscription Agreements.

105.     Defendant Capricorn Income Fund I, LLC is a Delaware limited liability company that was formed in May 2018, that is engaged in the business of issuing unregistered merchant cash advance investments, and maintains its principal place of business at 21 West Front Street, Suite 300, Media, PA 19063. Capricorn Income Fund I, LLC's Form D filed with the SEC stated that the fund was relying on the exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D, signed by Defendant Pauciulo, identifies former ABFP employees and/or affiliates Paul Terence Kohler and Albert Vagnozzi as promoters of the Capricorn Income Fund I, LLC. Defendants Dean Vagnozzi, ABFP, ABFP Management, Kohler, and Albert Vagnozzi sold approximately **$18,694,211** of unregistered securities issued by this entity and

Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of merchant cash advance investments issued by this entity, including Private Placement Memoranda and Subscription Agreements.

106.    Defendant Merchant Services Income Fund, LLC is a Delaware limited liability company that was formed on or about January 16, 2019, that is engaged in the business of issuing unregistered merchant cash advance investments, and maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Merchant Services Income Fund, LLC's Form D filed with the SEC stated that the fund was relying on the exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D, signed by Defendant Pauciulo, identifies former ABFP employee Defendant Michael Tierney as promoter of the Merchant Services Income Fund, LLC. Defendants Dean Vagnozzi, Michael Tierney, ABFP, ABFP Management, Merchant Services Income Fund, LLC sold approximately **$3,372,450** of unregistered securities issued by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of merchant cash advance investments issued by this entity, including Private Placement Memoranda and Subscription Agreements.

107.    Defendant Coventry First LLC is a limited liability company engaged in the sale of life settlement funds that maintains its principle place of business at 7111 Valley Green Road, Fort Washington, Pennsylvania. After the collapse of Life Partners in 2015, Coventry First LLC became Dean Vagnozzi's primary source of life insurance policies for his life settlement funds.

108.    Defendant Pillar Life Settlement Fund I, L.P. ("Pillar 1") is a Delaware limited partnership located in Collegeville, PA, that was formed in November 2010. Its sole general partner is ABFP Management. Pillar 1 is an investment fund comprised of ownership interests in

life settlement contracts. Vagnozzi has served as Pillar 1's promoter and Defendants Pauciulo and

Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering

and sale of unregistered securities issued by this entity, including Private Placement Memoranda

and Subscription Agreements.

109.    Defendant Pillar II, Life Settlement Fund, L.P. ("Pillar 2") is a Delaware limited

partnership located in Collegeville, PA, that was formed in July 2014. Its sole general partner is

ABFP Management. Pillar 2 is an investment fund comprised of ownership interests in life

settlement contracts. Pillar 2's Form D filed with the SEC stated that the fund was relying on the

exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D

identifies Vagnozzi as Pillar 2's promoter and Defendants Pauciulo and Eckert Seamans drafted

all documents pertaining to the formation of this entity and the offering and sale of unregistered

securities issued by this entity, including Private Placement Memoranda and Subscription

Agreements.

110.    Defendant Pillar 3 Life Settlement Fund, L.P. ("Pillar 3") is a Delaware limited

partnership located in Collegeville, PA, that was formed in April 2012. Its sole general partner is

ABFP Management. Pillar 3 is an investment fund comprised of ownership interests in life

settlement contracts. Pillar 3's Form D filed with the SEC stated that the fund was relying on the

exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D,

signed by Defendant Pauciulo, identifies Vagnozzi as Pillar 3's promoter and Defendants Pauciulo

and Eckert Seamans drafted all documents pertaining to the formation of this entity and the

offering and sale of unregistered securities issued by this entity, including Private Placement

Memoranda and Subscription Agreements.

111.     Defendant Pillar 4 Life Settlement Fund, L.P. ("Pillar 4") is a Delaware limited partnership located in Collegeville, PA, that was formed in July 2014. Its sole general partner is ABFP Management. Pillar 4 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $4,155,250 from 50 investors. Pillar 4's Form D filed with the SEC stated that the fund was relying on the exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D identifies Vagnozzi as Pillar 4's promoter and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

112.     Defendant Pillar 5 Life Settlement Fund, L.P. ("Pillar 5") is a Delaware limited partnership located in Collegeville, PA, that was formed in September 2017. Its sole general partner is ABFP Management. Pillar 5 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $4,912,941 from 40 investors. Pillar 5's Form D filed with the SEC stated that the fund was relying on the exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D, signed by Defendant Pauciulo, identifies Vagnozzi as Pillar 5's promoter and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

113.     Defendant Pillar 6 Life Settlement Fund, L.P. ("Pillar 6") is a Delaware limited partnership located in Collegeville, PA. Its sole general partner is ABFP Management. Pillar 6 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $6,217,950 from 72 investors. Pillar 6 did not file a Form D with the SEC.

Vagnozzi has served as Pillar 6's promoter and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

114.    Defendant Pillar 7 Life Settlement Fund, L.P. ("Pillar 7") is a Delaware limited partnership located in Collegeville, PA. Its sole general partner is ABFP Management. Pillar 7 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $6,620,000 from 78 investors. Pillar 7 did not file a Form D with the SEC. Defendant Vagnozzi has served as Pillar 7's promoter and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

115.    Defendant Pillar 8 Life Settlement Fund, L.P. ("Pillar 8") is a Delaware limited partnership located in Collegeville, PA, that was formed in October 2017. Its sole general partner is ABFP Management. Pillar 8 is an investment fund comprised of ownership interests in life settlement contracts, for which Vagnozzi raised at least $11,056,660 from 99 investors. Pillar 8's Form D filed with the SEC stated that the fund was relying on the exemption from registration provided pursuant to Rule 506(b) of Regulation D. The Form D, signed by Defendant Pauciulo, identifies Vagnozzi as Pillar 8's promoter and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

116.    Defendant Atrium Legal Capital, LLC ("Atrium"), formed on or about June 16, 2017, is a Pennsylvania limited liability company that is engaged in the business of issuing unregistered securities in the form of promissory notes that purport to be backed by interests in personal injury lawsuits that maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendant Vagnozzi is the sole member, promoter and seller of unregistered securities issued by Atrium Legal Capital, LLC. Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

117.    Defendant Atrium Legal Capital 2, LLC ("Atrium 2"), formed on or about October 2, 2019, is a Pennsylvania limited liability company that is engaged in the business of issuing unregistered securities in the form of promissory notes that purport to be backed by interests in personal injury lawsuits that maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendant Vagnozzi is the sole member, promoter and seller of unregistered securities issued by Atrium Legal Capital 2, LLC. Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

118.    Defendant Atrium Legal Capital 3, LLC ("Atrium 3") is a Pennsylvania limited liability company that is engaged in the business of issuing unregistered securities in the form of promissory notes that purport to be backed by interests in personal injury lawsuits that maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendant Vagnozzi is the sole member, promoter and seller of unregistered securities issued by

Atrium Legal Capital 3, LLC. Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

119.    Defendant Atrium Legal Capital 4, LLC ("Atrium 4"), formed on or about June 5, 2020, is a Pennsylvania limited liability company engaged in the business of issuing unregistered securities in the form of promissory notes that purport to be backed by interests in personal injury lawsuits and maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendant Vagnozzi is the sole member, promoter and seller of unregistered securities issued by Atrium Legal Capital 4, LLC. Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

120.    Defendant Fallcatcher, Inc. ("Fallcatcher") is a Delaware corporation that had its principal place of business in West Palm Beach, Florida, during at least part of 2018. With a predecessor entity organized under Florida law, Fallcatcher purportedly operated for the purpose of creating, marketing, and selling biometric devices and software to track patients receiving treatment for substance addiction. Fallcatcher's stock is privately held. Defendant Vagnozzi has served as Fallcatcher's promoter and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

121.    Defendant Promed Investment Co., L.P. is a Delaware limited partnership that is engaged in the business of issuing unregistered securities in the form of limited partnership

interests, that maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Non-party Management is the General Partner of the ABFP Multi-Strategy Fund, LP. Defendant Vagnozzi is the sole member of Promed Investment Co., L.P. Defendants Vagnozzi, ABFP and ABFP management were promoters and unregistered sellers of securities offered by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

122.    Defendant Woodland Falls Investment Fund, LLC is a Delaware limited liability company that is engaged in the business of issuing unregistered securities in the form of LLC interests that maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendant Vagnozzi is the sole member of Woodland Falls Investment Fund, LLC. Defendants Vagnozzi, ABFP and ABFP management were promoters and unregistered sellers of securities offered by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

## THE RECEIVERSHIP ENTITIES

123.    On August 11, 2020, the U.S. District Court for the Southern District of Florida entered an Amended Order Appointing Ryan K. Stumphauzer as Receiver in the SEC Action. Pursuant to this order, A Better Financial Plan, ABFP Management Co., LLC, ABFP Income Funds 1-6, ABFP Income Funds 1-6 Parallel, ABFP Multi-Strategy Fund, LP, and ABFP Multi-Strategy Fund 2, LP, have been placed into receivership (herein, the "Receivership Entities") and all litigation against such entities has been stayed. But for the stay of litigation, the Receivership

Entities would be named as defendants in this action. Descriptions of these entities are provided below.

124. Receivership Entity ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan ("ABFP") is a Pennsylvania limited liability company formed by Defendant Vagnozzi on November 12, 2010, engaged in the business of marketing, selling, and issuing unregistered securities. ABFP maintains its principal place of business at 114 Ithan Lane, Collegeville, PA 19426. Vagnozzi owns and manages ABFP and claims it is his corporate alter ego. Upon information and belief, Defendant Pauciulo drafted all documents pertaining to the formation of this entity.

125. Receivership Entity ABFP Management Company LLC ("ABFP Management"), formed on March 11, 2010 as "Pillar Life Settlement Management Company, LLC," is a limited liability company organized and existing under the laws of Delaware, with a principal place of business located at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. On or about February 15, 2018, Vagnozzi caused to be filed with the Delaware Secretary of State, Division of Corporations, an Amendment to the Certificate of Formation to change the name of this entity to its current name. ABFP Management is wholly owned by Vagnozzi, and is engaged in the business of providing management services related to organizing and operating companies formed for the purpose of raising funds from investors and using the investor funds to invest in alternative investments. ABFP Management provides these and other management services for Par Funding Agent Funds in exchange for a portion of the investment returns. On information and belief, Defendant Pauciulo drafted all documents pertaining to the formation of this entity.

126. Receivership Entity ABFP Income Fund, LLC, a Delaware limited liability company formed on January 12, 2018, is engaged in the business of issuing unregistered merchant

cash advance investments, and maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendants Vagnozzi, ABFP and ABFP management were promoters and sellers of unregistered securities offered through this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering of merchant cash advance investments through this entity. According to documents filed with the SEC and the ABFP Income Fund, LLC Subscription Agreements, the minimum investment accepted from an outside investor is $75,000. According to the SEC Complaint, beginning no later than February 2, 2019, Vagnozzi, through ABFP Income Fund, LLC raised at least **$22 million** for Par Funding through the offer and sale of unregistered merchant cash investments to at least 99 investors.

127.     Receivership Entity ABFP Income Fund 2, L.P., is a Delaware limited partnership formed in July 2018, that maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Vagnozzi, through ABFP Management, formed ABFP Income Fund 2 for the purpose of raising investor money to pool and invest in the unregistered partnership interests that are invested in Par Funding merchant cash advance loans. Defendants Vagnozzi, ABFP and ABFP management were promoters and sellers of unregistered securities offered by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering of unregistered merchant cash advance investments. According to documents filed with the SEC and the ABFP Income Fund 2, L.P. Subscription Agreements, the minimum investment accepted from an outside investor is $75,000. According to the SEC Complaint, beginning no later than August 8, 2018, Vagnozzi, through ABFP Income Fund 2, has raised at least **$6 million** for Par Funding, through the offer and sale of limited partnership interests in ABFP Income Fund 2 to at least 49 investors.

128.     Receivership Entity ABFP Income Fund 3, LLC, a Delaware limited liability company formed in January 2019, is engaged in the business of issuing unregistered securities backed by merchant cash advance notes, that maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendants Vagnozzi, ABFP and ABFP management were promoters and sellers of unregistered securities offered through this entity. Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering of unregistered merchant cash advance investments issued by this entity, including Private Placement Memoranda and Subscription Agreements. According to documents filed with the SEC and the Subscription Agreements, the minimum investment accepted from an outside investor is $50,000. Vagnozzi, through ABFP Income Fund 3, LLC raised at least **$28,826,000** for Par Funding through the offer and sale of unregistered merchant cash investments to approximately 123 investors.

129.     Receivership Entity ABFP Income Fund 4, LLC, a Delaware Limited-Liability Company formed on April 8, 2019, is engaged in the business of issuing unregistered debt securities, and maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendants Vagnozzi, ABFP and ABFP management were promoters and sellers of unregistered securities issued by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering of unregistered merchant cash advance investments issued by this entity, including Private Placement Memoranda and Subscription Agreements. According to documents filed with the SEC and the subscription agreements, the minimum investment accepted from an outside investor is $50,000. Vagnozzi, through ABFP Income Fund 4, LLC raised at least **$21,276,436** for Par Funding through the offer and sale of unregistered merchant cash investments to approximately 107 investors.

130.     Receivership Entity ABFP Income Fund 6, LLC, a Delaware limited liability company formed on November 4, 2019, is engaged in the business of issuing unregistered securities backed by merchant cash advance notes, and maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Defendants Vagnozzi, ABFP and ABFP management were promoters and sellers of unregistered securities offered by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sales of unregistered merchant cash advance investments issued by this entity, including Private Placement Memoranda and Subscription Agreements. Vagnozzi, through ABFP Income Fund 4, LLC raised at least **$18,376,074** for Par Funding through the offer and sale of unregistered merchant cash investments to approximately 101 investors.

131.     Receivership Entity ABFP Multi-Strategy Fund, LP is a Delaware limited partnership that is engaged in the business of issuing unregistered securities in the form of limited partnership interests that purport to be backed by a combination of merchant cash advance loans and in-force life insurance policies, and maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Non-party Management is the General Partner of the ABFP Multi-Strategy Fund, LP.  Defendant Vagnozzi is the sole member of Multi-Strategy Fund, LP. Defendants Vagnozzi, ABFP and ABFP management were promoters and unregistered sellers of securities offered by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements.

132.     Receivership Entity ABFP Multi-Strategy Fund 2, LP is a Delaware limited partnership that is engaged in the business of issuing unregistered securities in the form of limited

partnership interests that purport to be backed by a combination of merchant cash advance loans and in-force life insurance policies, and maintains its principal place of business at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406. Non-party Management is the General Partner of the ABFP Multi-Strategy Fund, LP. Defendant Vagnozzi is the sole member of Multi-Strategy Fund, LP. Defendants Vagnozzi, ABFP and ABFP management were promoters and unregistered sellers of securities offered by this entity and Defendants Pauciulo and Eckert Seamans drafted all documents pertaining to the formation of this entity and the offering and sale of unregistered securities issued by this entity, including Private Placement Memoranda and Subscription Agreements. During the Class Period, approximately **77** members of the Class invested approximately **$10,234,500** in ABFP Multi-Strategy Fund 2, LP, which Defendants represented to have a total death benefit of $11.6 million.

133.    Receivership entities ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel L.P.; ABFP Income Fund 3 Parallel, LLC; ABFP Income Fund 4 Parallel, LLC; and ABFP Income Fund 6 Parallel, LLC; and Defendants Capricorn Income Fund I Parallel, LLC, Spartan Income Fund Parallel, LLC, and Pisces Income Fund Parallel LLC are Delaware business entities that were formed by Defendants Vagnozzi, Pauciulo, and Eckert Seamans on or about April 22, 2020, for the purpose of restructuring ABFP's unregistered merchant cash advance investments.

134.    At all times relevant to this action, Vagnozzi owned, controlled, and/or exercised dominion over each of the ABFP entities named herein including, without limitation, ABFP; ABFP Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; Spartan Income Fund, LLC; Pisces Income Fund LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel, LLC; ABFP Income Fund 3 Parallel, LLC; ABFP Income Fund 4 Parallel, LLC; ABFP

Income Fund 6 Parallel, LLC; Spartan Income Fund Parallel, LLC; and Pisces Income Fund Parallel LLC (collectively, the "MCA Funds") which Vagnozzi has operated from the ABFP offices located at 234 Mall Boulevard, Suite 270, King of Prussia, PA 19406, making these companies his de facto corporate alter egos.

## FACTS

**The Unsecured ABFP Merchant Cash Advance Investments**

135.    ABFP sells unregistered securities to individuals who invest their hard-earned savings, including retirement funds held in IRAs. ABFP's unregistered securities offerings include investments that are backed by merchant cash advance loans to small businesses that lack sufficient creditworthiness to obtain conventional business loans and lines of credit from banks. ABFP also offers so-called life settlement funds (including the ABFP Multi-Strategy Fund 1 and 2, and the Pillar Life Settlement Funds 1-8); the litigation funding investments (including Atrium Legal Capital funds 1-4), real estate investments (including Woodland Falls Investment Fund, LLC), and other alternative asset investments (including Fallcatcher, Inc. and Promed Investment Co., L.P.)

136.    Individual mom and pop investors typically learn about Defendant Vagnozzi and ABFP through Vagnozzi's pervasive advertisements that aired (until at least July 24, 2020 when the SEC Action against Vagnozzi and ABFP commenced) on KYW News Radio 1060 and Talk Radio 1210 WPHT, in which Vagnozzi claimed "[e]very single one of [his] investors earns a 10% annual return, with their interest check deposited into their bank account on the same day every month, and all of their principal is returned to them after just one year."[23] Vagnozzi likewise promoted ABFP on Facebook and other social media platforms. Although these ads do not detail

---

[23] DiStefano, Philadelphia Inquirer, *KOP firm's ad offers a '10% annual return.' Is that legit?* (Aug. 6, 2019), https://www.inquirer.com/business/vagnozzi-better-financial-plan-investor-risk-20190806.html

the nature of the investments offered by Vagnozzi and ABFP, he claims that ABFP is a "recession proof investment."[24] The economic events since March 2020 have proven this claim to be false.

137.    During his investing seminars, which are really just in-person infomercials for ABFP's investment products, Vagnozzi represents that the ABFP merchant cash investments provide 10% monthly interest payments and a 100% return of principal after one year (*i.e.*, when the underlying Merchant Cash Advance loans comes due). He makes substantially similar representations about his life settlement funds, litigation funds, and real estate investments.

138.    Vagnozzi further promotes his investing schemes through a book he self-published in 2016, titled: "A Better Financial Plan: Significantly Improve Your Finances Without the Help of Wall Street."

139.    Vagnozzi's ads routinely emphasize the assistance of his attorneys and co-conspirators, Defendants Pauciulo and Eckert Seamans, who approve each of his ads. During these advertisements, Vagnozzi falsely claims that ABFP investments (*i.e.*, merchant cash funds, life settlement funds, litigation funds, and real estate funds) are safer than conventional investments:

> After sixteen years of testing creative investment strategies, A Better Financial Plan, LLC now boasts five unconventional investment offerings in five different industries *that offer lower risk than investing in Wall Street* with a much more predictable upside. None of them are available through traditional brokerage firms. *The firm provides safe investments* that deliver outstanding returns and fixed future payouts *by sidestepping the volatility of the stock market*, unimpressive returns offered by indexed annuities, and unreliable prices of gold and silver. *These investment opportunities* are backed by two of the largest international companies in the world and *were created with the help of one of the nation's largest law firms*.[25]

---

[24] *Id.*

[25] Vagnozzi paid press release, "Dean Vagnozzi Offers Successful 401(k)-Alternative Retirement Planning Strategies for Savvy Investors," (Mar. 9, 2020), available at https://apnews.com/930402a35432e59d92bfc3239372dc03

(emphasis added). Defendant Pauciulo, in his capacity as a partner of Eckert Seamans and as longtime counsel to Vagnozzi and ABFP, has attended numerous ABFP investment seminars and free dinners, and participated in conference calls and other communications with ABFP investors, and thus, was aware of each of Defendant Vagnozzi's statements. Yet, Pauciulo and Eckert Seamans took no steps to correct, clarify, or repudiate such statements.

140.    Additional examples of Defendant Vagnozzi's materially false and misleading radio advertisements[26] include the following:

### Advertisement A.

Dean Vagnozzi, president of A Better Financial Plan.  And without ever leaving your house, we can introduce you to two alternative investments that were put together **with the help of one of Philadelphia's largest law firms**.  They are the **perfect combination of safety and high yields** and they absolutely need to be a piece of your portfolio today.  **They have fixed future pay outs**, they don't change value every day like the stock market, and they are not annuities.  **One investment pays a 10 percent return with interest paid quarterly** and **all of your original investment is returned after just two years**.  **The other investment has a 14 percent targeted return** and is backed by some of the largest most financially secure companies in the world.  These two investments are better than anything in your portfolio, anything.  You can invest with cash or IRA dollars with no taxes or penalties, so grab your cell phone and listen to a free recorded message for more information.  Call 855 999 1346.  That's 855 999 1346.  Call now.

(emphasis added). In order to falsely convey trustworthiness and financial stability, Defendant Vagnozzi touts ABFP's intimate working relationship with Defendant Eckert Seamans, which was involved in every offering of ABFP securities and Defendant Vagnozzi's claims that ABFP's investments have a promised payout of 10 percent and 14 percent, depending upon which alternative asset investment is selected.

141.    **Advertisement B.**

Dean Vagnozzi of A Better Financial Plan and we're excited to tell you about a new investment for our credit investors that's going to be big, really big. **This investment**

---

[26] Radio advertisements A-G were recorded from on-air broadcasts on KYW 1060 and WPHT 1210, and transcribed by a certified court reporter.

*was put together with one of Philadelphia's largest law firms. It will pay you a 10 percent rate of return with your interest paid to you monthly and 100 percent of your principal is returned to you after just one year*.  And here is the best part*: It's insured. Yep. It's insured. What that means is in the slim event we don't pay you, one of the largest insurance companies in the world will.*  There's no catch. This investment is that good. So get ready to dump that lousy annuity you bought from the other guy and *kiss the market's volatility goodbye* and come get your hands on what we feel is the best investment in the existence. Join the financial movement that we're creating in this city. Grab your cell phone and listen to a free recorded message to learn more. Calm 855 999 1346. That's 855 999 1346. Call now.

(emphasis added). In order to falsely convey trustworthiness and financial stability, Defendant Vagnozzi's radio ad touts ABFP's intimate working relationship with Defendant Eckert Seamans, which was involved in every offering of ABFP securities and Vagnozzi's claims that ABFP's investments have a promised payout of 10 percent, which he falsely represents that the entire principal investment is insured (a claim Vagnozzi typically made about the merchant cash advance investments, despite the fact that there was no insurance that provided coverage for such investements). Finally, Vagnozzi falsely represents that ABFP's investments are immune to trends and volatility of the financial markets, which is untrue, as demonstrated by the failure of the ABFP investments when the market crashed in March 2020.

142.  **Advertisement C.**

Dean Vagnozzi, president of A Better Financial Plan, and without ever leaving your house we can introduce you to *four alternative investments that were put together with the help of one of Philadelphia's largest law firms*.  *They are secure, they deliver 10 to 14 percent annual returns, they have fixed future pay outs, they have absolutely nothing to do with Wall Street* and they are not annuities.  We can introduce you to over 1,000 clients that have invested over $200 million with us the past few years and they can vouch for everything I just said and not one of them lost a penny in any of our investments during this crisis.  *And the best thing is, we can safely deliver 10 to 14 percent annual returns for you, too*.  You can invest with cash or IRA dollars with no taxes or penalties.  So grab your cell phone and listen to a free recorded message for more information.  Call 855 371 1346.  That's 855 371 1346.  Call now.

(emphasis added). In order to falsely convey trustworthiness and financial stability, Defendant

Vagnozzi's radio ad touts ABFP's intimate working relationship with Defendant Eckert Seamans,

which was involved in every offering of ABFP securities. Vagnozzi also claims that the ABFP

investments are "secure" and that they will payout 10 percent to 14 percent annually—a guarantee

he reiterates at the end of the commercial when he claims, "we can safely deliver 10 to 14 percent

annual returns for you, too." Defendant Vagnozzi also claims that the ABFP investments are

immune to economic trends and volatility of the financial markets, which is untrue, as

demonstrated by the failure of the ABFP investments when the stock market crashed in March

2020.

143. **Advertisement D.**

Dean Vagnozzi, president of A Better Financial Plan.  Do you realize that just 3 percent of the public is financially independent?  Just 3 percent.  Do you think any of them got rich by putting money into a 401(k) or IRA?  Of course not.  They're financial vehicles for the masses.  Think about it.  Why would you put money every week into a financial vehicle that's locked up for 20 to 30 years, provides limited investment choices and defers your taxes until a time in the future when everyone thinks taxes will be higher?  *That's what a 401(k) or an IRA does and it makes zero financial sense.*  You can do better.  A lot better.  Let me show you how I save my money every week.  It's liquid, it's tax free, it's safe, and this past year I earned 21 percent and it's not an annuity.  Grab your cell phone and listen to a free recorded message for more information.  Call 855 999 1346.  That's 855 999 1346.  Call now.

(emphasis added). This advertisement irresponsibly advises prospective investors that they would

be better off financially if they entrust their hard-earned retirement savings to Vagnozzi and

ABFP's high risk, unregistered investments rather than contributing pre-tax dollars to their 401(k)

or IRA accounts and investing in registered securities and conventional mutual funds, despite the

tax advantages and relative safety of such accounts.

144.    **Advertisement E.**

This is the commercial that your financial advisor doesn't want you to hear.  And the same thing goes for the guy that sold you that annuity after you went to one of his free dinner seminars.  Dean Vagnozzi, president of A Better Financial Plan, and if you're a credit investor than listen up.  ***We worked with one of Philadelphia's largest law firms to put together an investment that will pay you a 10 percent return with an interest check sent to you monthly and 100 percent of your principal will be returned to you after just one year***.  And this best part is this investment is fully insured. ***That's right, it's insured***.  That means in the slim event my company doesn't pay you back your money, one of the largest insurance companies in the world will.  This investment is better than anything in your portfolio.  Anything.  Grab your cell phone and listen to a free recorded message to learn more.  Call 855 999 1346.  That's 855 999 1346.  Call now.

(emphasis added). Defendant Vagnozzi emphasizes, again, ABFP's intimate working relationship with Defendant Eckert Seamans, which was involved in every offering of ABFP securities, in a bid to make himself sound trustworthy and to make the high risk ABFP investments sound like a safe investment, which he promises "will pay" investors "a 10 percent return" and repayment of 100 percent of principal after one year. Although Vagnozzi does not identify the particular investment vehicle to which he is referring in this radio ad, the payment terms described above are identical to the terms of the ABFP Merchant Cash Advance Investments purchased by Plaintiffs and the members of the Class. Additionally, the advertisement above claims falsely that "this investment is fully insured." In fact, during the sales meetings Plaintiffs have been told that the investments are covered by $150 million in insurance coverage. Contrary to this assertion, there is no insurance that provides meaningful coverage for investors in any ABFP investments, and investors' principal remains 100 percent at-risk from the time of purchase until the time of redemption.

145.    **Advertisement F.**

Dean Vagnozzi, President of A Better Financial Plan.  And if you're somebody that's looking for your investments to generate a monthly income, then listen up. The absolute last thing that you want to buy today is an index annuity.  Sure, your

money is safe from loss but it's locked up from seven to ten years, you have limited access to your money along the way, and the returns are pathetic.  In fact, you will be lucky to earn 3 percent over ten years.  And if you do take income from those annuities, you are simultaneously eating up your principal.  You can do better. Much better.  ***We work with one of Philadelphia's largest law firms to put together an investment that's designed to beat the pants off any annuity you can find.***  In fact, we're calling it the anti annuity.  ***You'll receive between 8 to 12 percent returns that are paid out monthly with 100 percent of your principal returned in one year.*** Grab your cell phone and listen to a free recorded message for more information. Call 855 999 1346.  That's 855 999 1346.  Call now.

(emphasis added). Defendant Vagnozzi emphasizes again ABFP's intimate working relationship with Defendant Eckert Seamans, which was involved in every aspect of ABFP's operations, in a bid to make himself sound trustworthy and to make the high risk ABFP investments sound like a safe investment, which he promises "will pay" investors "a 10 percent return" and repayment of 100 percent of principal after one year. Although Vagnozzi does not identify the particular investment vehicle to which he is referring in this radio ad, the payment terms described above are identical to the terms of the ABFP Merchant Cash Advance Investments that were purchased by Plaintiffs and the members of the Class.

146.   **Advertisement G.**

Dean Vagnozzi, president of A Better Financial Plan, and I hope you and your family stay safe during these trying times.  I obviously can't protect you from this virus, but I can with absolute certainty introduce you to ***two alternative investments that are delivering 10 percent returns or better and they've not been impacted by the Corona virus or the stock market whatsoever and they are not annuities***.  You can learn about these investments without ever leaving your home.  One investment pays a 10 percent annual return with your interest paid quarterly and your principal investment is returned after two years.  The other investment has a 13 percent targeted return and is backed by some of the most financially secure companies in the world.  Invest with cash or IRA dollars.  These investments are awesome.  Grab your cell phone and listen to a free recorded message for more information.  Call 855 999 1346.  That's 855 999 1346.  Call now.

(emphasis added). The advertisement quoted above is Defendant Vagnozzi's latest pitch, and it is notable for now offering *two* alternative investments rather than the *four* alternative investments

he offered before the stock market crash in March 2020. This is because Defendants are now unable to offer ABFP Merchant Cash Advance Investments because the merchant cash advance market collapsed at the same time as other financial markets in early 2020. This about face on merchant cash advance investments belies Defendants' false and misleading statements that such investments were recession proof and immune to market forces.

147.    Defendants used radio advertisements, like the ones quoted above, to entice individuals to call ABFP's toll free number and arrange to attend an ABFP investing seminar— which is little more than in-person infomercials featuring Defendant Vagnozzi and his associates— or to come to ABFP's offices in King of Prussia, Pennsylvania or Marlton, New Jersey for an in-person meeting with Vagnozzi and/or members of his staff, including Defendants Albert Vagnozzi, Alec Vagnozzi, Shannon Westhead, Jason Zwiebel, Andrew Zuch, Michael Tierney, Paul Terence Kohler, John Myura, who were well trained by Defendant Vagnozzi to parrot his false and misleading sales pitches for each of ABFP's investment offerings.

148.    At an ABFP dinner seminar on November 21, 2019, described in the SEC Complaint, Vagnozzi and ABFP hosted more than 300 investors and solicited them to invest in Par Funding through Vagnozzi's ABFP funds. According to the SEC Complaint:

> Attendees were given a one-page flyer describing four investment opportunities, one of which was MCAs. ***The flyer described the MCA investment opportunity as having a 2% default rate*** and offering between 10-14% returns with principal returned in 1, 2, or 3 years.
>
> Vagnozzi spoke first at the November 2019 event and touted Par Funding's financial success.  He explained that Par Funding was buying a bank and was looking for investors to help – not because Par Funding couldn't write a check to buy the bank itself, but because bank regulations only let Par Funding be a 5% owner.
>
> Vagnozzi told the attendees that ***"[w]e have stock market alternative investments that are secure…"*** and that an investment in Par Funding does not have "too much risk" and the investment is "knocking it out of the park."

Vagnozzi then introduced Abbonizio, who told the audience that ***Par Funding has a default rate of 1%***, compared to an industry average default rate of 18.5%. Abbonizio also told the audience to focus on the default rate because that is the most important part of the investment.

Abbonizio then introduced LaForte, to whom he referred as the President.

LaForte told the audience that Par Funding is probably the most profitable cash advance company in the United States and maybe in the world.

LaForte also told the audience that he started the company about eight years ago with $500,000 of his own capital.

LaForte then introduced Cole, ***who touted the financial health of Par Funding***.

During the November 21, 2019 solicitation dinner event, Vagnozzi told potential investors that he has taken more than 500 investors into an investment with Par Funding.

SEC Compl. ¶¶ 95-104 (emphasis added).

149.    Vagnozzi's and representations to investors at the November 21, 2019 dinner were typical of the well-rehearsed sales pitch that Vagnozzi and Defendants Albert Vagnozzi, Alec Vagnozzi, Shannon Westhead, Jason Zwiebel, Andrew Zuch, Michael Tierney, Paul Terence Kohler, John Myura, and his other business associates have made to thousands of potential investors at numerous similar events and in-person investor meetings at ABFP's offices.

150.    Many of the Plaintiffs in this case recall seeing Defendant Pauciulo at ABFP-hosted dinners, including dinners on July 31, 2019 and November 21, 2019. Thus, Pauciulo was aware of Defendant Vagnozzi's false and misleading statements and material omissions at such dinners, including the event on July 31, 2019 and November 21, 2019, but he failed to correct, clarify or repudiate such statements.

151.    Vagnozzi and Defendants Albert Vagnozzi, Alec Vagnozzi, Shannon Westhead, Jason Zwiebel, Andrew Zuch, Michael Tierney, Paul Terence Kohler, and John Myura, lied to

investors at ABFP dinner events, at in-person investor meetings at ABFP's offices, and in ABFP advertisements, in order to conceal material adverse facts concerning Par Funding, ABFP's investment offerings, and Vagnozzi, including: (i) the high risk nature of Par Funding's lending practices; (ii) the true default rates of Par Funding's merchant cash advance loans, which were far greater than the 1% - 2% default rate claimed by Defendants; (iii) the extremely high risk of investing in unregistered ABFP securities backed by Par Funding's merchant cash advance loans; (iv) LaForte's criminal record and de facto control of Par Funding; (v) the three Cease-and-Desist Orders state securities regulators entered against Par Funding for violating state securities laws; (vi) the true result of the New Jersey Division of Securities' investigation of Par Funding; (vii) the fact that Par Funding was diverting investor funds to LaForte's wife, McElhone, and to L.M.E. 2017 Family Trust, McElhone's family trust; (viii) the SEC Cease-and-Desist Order and sanctions issued against Vagnozzi for violating state securities laws in connection with the Par Funding offering; (ix) a Cease-and-Desist Order and sanctions issued against ABFP for violating state securities laws in connection with the Par Funding offering; (x) a Cease-and-Desist Order and sanctions issued against Vagnozzi associate Abbonizio for violating state securities laws in connection with the Par Funding offering; and (xi) the fact that the Defendants' fraudulent scheme involving Par Funding merchant cash advance-backed securities imperiled every other investment sold by ABFP.

152.    After attending these in-person sales seminars, Plaintiffs and the members of the Class purchased unregistered securities backed by unsecured merchant cash advance loans (as well as life settlement funds, litigation funding investments, real estate investments, and other alternative investments) that are issued by a series of ABFP funds pursuant to Private Placement

Memoranda, Subscription Agreements and related offering documents created by Defendants Pauciulo and Eckert Seamans, and offered by ABFP, Vagnozzi, and his associates.

153.    The ABFP Funds' Private Placement Memoranda reflect that the ABFP Funds either sell unregistered securities, promising annual returns as high as 15%, with monthly interest payments and full return of principal at the end of the typical 12-month term or they sell investors purported interests in a limited partnership for $5,000 per single interest.

154.    The ABFP Private Placement Memoranda state that investor funds will be used to invest in promissory notes with unidentified merchant cash advance companies.

155.    Investors purchase ABFP Merchant Cash Advance Investments through either the transfer of funds directly to one of the ABFP entities or a self-directed IRA account at a Pennsylvania-based IRA administrator company, CamaPlan. In either event, Vagnozzi instructs investors to open an account and contribute funds to receive their investment funds through this IRA account.

156.    During seminars, radio commercials, and in other communications, Defendants Dean Vagnozzi, Albert Vagnozzi, Alec Vagnozzi, Shannon Westhead, Jason Zwiebel, Andrew Zuch, Michael Tierney, Paul Terence Kohler, and John Myura, falsely represent that the entire principal investment is insured. However, Vagnozzi and his associates have steadfastly refused to show any applicable policies of insurance to ABFP investors, and they have falsely represented that ABFP is not permitted to disclose such policies to investors. The truth is that there is no policy of insurance that provides any meaningful coverage for investors in ABFP investments, and thus, their principal remains 100 percent at-risk from the time of purchase until the time of redemption.

157.    Vagnozzi's and ABFP's false and misleading statements and material omissions, which were facilitated by Pauciulo and Eckert Seamans, had the desired result of separating

investors from their hard-earned savings through the sales of ABFP Merchant Cash Advance Investments, life settlement funds, litigation funding investments, and real estate investments. For example, Vagnozzi boasted to the Philadelphia Inquirer that in 2019 he was selling $1.5 million worth of ABFP Merchant Cash Advance Investments each week.[27]

158.     By March 2020, as alleged in the SEC Complaint, Vagnozzi claimed 600 investors had invested in Par Funding through him. Through investments offerings, ABFP Income Fund raised at least $22,309,000 from investors since February 19, 2018, and ABFP Income Fund 2 raised at least $6,322,500 from investors since August 8, 2018.

159.     Vagnozzi has admitted in emails with investors that he would receive a commission or so-called finder's fee from Par Funding for every dollar he raised for them. ABFP takes substantial commissions up-front then transmits the remaining funds to Par Funding. Par Funding then loans the funds to small merchant borrowers pursuant to a Merchant Cash Advance Agreement, which are small loans to businesses that lack credit worthiness and bear usurious interest rates that are as high as 400%. Owners of the business must personally guarantee these loans.

160.     Vagnozzi also sells Par Funding merchant cash investments through a network of more than 40 Agent Funds, which he manages through ABFP Management in exchange for 25% of the Agent Funds' profits.[28] Vagnozzi is instrumental in recruiting people to start Agent Funds, and purports to instruct these recruits how to serve as a "finder" rather than an unregistered broker-dealer so as to sidestep any requirements under securities laws. He also provides the newly recruited agents with an "Agent Guide" which details how they can create an Agent Fund. With

_____

[27] DiStefano, Philadelphia Inquirer, KOP firm's ad offers a '10% annual return.' Is that legit? (Aug. 6, 2019), https://www.inquirer.com/business/vagnozzi-better-financial-plan-investor-risk-20190806.html
[28] *See* SEC Complaint at 71-78.

the benefit of Vagnozzi's Agent Guide, new agents are told that they need only to select a name for their Agent Fund and send it to Vagnozzi's attorney, Pauciulo, along with $5,000.  Pauciulo will then establish the fund, file the necessary paperwork, draft a Private Placement Memorandum personalized to the fund, and receive a tax identification number.[29]  The Agent Guide advises the Agents of which banks to use to set up a bank account for their newly created Agent Fund and further directs them to add an ABFP employee as an authorized signer on the account.[30]

161.    Vagnozzi's Agent Guide advises prospective Agents that they should expect to receive their PPMs in "about 3 weeks or so" and that the "total investment on [their] end will be between [$]9-12k." The Agent Guide also ominously warns Agents that "***[t]he more questions [they] ask, and changes [they] make, the more it will cost***." (emphasis added). Moreover, as Vagnozzi's Agent Guide identifies Pauciulo by name and details his specific role in establishing the Agent Funds, it is clear that Defendant Pauciulo is responsible for setting up the Agent Funds

**Unbeknownst to Investors in Risky ABFP Merchant Cash Advance Investments, Their Money Is Placed in the Hands of a Convicted Fraudster**

162.    The underlying merchant cash advances are entered into between small businesses and non-party Par Funding, which has previously been shut down by the SEC and is currently a defendant in a pending RICO action for "prey[ing] upon small, financially distressed businesses throughout the United States and fraudulently induc[ing] them into cash advances pursuant to so-called future account receivable purchase agreements or merchant case advance agreements. *See* First Am. Compl. ¶ 1, *Fleetwood Services LLC et al. v. Complete Business Solutions Inc d/b/a Par Funding et al.*, No. 18-cv-268 (E.D. Pa. Jan. 22, 2018). Par Funding deceives these small

---

[29] *See* Agent Guide, at 1 (stating: "Contact John Pauciulo to get your MCA Income fund started. He can be reached at (215) 851-8480 or via email, joauciulo@eckertseamans.com." It continues, "You will need to sign an engagement letter with him and pay him $ 5,000 before any work will be completed.")
[30] *See* SEC Complaint at 71-78.

businesses into believing that the merchant cash advance agreements do not constitute a loan transaction and therefore do not trigger the criminal usury laws of various states.

163.    On July 24, 2020, the SEC filed an enforcement action against Par Funding and its boss, Joseph LaForte, seeking, among other things, freezing their assets and appointing a receiver. On July 27, the U.S. District Court for the Southern District of Florida granted the SEC's emergency motion and appointed a receiver to oversee the businesses and assets of Defendants Complete Business Solutions Group, Inc. d/b/a Par Funding, Full Spectrum Processing, Inc., ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan, ABFP Management Company f/k/a Pillar Life Settlement Management Company, LLC, ABFP Income Fund, LLC, ABFP Income Fund 2 L.P., United Fidelis Group Corp., Fidelis Financial Planning LLC, Retirement Evolution Group, LLC, RE Income Fund LLC, and RE Income Fund 2 LLC.

164.    When small businesses eventually fail to meet their obligations under these agreements, as they often do, Par Funding offers new advances dictated by even more unconscionable terms.  When a small business fails to satisfy the terms of the new advance, Par Funding aggressively pursues the businesses and their owners for repayment of the amounts due under the agreements, often employing collection tactics viewed as threatening, deceptive and illegal.

165.    Indeed, small businesses who fall behind on their loans may receive a personal visit from Par Funding's debt collectors. According to a December 20, 2018 Bloomberg article, "Fall Behind on These Loans? You Might Get a Visit From Gino," Par Funding and LaForte have employed the services of a convicted felon named Renato "Gino" Gioe, who for six years traveled the country collecting debts for Par Funding. According to the Bloomberg article:

> Ten of Gioe's unannounced visits to borrowers, from Chicago to small-town Alabama, were described in court papers and interviews with Bloomberg News. He

made "threats of violence and physical harm" to employees of a California rehab center, according to one court complaint. A tire-shop owner near Boston said in another court filing he "felt that physical harm would come to me and my family" when Gioe walked into his shop in 2016 demanding immediate payment.

A third borrower, recounting Gioe's visit to his Maryland trucking company last year, described him in an affidavit as resembling "an aging but still formidable character ripped from the World Wrestling Federation" who had been sent not to negotiate but to "intimidate me into making a lump-sum payment."

166.    Par Funding, like other companies engaged in merchant cash advance schemes, purport to purchase a small business's future revenue in an attempt to evade regulation as lender. As a result, Par Funding contends that its lending activities are not regulated by any government agency or self-regulating entity like FINRA, and that Par Funding's fees, penalties and interest rates are not subject to any regulatory oversight. This is false.

167.    As Bloomberg News has reported, the merchant cash advance industry in which the Defendants operate is "essentially payday lending for businesses."[31] The merchant cash advance industry is a high-risk market, with interest rates that can "exceed 500 percent a year, or 50 to 100 times higher than a bank's [rates]." *Id*. The industry has increasingly come under national scrutiny for its devastating impact upon small businesses. In June of 2017, Congressman Emanuel Cleaver, II launched an investigation of small business financial technology after expressing concern that some of its "lenders may be trapping small business owners in cycles of debt..."  The National Consumer Law Center, comparing the problems of merchant cash advances to those of payday loans, came to the same conclusion: "A lump sum of cash is taken out as an advance on a borrower's future sales. The merchant then pays back this balance in addition to an expensive premium through automatic deductions from the merchant's daily credit card or debit card sales

---

[31] Zachary R. Mider and Zeke Faux, "Fall Behind on These Loans? You Might Get a Visit From Gino," Bloomberg News, December 20, 2018, https://www.bloomberg.com/graphics/2018-confessions-of-judgment-visit-from-gino/

or from its bank account."[32] As reported by CNN, "[m]any business owners take out new advances in order to pay off outstanding balances on previous advances, plunging them into a cycle of debt."

**Defendants Failed to Disclose the True Risks of the ABFP Merchant Cash Notes**

168.    Defendants, as promoters, syndicators, underwriters, issuers and sellers of ABFP merchant cash investments, and as Fiduciaries had a duty to truthfully and completely disclose to Plaintiffs and the Class all information that would be material to the purchase of the ABFP Merchant Cash Advance Investments, including the risks inherent in such investments, but Defendants failed to provide such disclosures.

169.    All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material. There is a substantial likelihood that a reasonable investor would consider the misrepresented facts and omitted information regarding how their money would be invested, how the investments performed, the value of those investments, the liquidity (or lack thereof) of those investments, and the ability to repay those investments important, and/or that disclosure of the omitted facts or accurate information would alter the "total mix" of information available to investors.

170.    In connection with the conduct described herein, Defendants acted knowingly and/or recklessly. Among other things, Defendants knew or were reckless in not knowing that they were making material misrepresentations and omitting material facts in connection with selling or offering of ABFP Merchant Cash Advance Investments.

171.    The ABFP Merchant Cash Advance Investments sold by Vagnozzi, and the MCA Funds named herein, are invested indirectly in merchant cash advances provided to small businesses by Par Funding. The riskiness of these notes, which are the sole source of income

---

[32] CITE

behind ABFP's investments, cannot be overstated. This is because the merchant cash advances are unsecured and are provided to small businesses that lack the creditworthiness to get conventional bank loans. Moreover, the merchant cash advances are extended to these small businesses without any documentation or underwriting to determine the risk of repayment/default by these merchants.

172.   The North American Securities Administration Association ("NASAA"), in May 1999, ranked high interest promissory notes among the top ten investment scams:

> Promissory notes. A growing area of fraud, ***these notes are supposedly "insured" and backed by real assets. In fact, they are backed only by an often worthless promise to repay.*** They offer high interest rates to investors who may be struggling to get by on income from money market funds or certificates of deposits. ***These "investments" are often sold by life insurance agents***, lured by high commissions, who may know nothing about the promoters of the investments beyond what they're told. ***The agents also may not realize they have to be licensed as securities brokers with state securities regulators to sell these notes.*** In most cases, ***the notes also must be registered with regulators.*** Multi-state investigations have revealed that a number of the promoters of these notes have had problems with regulators in the past. Some notes are issued on behalf of companies that don't even exist. Even if the companies are legitimate, i***nvestors should realize that the reason these notes are being offered directly to small investors is because banks and venture capitalists have declined to invest in the companies***.

(Emphasis added).[33]

173.   Twenty years later, little has changed. In December 2019, NASAA again reported that securities regulators throughout North America have identified promissory notes with claims of guaranteed high interest rates and no risk to principal among the top five investment scams, stating:

> NASAA surveyed its members, the state and provincial securities regulators throughout the United States, Canada and Mexico, to identify threats investors are likely to see in 2020. Based on investor complaints, ongoing investigations and current enforcement trends, the ***securities regulators identified promissory notes***, Ponzi schemes, real estate investments, cryptocurrency-related investments and

---

[33] "State Securities Cops Release New List of 'Top 10 Investment Scams,'" NASAA (May 24, 1999), available at: https://www.nasaa.org/8245/state-securities-cops-release-new-list-of-top-10-investment-scams/

social media/Internet-based investment schemes *as the top five areas of concern* for the coming year.

"It is important for investors to understand what they are investing in and who they are investing with. ***Don't fall for promises of guaranteed high returns with little to no risk*** or deals pitched with a false sense of urgency or limited availability," said Christopher W. Gerold, NASAA President and Chief of the New Jersey Bureau of Securities. "Before you ring in the New Year, make a resolution to protect your money from fraudulent investments and those who may be trying to fleece you."

Investment offers that sound "too good to be true" often share similar characteristics. ***The most common telltale sign of an investment scam is an offer of guaranteed high returns with no risk. All investments carry the risk that some, or all, of the invested funds could be lost. "Anyone who says their investment offer has no risk is lying,"*** Gerold said. "No one can guarantee an investment return." [34]

174.    FINRA states that alternative asset investments, like those sold by ABFP, are in fact riskier than conventional investments:

These products are sometimes referred to as structured products or non-conventional investments. ***They tend to be both more complex—and more risky—than traditional investments***, and often tempt investors with special features and higher returns than offered by basic investments.[35]

175.    FINRA points out that these alternative investments, particularly structured notes with principal protection, are only as sound as the creditworthiness of the issuer of the note, and that investors can lose their entire principal even in situations where (as here) the issuer of the note does not go bankrupt:

The retail market for structured notes with principal protection has been growing in recent years. While these products often have reassuring names that include some variant of "principal protection," "capital guarantee," "absolute return," "minimum return" or similar terms, they are not risk-free. ***Any promise to repay some or all of the money you invest will depend on the creditworthiness of the issuer of the note—meaning you could lose all of your money if the issuer of your note goes***

---

[34] "NASAA Announces Top Investor Threats for 2020," NASAA (Dec. 23, 2019), available at https://www.nasaa.org/53426/nasaa-announces-top-investor-threats-for-2020/?qoid=newsroom. (emphasis added).

[35] FINRA, *Alternative and Complex Products*, https://www.finra.org/investors/learn-to-invest/types-investments/alternative-and-complex-products. (emphasis added).

***bankrupt***. Also, some of these products have conditions to the protection or offer only partial protection, ***so you could lose principal even if the issuer does not go bankrupt***. And you typically will receive principal protection from the issuer only if you hold your note until maturity.[36]

176.    FINRA warns that these types of alternative investments are highly illiquid, so if an investor needs to access all or even a portion of their principal before the note's maturity date, in most cases they would be unable to do so:

> ***If you need to cash out your note before maturity, you should be aware that this might not be possible*** if no secondary market to sell your note exists and the issuer refuses to redeem it. Even where a secondary market exists, the note may be quite illiquid and you could receive substantially less than your purchase price.[37]

177.    In the case of ABFP, the risks of the investment in alternative asset-backed securities identified by FINRA are magnified by the small businesses that lack creditworthiness and are forced to seek funding, at usurious rates, from Par Funding merchant cash advances – a company that is run by a convicted felon and fraudster, Joseph LaForte.[38]

178.    In addition to the material investment risks identified above, Defendants failed to disclose many other risks for purchasers of ABFP merchant cash investments, including the following:

      a.    <u>Alternatives Risks</u> —Like the ABFP merchant cash investments, alternative investments tend to use leverage which can serve to magnify potential losses. Additionally, they can be subject to increased illiquidity, volatility and counterparty risks, among other risks.

---

[36] FINRA, Structured Notes With Principal Protection: Note the Terms of Your Investment, https://www.finra.org/investors/alerts/structured-notes-principal-protection-note-terms-your-investment. (emphasis added).

[37] *Id*. (emphasis added).

[38] Zachary R. Mider and Zeke Faux, "Fall Behind on These Loans? You Might Get a Visit From Gino," Bloomberg News, December 20, 2018, https://www.bloomberg.com/graphics/2018-confessions-of-judgment-visit-from-gino/

b.    <u>Below Investment Grade Risks</u> — Lower-rated securities, like the ABFP merchant cash investments which have *no rating*, have a significantly greater risk of default in payments of interest and/or principal than the risk of default for investment-grade securities. The secondary market for lower-rated securities is typically much less liquid than the market for investment-grade securities, frequently with significantly more volatile prices and larger spreads between bid and asked price in trading. In the case of the ABFP merchant cash investments, there is no secondary market and no liquidity—the ABFP merchant cash investments are unmarketable.

c.    <u>Capital Risk</u> — Investment markets are subject to economic, regulatory, market sentiment, and political risks, which may cause an investment to become worth less than at the time of the original investment. Here, contrary to Defendants' false representations that these investments "offer lower risk than investing in Wall Street" and that they would be "sidestepping the volatility of the stock market," the ABFP merchant cash investments were susceptible to the same general economic, market and political risks of any conventional investment in stock or bonds—indeed these risks were greater because the small merchants who needed the merchant cash advances to stay afloat were far more likely to go under when the economy headed into a recession than well-established public companies. Defendants falsely minimized such risks when they sold investments to Plaintiffs and the Class.

d.    <u>Credit Risk</u> — The value of fixed income security may decline, or the issuer or guarantor of that security may fail to pay interest or principal when due, as a result of adverse changes to the issuer's or guarantor's financial status and/or business. In general, lower-rated securities carry a greater degree of credit risk than higher-rated securities.

Here, the underlying merchant cash advances were provided by Par Funding to small businesses that lacked sufficient creditworthiness to obtain any kind of bank financing and instead, were forced to pay usurious interest rates to obtain small infusions of cash to keep their businesses afloat, and thus, were incredibly bad credit risks.

e.     <u>Issuer-Specific Risk</u> — A security issued by a particular issuer may be impacted by factors that are unique to that issuer and thus may cause that security's return to differ from that of the market. In the case of the ABFP merchant cash investments, the issuer is subject to numerous unique and extreme risks that differ greatly from the market for conventional investments like stocks issued by public companies and investment grade fixed income securities. Indeed, ABFP is the alter ego of Defendant Vagnozzi, who is an unlicensed, uninsured, and unregulated pitchman, who has operated an investment scheme through a series of shell companies, including the ABFP entities named as Defendants herein, and has enlisted the assistance of Pauciulo and other attorneys at Eckert Seamans, who have aided and abetted Vagnozzi and ABFP in creating the facade of a reputable enterprise in order to separate individuals from their hard-earned savings.

f.     <u>Liquidity Risk</u> — Investments with low liquidity can have significant changes in market value, and there is no guarantee that these securities could be sold at fair value. There is no secondary market for the ABFP merchant cash investments, and they are completely illiquid, which poses a huge risk for investors who may want to move their money into safer investment vehicles or need cash.

g.     <u>Manager Risk</u> — Investment performance depends on the portfolio management team and the team's investment strategies. If the investment strategies do not perform as expected, if opportunities to implement those strategies do not arise, or if the

team does not implement its investment strategies successfully, an investment portfolio may underperform or suffer significant losses. In the case of ABFP merchant cash investments, the management team is headed by promoter and salesman Vagnozzi, who, in May 2019, paid a record fine of nearly $500,000 for selling securities without a license.[39] On July 14, 2020, Vagnozzi was fined another $500,000 when the SEC instituted settled administrative proceedings against him for offering and selling unregistered securities in violation of Section 5 of the Securities Act and acting as an unregistered broker-dealer in violation of Section 15(a) of the Exchange Act, in connection with the sale of securities unrelated to the instant case.

179.    Moreover, Vagnozzi and ABFP have just one investment strategy with respect to the ABFP merchant cash investments, which depended entirely upon the ability of the merchant cash borrowers to repay their cash advances—there is no backup plan.

180.    Each of the undisclosed risks described above would have been material to Plaintiffs and the Class in deciding whether to purchase ABFP merchant cash investments, and Defendants' failure to truthfully and completely disclose the material risks of investing in ABFP merchant cash investments caused or contributed to the economic losses sustained by Plaintiffs and the Class.

181.    In addition to the foregoing, in order to further their fraudulent and deceptive scheme, according to the SEC Complaint, Defendants concealed from investors the truth about Par Funding's business and its affiliates, including that Par Funding: (i) has not implemented a meaningful underwriting process of the merchant cash advance loans to determine borrowers' ability to repay their loans; (ii) often approves loans in less than 48 hours, without conducting an

---

[39] Joseph N. DiStefano, "Record Pa. fines against broker Vagnozzi, Philly's Par Funding," Philadelphia Inquirer (July 27, 2019), https://www.inquirer.com/business/par-funding-20190727.html

on-site inspection of the business; (iii) funds loans without obtaining information showing the business' profit margins, debt schedules, accounts receivable, or expenses; (iv) has a 1% - 2% default rate, as Vagnozzi and his associates falsely claim to prospective investors, thereby concealing Par Funding's true loan default rate of up to 10% from prospective investors Vagnozzi and his associates make false claims to prospective investors; (v) had filed more than 800 lawsuits against small businesses for defaulted Loans by August 2019 for more than $100 million; by August; (vi) had filed more than 1,000 lawsuits by November 2019 seeking over $145 million in missed payments; (vii) had filed more than 1,200 lawsuits by January 2020, seeking $150 million in delinquent payments; (viii) provided insurance to borrowers to cover defaults, when in fact Par Funding did not offer small businesses insurance on their loans; (ix) was founded by LaForte, a twice-convicted felon who, prior to founding Par Funding, was imprisoned for grand larceny and money laundering and ordered to pay $14.1 million in restitution; and (x) has a history of regulatory violations and fines, including: (a) the November 2018penalty of $499,000 from Pennsylvania Securities Regulators ; (b) the December 2018 Cease-and-Desist Order from the New Jersey Bureau of Securities against Par Funding based on its offer and sale of unregistered securities ; and (c) the February 2020 Emergency Cease-and-Desist Order issued by the Texas State Securities Board against Par Funding and others, alleging fraud and registration violations in connection with its securities offering through an Agent Fund in Texas.

**Defendants Used ABFP Life Settlement Funds to Further Their Fraudulent Scheme**

182.    In addition to merchant cash advance investments, for years Defendants Vagnozzi, ABFP and ABFP Management have been selling life settlement funds (also referred to as "viatical" settlement funds). Defendants used cash generated through the sales and maturities of these life settlements in order to prop up their fraudulent merchant cash investment scheme.

183.    Viatical settlements allow investors to invest in another person's life insurance policy. With a viatical settlement fund, the investor purchases the policy (or a fractional share of it) at a price that is less than the death benefit of the policy. When the seller dies, you collect the death benefit.

184.    The investor's return depends upon the seller's life expectancy and the actual date he or she dies. If the seller dies before the estimated life expectancy, you may receive a higher return. But if the seller lives longer than expected, your return will be lower, and you can even lose a portion of your principal investment if the person lives long enough because of the additional premiums needed to maintain the policy.

185.    Securities regulators have long recognized the pervasiveness of fraud in viatical settlement funds. For instance, in 2009, NASAA listed viatical settlement funds among the top threats of fraud for investors, stating:

> Life Settlements. State securities regulators long have been concerned about life settlements, or viaticals, and the rising popularity of these products among investors has prompted a recent congressional investigation. While life settlement transactions have helped some people obtain funds needed for medical expenses and other purposes, those benefits come at a high price for investors, particularly senior citizens. ***Wide-ranging fraudulent practices in the life settlement market include Ponzi schemes; fraudulent life expectancy evaluations; inadequate premium reserves that increase investor costs; and false promises of large profits with minimal risk***.

(Emphasis added).[40]

186.    Legal scholars have also recognized the propensity of fraudsters to use viatical settlement funds. "Many schemes have been perpetrated by viatical providers to solicit investors fraudulently, often from the vulnerable elderly population."[41] In such schemes, the sellers of these

---

[40]   "NASAA   Identifies   Top   10   Investor   Traps."   (Aug.   18,   2009),   available   at https://www.nasaa.org/5232/nasaa-identifies-top-10-investor-traps/?qoid=current-headlines

[41] Anna D. Halechko, *Viatical Settlements: The Need for Regulation to Preserve the Benefits While Protecting the Ill and the Elderly from Fraud*, 42 DUQ. L. REV. 803, 812 (Summer 2004).

securities entice investors "into purchasing viatical shares with false guarantees of liquidity, high interest rates, and fixed maturity dates. In reality, viaticals are generally not liquid, do not have fixed maturity dates (since the date of the insured's death is uncertain), and their rate of return is a variable dependent upon how long the insured survives after his policy is sold."[42]

187.     The viatical settlement funds created, offered, and sold by Defendants, including Vagnozzi, the ABFP entities, Pauciulo and Eckert Seamans, were investment contracts subject to regulation as securities under both state and federal laws. This is because, like their federal counterparts, virtually all state securities laws, include "investment contracts" in the statutory definition of a security. *See*, *e.g.*, CAL. CORP. CODE § 25019.

188.     The meaning of the phrase "investment contract" has been developed through a long line of judicial decisions, beginning in 1946 with the Supreme Court's ruling in *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946). The *Howey* test, with relatively minor modifications, has become the most widely followed standard for identifying investment contracts under both state and federal securities law.

189.     Under *Howey*, an investment offering is an investment contract if it involves: (1) the investment of money, (2) in a common enterprise, (3) with the expectation of profits, (4) derived from the efforts of others. *Howey*, 328 U.S. at 298-99.

190.     Profits are deemed to flow from the "efforts of others" where "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts

---

[42] *Id*.

which affect the failure or success of the enterprise." *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 483 (9th Cir.), cert. denied, 414 U.S. 821 (1973).

191.    Although it is well established that the viatical settlement funds are considered securities under both state and federal law, Defendants apparently did not believe that these laws applied to them. Instead, Defendants, including Vagnozzi, Pauciulo, and Eckert Seamans, and non-parties ABFP and ABFP Management, used Pillar Funds 1 through 8 to sell unregistered investments in viatical funds, and Defendants sold such unregistered securities without using a licensed broker dealer. Moreover, Vagnozzi failed to retain qualified life expectancy experts to evaluate the life insurance policies he acquired and he failed to hire qualified fund managers with experience managing complex life settlement investment funds.

192.    Defendants' attempts to evade securities regulators eventually resulted in significant fines. Specifically, on July 14, 2020, Vagnozzi entered into a settlement with SEC pursuant to which he paid nearly $500,000 "for his offering and selling unregistered securities" in the form of viatical settlement funds, "in violation of Section 5 of the Securities Act and acting as an unregistered broker-dealer in violation of Section 15(a) of the Exchange Act …." These penalties arose from Vagnozzi's and ABFP's promotion and sale of millions of dollars of unregistered viatical settlement funds, Pillar Life Settlement Funds 1 through 8, during the period from April 2013 through August 2017.

193.    As part of their sales pitch, Defendants routinely provided prospective investors in life settlement funds an information sheet that falsely represented that life settlement funds were immune economic trends and were the safest investments offered by ABFP, *inter alia*, stating:

**<u>Life Settlements</u>**

- **11-14% annual compounded return**

- **~3-6 year term**

- **"Recession Proof"**

- **Our safest, highest yielding investment**

194.     Defendants' claims that life settlement funds have "**11-14% annual compounded return**" and have a duration of "3-6 year term," were materially false and misleading. Rather, the experience of Plaintiff Brock, which is typical of investors in ABFP life settlement funds, demonstrates the falsity of the above representations. In 2010, Plaintiff Brock invested $169,000 of his retirement funds to purchase unregistered securities in the form of limited partnership interests issued by Pillar Life Settlement Fund 1, LP, however, ABFP has never paid him anything approaching an "11-14% annual compounded return," and after 10 years, ABFP has yet to repay any of his principal.

195.     In fact, Vagnozzi himself admitted that his life settlement investments did not pay as advertised. An email to investors in early 2020, "It goes without saying ... I apologize for how poorly this fund has performed."[43] The reason for the poor returns is that Vagnozzi underestimated the life expectancies of the insured persons, and was forced to pay premiums over a much longer period of time than his firm had accounted for.

196.     Vagnozzi's main policy source at first was a Texas firm, Life Partners Inc., a pioneer in acquiring and marketing policies. It later collapsed into bankruptcy amid SEC charges of fraud. In

---

[43] Joseph DiStefano, "How clients of a financial guru facing fraud complaint lost bets on the dead," The Philadelphia Inquirer (Sept. 6, 2020) available at: https://www.inquirer.com/business/dean-vagnozzi-sec-life-settlement-par-funding-investors-fraud-20200906.html?fbclid=IwAR3WR8gTXB__M1uoVKtcA0CKuCSHScGO9v06MB0pxsZdpbhi68Cqmee XPXY

the 2020 emails obtained by The Philadelphia Inquirer, Vagnozzi acknowledged a simple problem with funds containing those early policies: Sellers hadn't died fast enough.[44]

197.    But in 2010 the Wall Street Journal reported that Life Partners was relying heavily on an assembly-line doctor who was systematically under-predicting life expectancies. Life Partners' sellers were living a lot longer than predicted — very good for them but hard on investors paying years of premiums without collecting death benefits.[45]

198.    In 2012, the SEC followed up on the Wall Street Journal article with a lawsuit accusing Life Partners of fraud and its founder, Brian Pardo, of covering up the inaccurate life estimates. The Texas firm declared bankruptcy in January 2015, a month after a judge fined it $38 million in the SEC case. Pardo quit. Now 77, he has been socked with penalties totaling $28 million. Pardo has not paid. "Brian is broke," his Houston lawyer, Brent Perry, said recently.[46]

199.    The Philadelphia Inquirer article includes stories of several investors in ABFP's life settlement funds, which are strikingly similar to the experiences of the Plaintiffs in this action who invested in these funds.

> One early investor was Robert Sullivan, 60, manager of a Philadelphia transportation company. He was among a group who, in 2010, each put an average of nearly $50,000 into the first of Vagnozzi's life settlement funds, called Pillar 1. The hope was to turn their money into at least $70,000, as the old people died on schedule.

> Only they didn't. A decade later, Sullivan says, the fund has paid back less than half the original investment. "We get a few checks periodically," he said, "but I'd have been better holding on to my company stock."

> Two other investors, Scott Bennett and his wife, Juli, invested in 2013, after the SEC suit, but before the bankruptcy. In early 2015, the Chester County couple were featured in a suburban newspaper touting Vagnozzi's acumen. The headline read: "Montgomery County investors double their money sooner than expected." The photo showed the smiling couple and Vagnozzi holding a giant mock check. It was true, as far as it went — Bennett said one policy, of more than 100 in the investment,

---

[44] *Id*.
[45] *Id*.
[46] *Id*.

had paid off at twice what investors had put in. But for his fund, Bennett said, that was the last big payout. After seven years, he said, investors have yet to get back what they put in.

"I'm in Pillar 8. We have had one death, no payout to us — they need the money [from that settlement] to pay premiums" on other policies, said another investor, Dale Hood, a Montgomery County health insurance salesman. "Most of the people have reached their expected maturity. But medical technology is keeping them living." He's still confident his investment will pay off eventually.

Jim Wollyung, 64, a retired Philadelphia trucking company employee, has invested $900,000 in Vagnozzi ventures since 2018. He put $400,000 of that into a fund mostly invested in life settlements. Fund documents show that he was among 99 investors who put up about $12 million and were told they could reap $21 million. Half the 22 policies were to come due in 2020, So far, the documents say, he has received payouts for only three deaths. His payback: $31,000. When two more policyholders died this year, he says, the Vagnozzi rep who sold him the fund told him there wasn't enough money to pay him. "They died, but I didn't get paid," Wollyung said.[47]

200.    More recently, the bankruptcy trustee in the Life Partners bankruptcy has filed a lawsuit against Vagnozzi and scores of other Life Partners salespeople to claw back their commissions. The suit, seeking $1.25 million in commissions that Vagnozzi was paid 2009 to 2014, is set to go to trial in 2021.[48]

201.    After the collapse of Life Partners, Defendants Vagnozzi, ABFP, ABFP Management, the ABFP Multi-Strategy Funds and the Pillar Funds found new companies from which to acquire more policies, most notably from the Fort Washington-based Coventry First LLC, which is the largest life settlement firm in the industry, according to annual data compiled by the Life Settlement Report, the industry newsletter. However, Vagnozzi again failed to retain qualified life expectancy experts to evaluate the life insurance policies he acquired and he failed to hire qualified fund managers with experience managing complex life settlement investment funds.

---

[47] *Id.*
[48] *Id.*

202.     Likewise, Defendants' representations above that the ABFP life settlement funds were "Recession Proof" and that they were "Our safest, highest yielding investment," were materially false and misleading. Unbeknownst to investors in the Pillar Life Settlement Funds 1 through 8, including certain Plaintiffs and members of the Life Settlement Class (defined below), Defendants were secretly investing a portion of their money in Par Funding merchant cash advance notes rather than life insurance policies. The fact that their money was being invested in this manner was never disclosed to investors in the Pillar Life Settlement Funds 1 through 8. More importantly, Defendants never disclosed to investors in the Pillar Life Settlement Funds 1 through 8 the extreme risks of investing their money – including qualified retirement funds – in merchant cash advance loans. As demonstrated by the complete collapse of Par Funding's merchant cash advance business, these investments were anything but "Recession Proof," and they were extremely risky.

203.     As the ABFP merchant cash investments began to tank, in late 2019 and early 2020, Vagnozzi, ABFP, ABFP Management, and others, began pressuring outside investors to put their money into the Pillar Funds, which did not provide regular monthly interest payments to investors. Rather, these funds only paid investors when the insured individuals died. At the same time, Vagnozzi sent emails to certain insiders (including some of his family members), telling them that they should invest in the ABFP merchant cash funds if they were looking to invest—*i.e.*, the exact opposite of the advice Defendants were giving to outside investors.

204.     By selling these life settlement funds, Defendants were able to obtain large infusions of cash for ABFP without having the financial burden of making regular monthly payments. This delay in payouts made the Pillar life settlement funds the perfect vehicle for Defendants to prop up their failing merchant cash investment funds.

205.    Plaintiffs who have invested in the life settlement funds have reported that they have received few payments from these funds and have never received anything close to the 11% to 14% annual promised by Defendants. Moreover, Plaintiffs who have invested in these life settlement funds are aware that certain of the insured individuals have died, but did not receive payouts. Investors who question Vagnozzi about the deaths of such insured individuals are typically given the same excuse: Vagnozzi claims that the insurance proceeds are too small to distribute to life settlement fund investors, and that ABFP would holding the money until the fund accumulated enough money to make a distribution to investors worthwhile.

206.    The most logical inference to be drawn from these facts is that Defendants were diverting money from new investors in the life settlement funds, as well as payouts of life insurance proceeds, to make monthly interest payments to existing investors in ABFP merchant cash funds.

**Defendants' Fraudulent Fallcatcher, Inc. Investments**

207.    Vagnozzi also promoted unregistered investments in private firms not listed in any stock exchange. In 2019, Defendants Vagnozzi, ABFP, and ABFP Management conspired with convicted felon Henry Ford to sell to approximately $5 million of shares of common stock in a fraudulent entity known as Fallcatcher, Inc., a purported biometric device and software startup company, by means of a materially false and misleading Private Placement Memorandum and Subscription Agreement.[49] On information and belief, Defendants Pauciulo and Eckert Seamans prepared these materially false and misleading offering documents.

208.    Plaintiff Thomas Green was among roughly 50 investors who purchased Fallcatcher shares from Defendants. Specifically, in August 2018, Mr. Thomas used qualified

---

[49] Joseph DiStefano, "Philly-area salesman raised $5 million for a Florida man under SEC investigation in fraud," The Philadelphia Inquirer (Aug. 14, 2019) (noting, "Ford raised nearly $5 million from investors. To find those investors, his company contacted a King of Prussia firm, ABFP Management, owned by Dean Vagnozzi…").

retirement funds to purchase $100,000 of Fallcatcher common stock.

209.    The offering documents for Fallcatcher falsely represented that this investment was exempt from registration requirements under the Securities Act of 1933—it was not exempt.

210.    On May 22, 2019, the SEC charged Fallcatcher and its founder, Henry Ford, with defrauding over fifty investors in the Philadelphia area of at least $5 million. The SEC secured an emergency asset freeze to preserve investor funds.[50]

211.    According to the SEC's complaint, Ford, of Port St. Lucie, Florida, falsely represented to investors that large insurers and state governments had expressed interest in Fallcatcher's technology. Ford allegedly told investors that this technology tracked patients receiving opioid addiction treatment to prevent medical billing fraud. The SEC further alleges that Ford showed investors a fabricated letter of interest from a prominent insurance company expressing an interest in starting a pilot program using Fallcatcher's technology. In reality, however, the SEC alleges that no insurers or state governments had ever expressed any interest in either Fallcatcher or its technology.

212.    With respect to Vagnozzi's and ABFP's involvement, the SEC complaint, which refers to Vagnozzi as the "Salesman," alleges:

> In late May 2018, Ford sought assistance from an acquaintance (the "Salesman")—who had access to a network of investors through his own business, which included investments in life settlement funds—in raising funds for Fallcatcher from investors.

> On May 27, 2018, Ford sent the Salesman an email about Fallcatcher and its fundraising efforts. Ford told the Salesman that Fallcatcher was "offering 27,500,000 shares of Non Voting Class Common Stock at a price of .275 per share."

> ******

> On June 5, 2018, the Salesman, emailing potential investors in his network,

---

[50] *See SEC v. Henry Ford f/k/a Cleothus Lefty Jackson and Fallcatcher, Inc.*, No. 2:19-cv-02214-PD (E.D. Pa. May 22, 2019).

forwarded Ford's May 27 email to them and included the Salesman's own pitch to invest in Fallcatcher.

In his own email pitch to potential investors, the Salesman announced (emphases inoriginal): "We are GOING to raise **$3 Million**; are YOU going to be a part of it?"

The Salesman's email continued:

> Fallcatcher is a patient kiosk check-in system for the Addiction Recovery Treatment sector, that has comprehensive hardware and software elements allowing for simultaneous tracking of patient behavior, compliance, traffic flows, billing, success and failure. It is expected that Fallcatcher will be bought by a major insurance provider for a substantial price to eliminate the billions of dollars spent on fraudulent billing/activity. The Fallcatcher initiative has the support of numerous government officials (i.e. Congressman/Senators) in Florida, Pennsylvania, New Jersey, Kentucky, and Ohio. I have known the CEO, Henry Ford, for years and tracked his advancement of this product.

In the same email, the Salesman invited potential investors to attend one of four investor information sessions with Ford: (1) on June 19, 2018 at a restaurant in Trooper, Pennsylvania, where dinner was included; (2) on June 20, 2018, in King of Prussia, Pennsylvania, where lunch was included; (3) on June 20, 2018, at a golf club in Lafayette Hill, Pennsylvania, where dinner was included; and (4) on June 21, 2018, in Mount Laurel, New Jersey. The Salesman urged potential investors to reply to his assistant to reserve a seat at one of these presentations.

In his email, the Salesman also told the potential investors that the minimum investment in Fallcatcher was $75,000 and that "cash or IRA [individual retirement account] money" could be invested.

213.    The SEC's complaint, filed in the U.S. District Court for the Eastern District of Pennsylvania, alleged that Fallcatcher and Ford violated the antifraud provisions of Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

214.    On February 26, 2020, the Court entered an Order approving Consent Judgments as to Defendants Henry Ford and Fallcatcher, Inc. (*see* Dkt. # 41) requiring Fallcatcher to pay disgorgement of $2,295,320.87, representing profits gained as a result of the fraudulent scheme

alleged in the SEC Complaint, and requiring Henry Ford to pay disgorgement of $539,140.58, representing profits gained as a result of the fraudulent scheme alleged in the SEC Complaint, together with prejudgment interest thereon in the amount of $13,362.50, and a civil penalty in the amount of $539,140.58, for a total of $1,091,643.66.

**Vagnozzi's and ABFP's Other Alternatives to Wall Street**

215.    **Litigation funding.** Vagnozzi has raised more than $10 million since 2017 for four Atrium Legal Capital funds, which invest in personal-injury lawsuits. The funds give the injured upfront cash, betting they can recoup the money and more once a case is resolved.

216.    The Atrium Legal Capital Funds have been put at risk by Defendants' fraudulent merchant cash advance investment scheme, as the money invested in the Atrium Legal Capital Funds is now subject to claims arising out of the merchant cash debacle.

217.    **ProMed Investment Co., L.P.** In July 2020, Vagnozzi told clients he had raised an additional $11 million from investors for a fund that invests in medical liens from doctors who treat injured uninsured patients, in hopes that the fund can collect later from lawsuits and settlements in personal-injury lawsuits.

218.    Investments in ProMed Investment Co. have been put at risk by Defendants' fraudulent merchant cash advance investment scheme, as the money invested in the ProMed Investment Co. may now be subject to claims arising out of the merchant cash debacle.

219.    **Real Estate.** Vagnozzi has also promoted unregistered investments in commercial real estate developments. In June 2020, he urged callers responding to his radio ads to invest in a Princeton-area project for a New Jersey firm called the Woodland Falls Investment Fund, LLC. Money invested in the Woodland Falls Investment Fund, LLC has been put at risk by Defendants' fraudulent merchant cash advance investment scheme, as the money invested in the Woodland

Falls Investment Fund, LLC may now subject to claims arising out of the merchant cash debacle.

**The Truth Begins to Emerge**

220.    On March 12, 2020, Vagnozzi forwarded to investors a message he received from Par Funding, in which Par Funding claimed that Coronavirus will have "no long term effects to [Par Funding's] projected growth and revenue," and that "There has been no noticeable effect to our client payments or default rates."[51]

221.    On March 16, 2020, Vagnozzi emailed a video to investors, which he has since taken down. However, in the email Vagnozzi summarized the video's message that their investments were safe:

> Many companies in the MCA space have indeed stopped advancing money. Why? Because many of these MCA companies are backed by institutional funds and the people that run these institutions DO NOT understand the MCA business like PAR does! The fact that so many of their competitors have ceased advancing, and because ***Par Funding is in such strong financial shape with significant cash on the balance sheet and retained earnings*** (as you will hear about), they can cherry pick the best opportunities...and there are a lot of them on the street.
>
> ***The management team at CBSG/Par is extremely confident that their financial position and funding strategies will enable them to weather this storm***. They want you to remain confident that your investment with them is solid.

(Emphasis added). The statements in the above-quoted email were false—Par Funding was already on the brink of financial ruin. Indeed, as revealed in the SEC Complaint, by August 2019, Par Funding had filed more than 800 lawsuits against small businesses for defaulted Loans seeking more than $100 million; by November 2019, Par Funding had filed more than 1,000 lawsuits seeking more than $145 million in missed payments; and by January 2020, Par Funding had filed more than 1,200 lawsuits seeking $150 million in delinquent payments. Thus, Par Funding's business was collapsing months before businesses were closing due to the Covid-19 pandemic.

---

[51] SEC Complaint at para. 124-25.

222.     On March 26, 2020, Vagnozzi, emailed investors a message from Par Funding concerning the purported financial impact the COVID-19 pandemic had on Par Funding's revenues, in which Par Funding revealed: "Over the past several months, Par Funding, like many other companies across the globe, has been severely impacted by the Coronavirus pandemic," and that "virtually all of [Par Funding's Loan borrowers] have called seeking a moratorium on payments and other restructured payment terms."[52]

223.     Vagnozzi added his own message to the March 26 email, stating: "Par Funding has defaulted on a note with the fund that you each invested in, and they will continue to default for the next few months." In this same email message Vagnozzi goes on to discourage investors from filing a lawsuit against Par Funding and tells investors his attorneys, Defendants Pauciulo and Eckert Seamans, were working to restructure the investments so payments to investors can resume.

224.     In an April 17, 2020 email addressed to "MCA Investors," Defendant Vagnozzi revealed that "PAR Funding appears to be insolvent." Vagnozzi advised Plaintiffs and the Class that only the alternatives were that "Par either declares bankruptcy…or they rebuild." But Vagnozzi claimed that "***Par wants to rebuild***." (Emphasis in original).

225.     Vagnozzi then proposed a restructuring of the ABFP MCA notes: "**So, here is the plan that Par Funding is offering…** You, the investor, will earn 4% interest over a period of 7 years. The principal your [*sic*] receive back, in addition to the 4% interest will increase after the 1st year." (Emphasis in original). Vagnozzi claimed that "this is Par's final offer," and that "[t]hese payout terms are not negotiable."

226.     As part of his high-pressure tactics, Vagnozzi advised investors that they needed to accept the proposal by April 21, 2020 – *i.e.*, a mere four (4) days later. This cramped timeframe

---

[52] SEC Complaint at para. 126.

made it virtually impossible for investors to seek out legal advice concerning their rights under the circumstances, let alone undertake an investigation to determine the veracity of Hobson's choice presented by Vagnozzi. Vagnozzi further implored: "**I STRONGLY advise you to take this deal. The consequences if you do not, I feel are FARWORSE than taking a 4% interest rate for 7 years.**" (Emphasis in original).

227.    Finally, Vagnozzi passed on to Plaintiffs and the Class the dubious advice of his own attorneys, Defendants Pauciulo and Eckert Seamans, in an attempt to persuade ABFP investors that they would be better off not filing suit and agreeing to the proposed restructuring with a company that he admitted to be illiquid—Par Funding. Specifically, Vagnozzi stated:

> For those of you who are still not sure if you want to take the deal, I leave for you a paragraph from my attorney, John Pauciulo with the law firm of Eckert Seamans in Philadelphia:
>
> ***While we expect that all investors will elect to modify the terms of their notes, those who do not will be left with limited options. If all investors do not elect to modify their notes, a new fund will be established which will issue the new notes with the modified terms. The existing fund will remain but its sole assets will be notes issued by PAR with the modified terms (4% interest with principal paid out over 7 years). The existing fund will pay out those amounts it receives from PAR. Investors who do not elect to modify their notes will have to choose whether to accept those payments or file suit against the existing fund and attempt to collect the difference between the amounts they are owed under the existing notes and the 4% payout.  Any such lawsuit is likely to take one to two years, at a minimum, and cost tens of thousands of dollars in legal fees.***

(Emphasis in original).

228.    Besides the fact that Defendants, including Pauciulo and Eckert Seamans, were purporting to provide legal advice to unrepresented individuals concerning their six-figure investments, and despite glaring conflicts of interest, the statements attributed to Pauciulo and Eckert Seamans were materially false and misleading for numerous reasons, including the fact that ABFP investors would not be limited to filing "suit against the existing fund" only, nor would

bringing suit cost investors "tens of thousands of dollars in legal fees," as attorneys who represent investors in securities fraud cases typically do so on a contingent fee basis. Defendant Pauciulo, as an experienced securities lawyer, undoubtedly knew this, but he made contrary statements in order to discourage investors from suing his clients.

229.    Also in mid-April 2020, Defendants released a video created on about April 18, 2020, to Plaintiffs and the Class in which Defendant Pauciulo stated that he had been working with Vagnozzi since 2003 or 2004, that he knows the ABFP staff, that they had created approximately 25 private placement memoranda for investments sold by Vagnozzi and ABFP, including numerous alternative asset investment offerings. Indeed, Defendant Pauciulo and Eckert Seamans have been key players in every ABFP alternative asset investment offering, stating:

> MR. PAUCIULO:  Sure.  Thank you.  Hey, for those of you who don't know me, my name is John Pauciulo, I'm a partner at the law firm of Eckert Seamans Cherin & Mellott.  We're a law firm of about 375 lawyers with offices in 14 cities, primarily on the East Coast of the United States.  I've been practicing law for 30 years.  The focus of my practice is on corporate transactions and securities.  I've done that for my entire career.

*****

> MR. VAGNOZZI:  Okay.  John, summarize --we've been working together since 2004.  For, again, a lot of the people hearing this, know this already.  Some of my, let's just say, newer investors, how --we've been working together since 2004. *We've done--you've done, I don't know, 25 different private placement memorandums for my investors, different investments*.
>
> Can you summarize for --for, again, my new clients our working relationship?  I don't know, just as --as far as --I don't know, whatever comments you want to make about me and my staff that you think would be beneficial for this call.
>
> MR. PAUCIULO:  Sure.  *I think we started in 2003*, but, any way you slice it, it's a long time; 16, 17 years we've worked together.  It's been --*I don't know how many funds we've done, 20, 22  3  4, something like that*.  And we have created investment funds across a pretty wide scope of businesses.
>
> *We've done real estate, we've done other alternative asset classes*.  What I think, importantly, is there's deals that we haven't done, right?  I mean, there are industries

and transactions that we did a lot of diligence around and decided, you know, it's not right for us, you know, not the kind of investment we wanted to get into. And I think we made some good calls on a couple of those.

MR. VAGNOZZI: Absolutely.

MR. PAUCIULO: We later found out that some of those went sideways. So --so I think we've been, you know, pretty disciplined in our approach and have sought out, you know, business opportunities that most people wouldn't be aware of and probably wouldn't have an opportunity to invest in for a whole bunch of reasons, you know, through these fund structures.

And for me as a lawyer, I love it when my clients are successful. That's what gives me the most pride and joy in what I do, and it's been fun to work with you over the years and to see, you know, your business grow dramatically from doing a lot of financial planning and insurance based offerings to, you know, building a portfolio of alternative investments. You know, that's been exciting to a --to be a part of that.

MR. VAGNOZZI: *You've gotten to know my--my staff has grown significantly. You know everybody on the staff*. My point is, positive relationship, *only positive things to say about myself and my staff; is that a fair statement?*

MR. PAUCIULO: *Yeah, it is*….

(Emphasis added).

230.     During the April 18 video, Defendants Vagnozzi and Pauciulo acknowledged that they had received requests from investors to review Par Funding's financial statements so that they could determine whether they would be able to recoup their investments. Defendants refused this request, claiming that it would be harmful to disclose the financial statements of a private company like Par Funding. However, Defendant Pauciulo stated that he was given an opportunity to review Par Funding's financial statements pursuant to a Non-Disclosure Agreement:

MR. VAGNOZZI: Okay. So, John, let's --let's, again, I don't think we need to spend a ton of time here but let's talk about, you signed --*John, you signed an NDA. John reviewed the financials*, and he's going to be --I'm going to summarize them. John    *John signed an NDA with --with Par Funding*. Summarize what that means to everybody.

MR. PAUCIULO: Sure. So NDA stands for nondisclosure agreement. Another word you could use to describe it would be a confidentiality agreement. And they're

very common in the business world. And any time you're doing a business transaction, there's a due diligence process, so there's an exchange of information that parties use to evaluate the merits of the transaction.

You know, again, very, very common. In fact, almost universal in every transaction you'll have some form of diligence and parties will be signing a nondisclosure agreement.

*So as we've been talking with Par Funding over the last three weeks to see, you know, if there could be a work out and a restructuring of their debt, you know, as part of that process we have to do due diligence*. We have to conduct some due diligence, we have to get a better understanding or a clearer understanding of where they stand from a financials' point of view. They've told us all sorts of things and given the pandemic and the news, it's not hard to connect a lot of those dots, right. We know the kind of companies that they're extending cash advances to.

But, nonetheless, you know, we asked them for documentation to support what we expected to see. And--

(Emphasis added).

231.    Defendant Pauciulo then attempted to justify the secrecy around Par Funding's

financial position, claiming:

MR. PAUCIULO:  Yeah, I mean, their concern--you know, you touched on it. They are a privately held company. Unlike a public company, you can go find the financials on Google Finance, right, because they have to. A publicly traded company has to issue their financial statements and make them available to the public for review.

*So this is a private company. They don't want to or are very uncomfortable with the notion that their financial statements could be dispersed to anybody and everybody*. And, you know, there's--there's some good reason for that. One reason is that it doesn't do Par Funding any good to have word on the street that, you know, they're in financial trouble. Because they are owed a lot of money from--from their customers. And if I'm their customer and I find out that they're in financial trouble, it gives me all the more reason not to pay them because I might think that they're going to go away, they're going to go out of business. *So it really doesn't benefit anybody to have that information, you know, widely dispersed and available for anybody and everybody to look at*.

MR. VAGNOZZI:  Okay.

MR. PAUCIULO:  So the compromise, after the back and forth, was that *I personally would sign the nondisclosure agreement*, I personally would receive

the confidential information, I would review it, and I would review it ***for the sole purpose of giving advice to my clients as to the status of their financial condition***.

(Emphasis added).

232.    Plaintiffs and the Class, who provided millions of dollars in working capital to Par Funding through their investments in ABFP merchant cash advance securities, were not just "anybody and everybody." On the contrary, Plaintiffs and the Class had a real financial interest in knowing the truth about Par Funding's financial condition and, in particular, whether Par Funding possessed the financial wherewithal to successfully complete a restructuring such that it would be capable of repaying Plaintiffs and the Class their principal investments. As shown below, Defendants Vagnozzi and Pauciulo grievously misled Plaintiffs and the Class concerning the prospects of a successful restructuring with Par Funding.

233.    Defendant Pauciulo then stated that he personally received confidential financial information from Par Funding so that he could advise Defendant Vagnozzi and ABFP on the notes that ABFP had entered into with Par Funding. Contrary to the terms of the NDA, Defendant Vagnozzi disclosed that Par Funding was now insolvent, stating: "Par Funding, CBSG's, their liabilities exceed their assets.  They are insolvent by a significant margin and their revenues have pretty much ceased." Vagnozzi added that Par Funding's revenue was now 1/10th of what it was before pandemic, stating: "They are--their revenues are about, about one tenth of what they've averaged the past 12 months." Defendant Pauciulo confirmed, "Yes, that's correct."

234.    But, in order to falsely assure Plaintiffs and the Class about the likelihood of recouping their principal, and to get Plaintiffs and the Class "on-board with the deal," Vagnozzi represented to ABFP investors that, if they accepted the Exchange Offerings, Par Funding would be able to successfully return to profitability and, most importantly, repay investors' principal, stating:

They are—*the confidence is high that they will resurrect their business*. So I don't want anybody to lose sight of that. *The confidence is extremely high that they will resurrect their business*. But what I hope everybody agrees, nobody knows how long it's going to take. We all hope it's going to take the two months, we all hope it's going to take, three, four, five months. Nobody—John, do you agree—there's not an economist in America that knows how long things are going to get back to normal. That—but *the consensus with the people at Par is that there's going to be huge opportunities once things stabilize*.

Again, banks historically—once they give out surplus money, stimulus money, I think banks are going to be really conservative and tight with their assets, with their money. *I think the merchant cash industry is poised to do extremely well*, we just don't know, again, if it's two months from now, eight months from now, a year from now. Hence, the seven year plan, which we'll get to.

(Emphasis added). Defendant Pauciulo ratified Vagnozzi's baseless assessment of Par Funding's prospects.

235.    Defendant Pauciulo then purported to advise Plaintiffs and the Class about their three options as creditors of Par Funding, which he claimed to be "the universe of possibilities" under the circumstances. The first option would be for ABFP to file a lawsuit against Par Funding, however, Defendant Pauciulo quickly dispelled that as a practical consideration, stating:

[MR. PAUCIULO:] *The first option would be to file a lawsuit against Par Funding for breach of contract.* There are notes that are contracts between the fund itself and Par. They're in breach, we could sue them. We would win ultimately because there's really no factual dispute, right. Ultimately, we would win. So that all sounds great but in the meantime *it's going to cost hundreds of thousands of dollars in legal fees and even in a short time frame is going to take a couple of years. The judicial system moves slowly*. And even if we win, we'll get a judgment and now we have to go and enforce that judgment. And we enforce that judgment through a process of levying--

MR. VAGNOZZI:  John, hold on. In the meantime, as we're--as we're fighting them and they know we're fighting them, they're not going to pay us.

MR. PAUCIULO:  Well, not only are they not going to pay us, I was getting to this—

MR. VAGNOZZI:  Okay. I'm sorry, John. I'm sorry.

MR. PAUCIULO:  Yeah.  ***Not only are they not going to pay us because we're fighting them, we're in litigation, there's no good reason to pay us***.  And in fact, the choice that most debtors make in that position is to conserve cash and pay their lawyer and have a war chest to fight.

So, ultimately, we would get a judgment and we would have an opportunity to collect those assets.  So we would essentially be stepping into the shoes of Par Funding today and then have the right to go out and collect all those advances.

So, congratulations, you've won, but what you've won is the right to do Joe's job from two years from now.  And, meanwhile, those advances are going to sit out there and I think everybody--the longer those sit out there, the more they degrade, the more they become uncollectible or unlikely to be collected.

So in that context, ***if we filed a lawsuit, I think it's very, very likely that Par Funding would simply file voluntarily for bankruptcy***.  And they would do that for a couple of reasons.  The most significant reason, if you're a debtor and you file for bankruptcy, by law all collection efforts must stop.  ***So our lawsuit would stop, right.  The Court is going to say, you guys can't do anything, it's all going to be resolved through the bankruptcy process***.

So in the process, what happens?  A trustee is appointed, he marshals assets, he pays them out pro rata to creditors.  That would be us.  The good news is you're going to get something; the bad news is it's going to take years, it's going to cost a lot of money in legal fees, which, oh, by the way, comes out of the bankrupt estate, right, the lawyers get paid first, that's how it works.  ***And we think it's very likely that the outcome would be, you know, some percentage of the total amount owed. It's impossible to know at this point what that percentage would be, but I think it's reasonable to expect 10 to maybe 30 percent, maybe***.  And that's just kind of my ballpark estimate.

So that's-- ***that's the litigation option.  Not terribly attractive***.

(Emphasis added).

236.    Pauciulo, who is neither a bankruptcy attorney nor a litigator, had no business advising hundreds of unrepresented investors about their prospects of recovering a significant portion of their investments by pursuing litigation against Par Funding. Among other things, Pauciulo recklessly speculated about the percentage of recovery that ABFP investors might have been able to obtain through litigation, including bankruptcy proceedings. However, in order to dissuade ABFP investors from lobbying Vagnozzi to sue Par Funding, Pauciulo deliberately

lowballed ABFP investors' odds, claiming that a reasonable expectation would be a recovery of 10%-30% of their principal.

237.     Defendant Pauciulo then purported to advise Plaintiffs and the Class about the second option—forcing Par Funding into an involuntary bankruptcy, and again Pauciulo tried his best to dissuade ABFP investors from pursuing this course of action, claiming:

> [MR. PAUCIULO:] The other option would be as creditors, *we could force Par Funding into a bankruptcy.  It's called an involuntary bankruptcy.*  If three or more creditors got together, we could file an involuntary petition and they would be in bankruptcy.
>
> Now, the process unfolds just--in much the same way as the voluntary bankruptcy that I just described to you, but suffice it to say, a trustee would be appointed, he would effectively manage the business, he would collect their debts and he would pay creditors pro rata.
>
> And, again, *it's the same kind of conclusion; time consuming, expensive*.  Yeah, we'll get money but *it will be a long time coming and it's going to be some fraction of the whole*.  So that's the second option.

(Emphasis added).

238.     Defendant Pauciulo again overreached by purporting to advise ABFP investors concerning bankruptcy matters, for which he lacked the requisite knowledge and experience. Moreover, Pauciulo failed to disclose his potential conflicts of interest and instead presented or otherwise implied to ABFP investors that his advice as that of a disinterested authority on the law. At no time during this video did Defendant Pauciulo advise Plaintiffs and the Class about his conflicts of interest, nor did he advise Plaintiffs and the Class that they should seek out their own independent legal counsel.

239.     Here, Plaintiffs and the Class were unaware of Pauciulo's (and by extension, Eckert Seamans') serious conflicts of interest, including Pauciulo's and Eckert Seamans' potential liability to Vagnozzi and the ABFP entities for malpractice by advising them in connection with

each of the ABFP merchant cash advance securities offerings, and potential liability to Plaintiffs and the Class for, among other things, preparing materially misleading offering documents that failed to disclose material facts concerning the risks of investing in ABFP merchant cash advance securities, such as LaForte's criminal convictions, and Vagnozzi's, ABFP's, and Par Funding's histories of violating state and federal securities laws.

240.    Finally, Defendant Pauciulo made his sales pitch for the third option—restructuring the ABFP merchant cash advance securities—which was the only option that he and Vagnozzi had any interest in pursuing because, unbeknownst to Plaintiffs and the Class, Defendants were plotting to include a "get-out-of-jail-free card" in the fine print of the Exchange Offerings, in the form of a broad release of claims and waivers of the right to a jury trial, and the right to bring a class action. Specifically, Defendant Pauciulo stated:

> *The third option is a restructuring of the debt, which is very commonly done between borrowers and lenders in any kind of default or distress*.   And that's-- that's what Dean and I have been focusing on with Par for the last, I don't know, about two weeks, ten days, it feels like a lot longer.  But we've been working on, you know, can we restructure the debt, and if we restructure it, you know, what does it look like?  And, again, that's part of the diligence that we've been doing, part of my review of their financials.  We've had-- Dean has had countless meetings with their team.

> And we want to do a restructuring that allows for them to turn it around, right, to re emerge financially successful.  And sometimes, because that's the goal, you know, the terms may seem generous to the debtor.  And it's easy to have a reaction of, why--why are we giving these terms?  The answer is, we want them to be successful.

> And, you know, after a lot of discussion and a lot of back and forth, you know, I think--you know, *Dean and I have come to the conclusion that the work out gives us the best possible result*.

> You know, there's no guarantees, no one knows what's going to happen.  But, you know, given our other choices, you know, *we think this is the better choice among what are three not great choices*.  There's no silver bullet here.  There's no magic wand that gets waved.  *But we think that this is an opportunity to get the most investors the most money back*.

(Emphasis added).

241.    Defendant Pauciulo's statement, "Dean and I have come to the conclusion that the work out gives us the best possible result," was partially true—the restructuring would be the best possible result for Defendants because they believed that the waivers and releases that they buried in the Exchange Notes Offerings would absolve them of liability to Plaintiffs and the Class.

242.    Vagnozzi then made his sales pitch for the Exchange Offerings, which echoed his lawyer's claims, saying:

> MR. VAGNOZZI:  Okay.  Good summary, John.  And that's what we've—look, that is what John and I, we have exhausted this conversation.  So just seeing some of the e mails coming back—again, *the overall majority of the e mails coming back have been positive*, supportive, you're in, you accept it.  We are getting people that obviously have a lot of questions; is seven years too long?  Is 4 percent too low?
>
> I get—we get—I get all of that.  The purpose is to get them profitable so they can make money, recoup their losses.  The quicker that happens, the more likelihood that all of us get our money.  *And again, just as—I believe, just an opinion—just an opinion, I believe, through conversations with them and just knowing the individuals down there, I believe is their sincerest intent is to pay the debt down sooner than seven years if they can do it, okay.*  But they can't—they can't be obligated to do it in two or three.  They need to make it have as long as they can to give them the best chance to become profitable.  You want a profit—you want a profitable Par Funding company.  The more profitable they are, the more likely you're going to make all your money back plus some interest and the potential to get paid back sooner.  You want that.  That's why—that's why the seven years.
>
> And, you know, I wish it was shorter but, again, it is what it is.  Okay.

(Emphasis added).

243.    In addition to the misleading statements and material omissions made by Pauciulo, Vagnozzi dangled the unrealistic possibility of a quicker repayment of principal in order to persuade Plaintiffs and the Class to sign off on the Exchange Notes Offerings. However, Vagnozzi and Pauciulo both knew that early repayment—or indeed any repayment—would not occur

because Par Funding was on insolvent and securities regulators, including the SEC, were closing in.

244.    Also, during the April 18, 2020 video, Defendants admitted that the ABFP income funds are nothing more than shell companies, and Defendant Pauciulo stated that if investors sue ABFP, the only assets of ABFP income funds are the notes with Par Funding, and thus, he recommended that investors not sue any ABFP entity because they would only recover what Par Funding ultimately agrees to pay.

245.    Specifically, Vagnozzi and Pauciulo advised Plaintiffs and the Class that it would be futile for ABFP merchant cash investors to sue ABFP, claiming:

> MR. PAUCIULO:  Yes.  This is an organizational chart that shows the structure, the legal structure of the fund and how it was established.
>
> And there are several different ABF income funds.  This example applies to all of them.  They are all structured the same way.
>
> So we'll start in the middle.  So we formed ABFP Income Fund.  So that's a legal entity.  Like a corporation, it's actually a limited liability company but it's a stand alone, you know, legal entity.  Now, ABFP obviously accepted investor dollars, and in exchange for those investor dollars, issued promissory notes to each investor. *So everybody listening to this call holds a promissory note issued by ABFP*.
>
> ABFP then took, you know, the cash proceeds from the sale of its notes.  And then you'll see on the right side of the screen, they took that cash and they bought notes issued by CBSG, which is the legal name of the entity traded as Par Funding.  *So our fund owns promissory notes issued by Par Funding*.
>
> MR. VAGNOZZI:  So I just want to stress, *the investor, everybody listening here, does not have a note directly with Par Funding.  You have a note with my fund* or the—whoever—whoever—you may be watching this from the—you know, you may be with another fund.  But the point is, *you have a note with my fund, my income fund, which is the middle.  You do not have a note with CBSG or Par Funding directly*.
>
> *John, their claims are against who?*
>
> MR. PAUCIULO:  *The claim, if any, is between the investor and ABFP Income Fund.*  Because that's really—that's the contractual relationship.  Investors have no

contractual relationship with Par Funding.  The technical legal term is privity, privity of contract.

***So without some kind of direct business relationships and some kind of direct contractual relationship, the remedy is against the income fund itself, not to Par.*** That—

MR. VAGNOZZI:  So we already heard—the past ten minutes you summarized why, in essence, I am going to sign off on the note between my fund and CBSG. We have three options.  We feel by far it's the best option to give us a chance to get everybody to get their money back.  Right?

So now the—everybody listening has to make a determination, do they want to accept—do they want to accept, in essence, the fact that I accepted the terms between me and Par.

Is that a fair statement, John?  I want to make sure I'm not rephrasing anything wrong.

MR. PAUCIULO:  No, ***that's correct***.

MR. VAGNOZZI:  Okay.  So, next.  So here is our options.  John, explain this next slide.

MR. PAUCIULO:  Sure.  So, you know, the income fund has decided, I think we can say at this point it's pretty conclusive, that we want to—the funds want to restructure our notes with Par Funding.  And that's, you know, that's the way we go forward.

Now, in—on the left hand side of the screen, so you'll see two boxes, there's investors that don't sign and there's investors that sign.

So each investor has the choice of whether—you know, the same choices that ABFP Income Fund has vis à vis Par Funding, ***each investor has the same choice with regard to the income fund.  You can sue, you could put us into involuntary bankruptcy, I think, or you can agree to restructure.***

And so the proposal is to restructure the notes between the investors and ABFP Income Fund in the same way they're being restructured on the other side of the deal.

So—so—so there are two possibilities, right.  There are investors that agree to the restructuring and sign up for the new deal and there's investors who choose not to.

***So if we have investors that choose not to accept the deal, there's nothing for you to do.  You'll—your deal will remain status quo.  Ultimately, those notes will be***

*in default.  But what we will be doing is setting up parallel funds, and we will be dividing up the assets from the income fund, the existing income fund with the new parallel funds in proportion to those investors who sign up for the deal and those who don't.  So there will be cash flow going through both the new—the new parallel fund and the existing income fund.*

*So if you're an investor and you decide not to sign up, you know, you have no obligation—no legal obligation to do that.  But know that what—in effect you're going to wind up getting the deal anyway.*  Because you're going to get the 5 percent income and then you're going to make a decision about what you want to do with that.  Do you want to accept the 5 percent?  Do you want to accept the 5 percent or do you want to file a lawsuit and try to pursue more?  *But, you know, a successful lawsuit will get you a judgment against ABFP Income Fund and the only assets that the income fund is going to hold are the secured notes with Par.  So that's what you're going to wind up getting.*

So, you know, we think the structure should strongly encourage everyone to agree to the restructure and to accept the deal.  And, again, we think that's in the best interest of all investors and we think that's, again, a hard choice among some tough choices, but ultimately the one that we think has the best chance to get the most people the most money.

MR. VAGNOZZI:  Yeah, I mean, you have to—John, you have to—listen, it's really a math equation, right.  Not only do we feel that—that the—yeah, I mean, the likelihood of you getting, you know, 10 to 30 cents on the dollar based on your guess, if—if we—if I were to fight Par, if I represented the—if I fight them, it's 10 to 30 percent collections several years from now.  Fair statement?

MR. PAUCIULO:  Yeah, and tens, if not hundreds, of thousands in legal fees.

MR. VAGNOZZI:  Yeah.  And where is that coming from?

So the other option is, again, if somebody—if somebody, candidly, doesn't want to get on board, they want to stay on the top half, they want to stay as they're—what they're going to do, if they wanted to, you know, *go hire an attorney, on your own, and you're going to basically come after the—you're going to try to get a judgment against the fund.*

*John, what are the assets of the fund?*

MR. PAUCIULO:  *The Par notes*.

MR. VAGNOZZI:  *I assure you there's no—there's not a big chunk of money sitting in the income funds, sitting there.  The bank accounts have zero in them*.  Because the money was basically given to Par.  *So you will—you will fight and*

*you will get some kind of judgment against the fund.  And you will collect the percentage that they pay*.

MR. PAUCIULO:  *Right*.

MR. VAGNOZZI:  I don't know, John, can we say it any simpler?

We are the   yes, let's leave it at that.  *So it's really in everybody's best interest to have a fighting chance to come on board and work with these guys*.  We're going to work with them.  We'll work with them.  *That's your most likely scenario of getting your money back.*

(Emphasis added).

246.    Defendants' statements in the preceding paragraph were materially false and misleading because, among other things, Defendants presented Pauciulo's legal analysis as being independent, objective and impartial, when in fact, Pauciulo was deeply conflicted, as he was hired and paid by Vagnozzi and ABFP to zealously represent the legal and financial interests of Vagnozzi and each of the ABFP entities named herein. And Pauciulo and Eckert Seamans were bound by their retention to guard Defendants against exposure to liability generally, and, pertinent to this action, potential liability to ABFP merchant cash investors whose interests were plainly adverse to Defendants.

247.    In this same video message to investors, Defendant Pauciulo also tells investors that because Par Funding has not paid investors their returns in March, he obtained a UCC lien report against Par Funding and was "first in line" to collect for the investors, claiming:

[MR. VAGNOZZI:] John, let's wrap up by talking about the security.  Here is what—here is the thing, here is—by the way, this is a major reason we are going to work with them.  Because a year from now, could they default?  Yes, they could default.  But what—*talk about the security and the liens*, how this is working versus what we're about to get and what we don't have today and how that benefits us a year from now.

MR. PAUCIULO:  Sure.  I don't know if you want to scroll back to the first slide but, so—*so as it stands today, the notes issued by Par Funding to ABFP Income Fund are all unsecured.  So there's no collateral.  They're unsecured notes*.

***Similarly, the notes issued by the income fund to the investors are unsecured.*** And that's all laid out in the PPM that hopefully you got and took a look at when you made your investment decision.  They're unsecured.

So if there's a default, again, your remedy is a lawsuit.  Your remedy is not go grab collateral because you don't have a lien in any of the collateral so there's no legal basis on which to do that, right.

So then if we go to the next slide, Dean.  As part of our negotiations with Par Funding, they are offering collateral.  And they said, hey, we're going to move you from an unsecured status to a secured status.  And in the legal world, in the bankruptcy world, that's a very, very meaningful difference.  We'll now have collateral.  If there's a default in the future, we wouldn't have to necessarily file a lawsuit.  We can skip that whole lawsuit phase and go right to the phase of, you know, we're going to go grab assets and we are going to go collect assets.

Now, there's a whole process involved with that and I don't want to sort of minimize that or oversimplify that.  But that's years of litigation and tens of thousands of dollars in legal fees you kinda—you get to skip that phase and you go—get to grab assets.

Over the last several business days, I have obtained lien reports.  So these liens, I don't want to get into too much detail, but in order to have an effective lien, you have to file a record in a public filing place.  It works just the same as your mortgage on your house, right.  You can go to the recorder of deeds in your county and you can see a mortgage recorded against the property.  The process is very very similar.

But, in any event, ***I did a lien search and currently Par Funding does not have any liens on its assets***.

MR. VAGNOZZI:  Which is very key, John.  It's very key because I've had people ask us that.  Is there a—it's a very key point.

MR. PAUCIULO:  It's a key point.

***So not only are we getting a lien, we're getting a first position lien.  So we'll be first in line if there is a default, we'll be the first among all creditors to, you know, realize upon collateral to pay—to pay the debt.***

MR. VAGNOZZI:  Okay.  Fair enough.  So, John, again, summarizing and wrapping up, we are—***with this security here, this is a big part of our decision. People are, like, big part of our decision to take this deal is because a year from now everything that's available to us legally today will be available to us a year from now, should they default, and we're in a better position***.  And we've given these guys a chance to resurrect their business.  That's the major thinking.  And

because it—we have a secured lien collecting money a year from now would be a lot easier than today.  Correct?  Fair?

MR. PAUCIULO:  *Correct*.

(Emphasis added).

248.    Defendants' statements, above, were materially false and misleading because, as noted in the SEC Complaint, Public records do not reflect any such lien against Par Funding, but do reflect a number of other liens against Par Funding that would preclude Defendant Pauciulo's purported lien from being first in line. If Defendant Pauciulo had, in fact, performed a lien search, as he claims, either he did so negligently and failed to locate and identify senior liens (making him professionally negligent in providing faulty advice to unrepresented investors about liens against Par Funding), or he lied about the results of the lien check, or he failed to perform a lien check and lied about doing so. In any event, the Exchange Notes offerings provided ABFP merchant cash investors no greater security than the original subscription agreements.

249.    On April 26, 2020, Vagnozzi, through ABFP, emailed investors another video of Vagnozzi and Pauciulo discussing the Exchange Offering, in which Pauciulo and Vagnozzi again recommended that Plaintiffs and the Class accept the Exchange Offering, stating:

> [MR. VAGNOZZI:] I guess, John, again, to reiterate, out of the options we have when everybody—you know, I think everybody, overwhelming majority, like 99 percent of people, are on board.  *This is—you still feel strongly that this is the best—best—best chance for people to get their money back and the rate of return, right?*
>
> *Out of the options, this is—you would agree, again, this is—this is—this is your—this is the best choice, the best choice of the three; fair statement?  I want them to hear that from you, not me.*
>
> MR. PAUCIULO:  *Yeah, I think it's the best chance to get the most money back.*  And we talked at length on our video last week about, you know, basically there are three options.  There are a couple of variations on those three, but in the simplest terms there's three options.  There's litigating, which is expensive, probably pushes into a bankruptcy and you'd wind up in a bankruptcy proceeding for several years

and there will be some return to investors, but I think, you know, some fraction, probably a relatively small fraction of the investment.

Similarly, we could compel them into a bankruptcy.  Same—same net result.

***Or, we try to work with them and restructure the debt.***  And, you know, ***I think that that gives, again, the investors the best chance to get the most money back.***  There's no guarantees, obviously.  A lot depends on some unknowns and what happens with the economy.  And we all—we all are waiting and watching and hoping to see what happens with that.

But, you know, we know pretty well what will happen in the other options.  ***And I think, again, this is the best chance to get the most back.***

(Emphasis added).

250.    At Vagnozzi's behest, Pauciulo walked ABFP investors page-by-page through the Exchange Notes Offering documents, and reminded investors to review the disclosures and risks in the Exchange Offering materials.

MR. PAUCIULO:  Sure.  Well, the 30 pages are really three separate documents with a couple of attachments.

So the first document, really the main document with a couple of exhibits, is the supplement to confidential private placement offering memorandum.

Now, when you made your original investment, you'll recall you got a very comprehensive confidential private placement memorandum.  Everybody refers to it as a PPM.  And you received that PPM and it gave you all sorts of information about the investment opportunity and so forth.

So this supplement provides supplemental, additional, new information, really based on, you know, everything that's transpired over the last six weeks; you know, the Covid pandemic and the effect of that pandemic on the merchant cash advance business, the fact that Par Funding gave notice to all of its creditors that it was initially placing a complete moratorium on payments to creditors, and then the negotiations with Par Funding to restructure the debt held by—held by the funds themselves.

So that's laid out in the supplement and that's laid out in the first—you know, first few pages, really, beginning on Page—on Page 5 of this.  So certainly encourage people to read that.  You'll see some of the usual boiler plate from the PPM.

So here on the ABF Income Fund original note offer, we talk about the original note offering and we talk about the effects of the pandemic.  On the following page, Page 6, there are some risk factors.  And that talks about the risks associated with the restructuring.

Again, we think this is the best of the possible outcomes but every investment has risk and, again, we don't know what the future will hold.  So this talks about some of the ongoing risks.

And then when you get to Page 9, you'll see some provisions concerning the exchange offering, kind of what happens now.  And this is—you know, this is a description of what everything Dean and I have been talking with you all about over the last week or two and the notion, very simply, is that you are going to exchange your existing note for a new note.  And the existing terms are going to be amended and restated and there's going to be a new note with the new terms that we've been talking about.

The specific of those terms start here, in the middle of the page, and you can see the header, terms of the restated note.   And you can see the seven year anniversary—excuse me, the seven year maturity date.  You can see the rate of interest at 40—excuse me, at 4 percent.  You can see the installments, you know, the mechanics about what amounts get paid when.  So this is just, again, all disclosure for you to take a look at and read through.

And then the next couple of pages contain, just at a high level, you know, a couple of other items.  And then here, this is a really important page.  So as you accept the exchange offer, this is the mechanics of what you need to do.  So, one, you need to sign the exchange agreement.  And that's the stand alone signature page that we provided.  I'm going to go through the exchange agreement in a second, that's part of the package.  But the action item is to sign the exchange agreement.
Let's go back up just a little bit, Dean.
Okay.  Sign it.  Print it out, sign it.  And then you're going to send it back to Anita Badalamenti at Dean's office.   Right here is her email address, right, Anita@betterfinancialplan.  Or, if you prefer, obviously, you can mail or send it into the office.  Okay.  So this is your instructions when you're—when you're accepting.

So then—so that's—that's the supplemental disclosure document, okay.  Let's look at the two exhibits to the supplemental disclosure document.  Exhibit A is the exchange agreement itself.  Okay.  So this is the contract between you and the fund and this outlines the background, kind of outlines the transactions, how we got to where we got.

And then if you continue down, Section 2 lays out what you got.  And, again, you're getting a new note in exchange for your old note, no new money, no money coming in, no money going out.  It's an exchange, one for the other.

Article 3 has some reps and warranties that we're relying on.  You know, basically, that you're holding it for your own investment, you're not reselling it or anything like that.

And that's really the body of the exchange agreement itself.  We'll get down to the famous signature page, if you want to keep scrolling.

So that's the signature page.  And, again, that's the stand alone document, that's the one pager that's attached.  It's base—it's the same thing as here.

(Emphasis added). Pauciulo's explanation about the Exchange Notes Offering Documents was intended to mislead Plaintiffs and the Class, as he skipped the key section of the Exchange Offering documents that contains broad releases of claims as to many of the Defendants named herein, including Vagnozzi and each of the ABFP entities, as well as a waiver of the right to a jury trial and a waiver of the right to bring claims as a Class Action.

251.    The Exchange Offering materials and Private Placement Memoranda include a risk section that purports to disclose to investors the risks associated with the Exchange Offering. In it, ABFP tells investors, "The nature of the Company's business subjects the Company to litigation. The Company is in the business of providing MCAs to small and mid-size businesses. In connection with its collection efforts against MCA customers and in other similar contexts involving its MCA customers, the Company has been subject to a substantial number of lawsuits."

252.    While ABFP disclosed lawsuits small businesses *might* file, Defendants failed to disclose the Texas Securities Regulators' action against ABFP, Par Funding, and Abbonizio that was filed just months prior to the Exchange Offering, of the Emergency Cease-and-Desist Order filed entered against ABFP, Par Funding, and Abbonizio in Texas, or that the Texas securities enforcement action is ongoing. Nor was there any disclosure that the Texas securities regulators had entered an emergency Cease-and-Desist Order finding that ABFP, Par Funding, and Abbonizio made material misrepresentations and omissions to investors in connection with the Par

Funding and Agent Fund offering about the Par Funding offering, Par Funding's regulatory history, and Par Funding's management, and that this litigation was continuing at the time of the Exchange Offering.

253.    Based on representations by Par Funding and Defendant Pauciulo that Par Funding would otherwise default on payments altogether or enter bankruptcy, and based on Defendant Pauciulo's recommendation, as a lawyer, that they accept the offering, ABFP investors believed that they had no choice and many opted to accept the Exchange Offering with new investments that offered less interest and thus a lower rate of return.

254.    Defendants relentlessly pursued investors who did not sign and return the agreements for the Exchange Note offerings, which included a campaign of harassing phone calls. For instance, on May 7, 2020, Plaintiff Hawrylak received the following voice message from an ABFP employee Shannon Westhead, in which she attempted to strong -arm into signing the Exchange Notes offering papers:

> Hi Robert, this is Shannon. I just got your voicemail from the office. Please give me a call when you get this message 609-440-6484. You are missing the point! Umm, you have two options: "a" when your maturity [sic] is supposed to mature you can sue the fund for thousands of dollars and hope that you can regain some of your money, or you can take the deal for 4 percent, or you can lose your money. So, those are the options. And if you need me to explain them again, signing the paperwork protects you from losing your money. I want to help you do that. Please give me a call, 609-.

255.    Defendants' dissemination of materially false and misleading information had the desired effect—many of the investors accepted an Exchange Note offering that replaced the ABFP merchant cash investments.

256.    Par Funding began paying investors pursuant to the restructured agreements on or about June 1, 2020. Although Vagnozzi and the MCA Funds have not disclosed the sources of funds to make the interest payments for the Exchange Notes, given Par Funding's insolvency and

extremely limited cash flow, it is difficult to imagine that the funds used to make such payments would have come from revenue generated by Par Funding's merchant cash advance loans. The actual purpose of making the interest payments, which Defendants knew would not continue, was to create a legal fiction that the restructure note agreements were supported by valuable consideration in an attempt to bar ABFP investors from bringing lawsuits to recover their principal.

257.     As for Vagnozzi, three days after the SEC entered a July 14, 2020 Consent Order against him and ABFP for engaging in unregistered securities offerings and acting as an unregistered broker-dealer in connection with five offerings not at issue in this case, Vagnozzi, emailed investors about the Order and announced that he was expanding his business claiming: "My staff and I feel that the results of this [SEC] investigation are the absolute best reason someone should invest with us…." Vagnozzi added, "[The SEC] [a]lso determined that all investments offered by ABFP were carried out in a manner consistent with the information provided to investors." Finally, Vagnozzi asserted: "Three years of investigation, $300k spent on my end, and all they can say is they don't like my advertising methods and the fact that I served steak dinners in 2013 as a way for people to hear about our investments."

258.     Each of Vagnozzi's statements was materially false and misleading when made for numerous reasons, including that the SEC Order makes no such findings. Rather, Vagnozzi mischaracterized the SEC Order to investors as a selling point for investing with him and ABFP, and in the same email message announced that he is forming a new public company that he will soon advertise.

259.     Vagnozzi and ABFP also issued a press release about the SEC Order, claiming that "the findings of these proceedings have also paved the way for the company to restructure as a public company, which will alleviate advertising restrictions in the future." This was also untrue.

260.     To the contrary, on July 24, 2020, the SEC commenced an enforcement action against Par Funding, ABFP, ABFP Management, the ABFP Funds, LaForte, McElhone, Vagnozzi and others for numerous violations of the federal securities laws and seeking temporary and permanent injunctions of Defendants' business operations, freezing their assets, and appointing a receiver.

261.     On July 28, 2020, the Southern District of Florida entered an order granting the SEC's Emergency Ex Parte Motion for a temporary restraining order, freezing Defendants' assets, and appointing a receiver.[53] However, even this emergency injunction failed to stop Defendant Vagnozzi's chicanery.

262.     In his sworn accounting to the SEC and the court, Mr. Vagnozzi identified an ABFP bank account at Victory Bank as having $7,800.[54] After his submission of this sworn accounting, the SEC learned from Victory Bank that on July 28, 2020 – after the entry of the Receivership Order and TRO – Mr. Vagnozzi transferred $60,000 from the ABFP bank account at Victory Bank to his personal bank account. He did not disclose his receipt of this post-Order transfer in his sworn accounting.[55]

263.     Mr. Vagnozzi held another account he failed to disclose altogether in his sworn accounting – MK Corporate Debt. This bank account was created to hold Par Funding money transferred to Mr. Vagnozzi's MK Corporate Debt in June 2020. Specifically, from June 15, 2020 through June 19, 2020, Par Funding transferred $4 million to Mr. Vagnozzi's MK Corporate Debt bank account. Contrary to Mr. Vagnozzi's representations to investors during the April 2020 Exchange Offering that they had to accept a new promissory note offering 4% interest or faced

---

[53] *See SEC v. CBSG, et al*, No. 9:20-cv-81205-RAR at Dkt. # 42 (S.D. Fla. July 28, 2020).
[54] *See SEC v. CBSG, et al*, No. 9:20-cv-81205-RAR, at Dkt. # 227 (S.D. Fla. Sept. 2, 2020).
[55] *Id*.

getting nothing, Mr. Vagnozzi and Par Funding actually set up MK Corporate Debt bank account as a means to return the principal investment amounts to investors who rejected the Exchange Note Offering. Thus, investors who rejected the Exchange Note Offering were made whole. This was contrary to what Mr. Vagnozzi told investors during the Exchange Offering, and he used the MK Corporate Debt account to make these repayments of investor principal.[56]

264.    On July 28, 2020, Mr. Vagnozzi transferred the balance in the MK Corporate Debt bank account to his personal bank account – to the tune of more than half a million dollars. He did not disclose this transfer or even the existence of the MK Corporate Debt bank account in his sworn accounting. Instead, it was identified on a list of ABFP funds, and the SEC and Receiver discovered the settlements and transfer to Mr. Vagnozzi, and then confronted him with it through his counsel.[57]

265.    In early August 2020, Defendants defaulted on the Exchange Notes and breached the Exchange Note Subscription Agreements, as they failed to make the required monthly payment for August 2020.

266.    On or about August 11, 2020, Joseph LaForte was arrested after revealing to undercover FBI agents that he intended "to flee the country in his private plane and hide millions in untouchable offshore accounts," according to news reports.[58] "FBI agents arrested him Friday at his Lower Merion home after finding four handguns, two shotguns, and a rifle that he was barred as a felon from owning."[59] In addition to these weapons, during raids of "three multimillion properties LaForte owned in Pennsylvania and Florida … agents seized LaForte's private plane,

---

[56] *Id*.
[57] *Id*.
[58] Jeremy Roebuck, "Guns, cash, a private plane: Feds reveal more on probe of Philly financier at center of alleged $500M fraud," The Philadelphia Inquirer (Aug. 11, 2020).
[59] *Id*.

$2.5 million in cash hidden in bundles, and a $10 million bank account controlled by him and his wife, prosecutors said."

267.   Shortly after LaForte's arrest, Judge Rodolfo A. Ruiz II of the Southern District of Florida issued an order that expanded the authority of the Receiver and he fired all employees and management of Par Fund and ABFP, stating that all "trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys, and other agents" of the companies "are hereby dismissed."[60] Judge Ruiz entered this order due to the "difficulties the receiver has encountered to obtain information he needs to adequately preserve the receivership entities' assets and protect investor funds, the Court finds it necessary to expand the scope of the receivership…."[61] Specifically, the Receiver, Ryan Stumphauzer, told Judge Ruiz that "LaForte and McElhone had declined to meet with his staff and refused to answer questions, and that the many lawyers who have helped Par manage its business had been told not to cooperate with the receiver, citing attorney-client privilege. The new order instructs attorneys who have worked for the companies, among others, to cooperate with the receiver."[62]

268.   Despite locking the doors to all Par Funding and ABFP offices and firing all of their employees, "employees of Par Funding … remotely downloaded more than 100,000 company records in recent days and altered some, officials allege."[63] In response, the Receiver obtained an emergency injunction to block electronic access to Par Funding's books and records and to block Par Funding staff from disclosing, destroying or downloading any Par Funding documents.[64]

---

[60] Joseph DiStefano, "Federal judge fires the leaders and employees of firms at heart of alleged multimillion-dollar fraud," The Philadelphia Inquirer (Aug. 14, 2020).
[61] *Id*.
[62] *Id*.
[63] Joseph DiStefano, "Federal judge orders Par Funding to stay out of seized accounts after its staff accessed 100,000 records," The Philadelphia Inquirer (Aug. 17, 2020).
[64] *Id*.

269.    On August 21, 2020, Judge Ruiz held a hearing on the SEC's motion for a preliminary injunction, during which the SEC presented evidence that "Par Funding had suppressed an auditor's report showing that the operation was losing money."[65] In particular, the 2017 auditor's report showed that the company had a net loss of nearly $7 million, which was "driven by the fact that Par Funding had siphoned off $33 million in 'consulting fees' to themselves. The firm 'has not recorded an audit since then....'"[66] The SEC also presented evidence that Vagnozzi was the top salesperson for Par Funding, and that he "also was part of a group that led investors to believe that their money was protected by insurance coverage when they had none....."[67]

## CLASS ALLEGATIONS

270.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the following Classes:

a.     **The MCA Class:** consists of all persons who purchased ABFP Merchant Cash Advance Investments from Spartan Income Fund, LLC, Pisces Income Fund LLC, Capricorn Income Fund I, LLC, Merchant Services Income Fund, LLC, and any Non-Receivership Agent Funds affiliated with and/or related to Par Funding or Dean Vagnozzi during the Class Period and who were damaged thereby.

b.     **The Life Settlement Class:** consists of all persons who purchased ABFP life settlement fund investments from any ABFP entity or affiliate, including but not limited to Pillar Life Settlement Fund I, L.P.; Pillar II Life Settlement Fund, L.P.; Pillar 3 Life Settlement Fund, L.P.; Pillar 4 Life Settlement Fund, L.P.; Pillar 5 Life Settlement

---

[65] Joseph DiStefano, "Par Funding says federal regulators pose the real threat to investors. The SEC rejects that.," The Philadelphia Inquirer (Aug. 21, 2020).
[66] *Id.*
[67] *Id.*

Fund, L.P., Pillar 6 Life Settlement Fund, L.P., Pillar 7 Life Settlement Fund, L.P., Pillar 8 Life Settlement Fund, L.P., and Coventry First LLC, and who were damaged thereby.

      c.    **The Litigation Funding Class**: consisting of all persons or entities who purchased litigation funding investments from any ABFP entity, including but not limited to Atrium Legal Capital, LLC, Atrium Legal Capital 2, LLC, Atrium Legal Capital 3, LLC, Atrium Legal Capital 4, LLC; during the Class Period and who were damaged thereby.

      d.    **The Real Estate Class**: consisting of all persons or entities who purchased litigation funding investments from any ABFP entity, including but not limited to Woodland Falls Investment Fund, LLC, and who were damaged thereby.

      e.    **The Alternative Asset Class**: consisting of all persons or entities who purchased litigation funding investments from any ABFP entity, including but not limited to Fallcatcher, Inc. and Promed Investment Co., L.P., during the Class Period and who were damaged thereby.

271.    Excluded from the Classes are Defendants, the current and former officers and directors of the limited liability company Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

272.    The members of each of the Classes are so numerous that joinder of all members is impracticable. Throughout the Class Period, ABFP Merchant Cash Advance Investments, life settlement investments, litigation funding investments and real estate investment were sold by Defendants to hundreds, if not thousands, of individual investors. While the exact number of members of the Classes is unknown to Plaintiffs at this time and can only be ascertained through

appropriate discovery. Plaintiffs believe that there are at least hundreds of members in each of the proposed Classes. Members of the Classes may be identified from records maintained by Defendants and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

273.    Plaintiffs' claims are typical of the claims of the members of the Classes, as all members of the Classes are similarly affected by the Defendants' wrongful conduct in violation of laws that is complained of herein.

274.    Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have retained counsel competent and experienced in class litigation.

275.    Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   a.    whether Defendants' acts violated RICO as alleged herein;

   b.    whether the misstatements and omissions alleged herein were material to ABFP merchant cash advance investors;

   c.    whether the misstatements and omissions alleged herein were material to ABFP life settlement fund investors;

   d.    whether the misstatements and omissions alleged herein were material to ABFP litigation funding investors;

   e.    whether the misstatements and omissions alleged herein were material to ABFP real estate investors;

   f.    whether the misstatements and omissions alleged herein were material to ABFP alternative asset investors;

g.    whether statements made by the Defendants to investors in ABFP Merchant Cash Advance Investments, life settlement fund investments, litigation funding investments, real estate investments, and alternative asset investments during the Class Period misrepresented and/or omitted material facts about the risks, prospects, and potential rates of returns of such ABFP investments; and

h.    to what extent the members of the Classes have sustained damages and the proper measure of damages.

276.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual member of the Classes may be relatively modest, the expense and burden of individual litigation make it impossible for members of the Classes to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF
### COUNT I
### VIOLATION OF 18 U.S.C. § 1962(C) AS TO ALL DEFENDANTS
### (Except Coventry First LLC)

277.    Plaintiffs reallege and incorporate the allegations set forth herein as if fully stated herein.

**A. Culpable Persons**

278.    Defendant Vagnozzi is a "person" within the meaning of 18 U.S.C. § 1962(c) as the term is defined by 18 U.S.C. § 1961(3).

279.    Non-party is a limited liability company capable of holding a legal interest in property and are thus "persons" within the meaning of 18 U.S.C. § 1962(c) as the term is defined by 18 U.S.C. § 1961(3).

280.    Defendant Pauciulo, is a "person" within the meaning of 18 U.S.C. § 1962(c) as the term is defined by 18 U.S.C. § 1961(3).

281.    Defendant Eckert Seamans, is a limited liability company capable of holding a legal interest in property and are thus "persons" within the meaning of 18 U.S.C. § 1962(c) as the term is defined by 18 U.S.C. § 1961(3).

282.    Non-party Management Company, LLC, is a limited liability company capable of holding a legal interest in property and are thus "persons" within the meaning of 18 U.S.C. § 1962(c) as the term is defined by 18 U.S.C. § 1961(3).

283.    Non-party ABetterFinancialPlan.com d/b/a A Better Financial Plan, and Defendants Spartan Income Fund, LLC; Pisces Income Fund LLC; Capricorn Income Fund I, LLC; Pillar Life Settlement Fund I, L.P.; Pillar II Life Settlement Fund, L.P.; Pillar 3 Life Settlement Fund, L.P.; Pillar 4 Life Settlement Fund, L.P.; Pillar 5 Life Settlement Fund, L.P.; Pillar 6 Life Settlement Fund, L.P.; Pillar 7 Life Settlement Fund, L.P.; Pillar 8 Life Settlement Fund, L.P.; Atrium Legal Capital, LLC; Atrium Legal Capital 2, LLC; Atrium Legal Capital 3, LLC; Atrium Legal Capital 4, LLC; Fallcatcher, Inc.; Promed Investment Co., L.P.; and Woodland Falls Investment Fund, LLC (collectively, "Entity Defendants") are Delaware limited liability companies capable of holding a legal interest in property and are thus "persons" within the meaning of 18 U.S.C. § 1962(c) as the term is defined by 18 U.S.C. § 1961(3).

**B.  The Association-in-Fact Enterprise**

157

284.     Defendants Dean Vagnozzi, Pauciulo, Eckert Seamans; Albert Vagnozzi; Alec Vagnozzi; Anita Vagnozzi; Shannon Westhead; Jason Zwiebel; Andrew Zuch; Michael Tierney; Paul Terence Kohler; John Myura; John W. Pauciulo; Eckert Seamans Cherin & Mellott, LLC; and the Entity Defendants and non-parties ABFP and ABFP Management Company, LLC, are separate individuals or entities associated with each other by shared personal and/or one or more contracts or agreements for the purpose of originating, underwriting, marketing, selling and servicing ABFP Merchant Cash Advance Investments to Plaintiffs the Class, who reside in Pennsylvania, New Jersey, Michigan, and numerous other states.

285.     This association of the Defendants Vagnozzi, Pauciulo, Eckert Seamans, the Entity Defendants, and non-parties ABFP and ABFP Management Company, LLC constitute a single association-in-fact enterprise (the "ABFP Enterprise") within the meaning of 18 U.S.C. §1962(c), as the term is defined in 18 U.S.C. §1961(4).

286.     The ABFP Enterprise has an existence separate and apart from the illegal activity alleged herein.

**C. Each Defendants' Distinct Roles in the Enterprise.**

287.     Each of the Defendants has a distinct role in the ABFP Enterprise.

288.     Defendant Vagnozzi is the ringleader of the ABFP Enterprise and acts as the primary marketer and salesperson of the ABFP Merchant Cash Advance Investments, and he recruited Defendants Pauciulo and Eckert Seamans to assist in the fraudulent scheme perpetrated by the ABFP Enterprise. Through the sale of ABFP merchant cash investments, Vagnozzi obtains the funds needed for his role as an agent for Par Funding, from whom Vagnozzi receives substantial compensation for providing substantial capital that is used to by Par Funding to extend merchant cash advances to merchants who cannot obtain conventional bank financing.

289. Defendants Pauciulo and Eckert Seamans have facilitated the ABFP Enterprise's fraudulent scheme by providing a wide range of legal services to the ABFP Enterprise, which allowed Defendant Vagnozzi to represent in radio advertisements and other media that ABFP's alternative asset investments "were put together with the help of one of Philadelphia's largest law firms."

290. Defendants Pauciulo's and Eckert Seamans' role in the ABFP Enterprise has included reviewing and approving advertising copy, drafting Private Placement Memoranda and Subscription Agreements for the ABFP investment offerings, and preparing and filing business organization documents for the numerous ABFP Enterprise's shell limited liability companies, including, but not limited to, the ABFP Management Company, LLC and the Entity Defendants.

**D. Engagement in Interstate Commerce**

291. The ABFP Enterprise is engaged in interstate commerce and uses instrumentalities of interstate commerce in its daily business activities.

292. Specifically, the Vagnozzi and ABFP maintain offices in Pennsylvania and New Jersey, and use personnel in these offices to originate, underwrite, fund, market, sell, and service ABFP Merchant Cash Advance Investments, life settlement fund investments, litigation funding investments, and real estate investments. Such investments are marketed and sold to individual investors in the Pennsylvania, New Jersey and numerous other states via the extensive use of interstate emails, telephone calls, wire transfers and bank withdrawals processed electronically.

293. Communications between Defendants and Plaintiffs and the Classes were conducted through by AM radio broadcasts, interstate email, telephone calls, wire transfers or other interstate wire communications. Specifically, Defendants used AM radio broadcasts, interstate emails and telephone calls to originate, underwrite, market and sell the ABFP Merchant

Cash Advance Investments, fund the ABFP Merchant Cash Advance Investments, and collect the funds payable from merchants who entered into Merchant Cash Advance Agreements, and Collect on notes payments from Par Funding, via electronic interstate transfers processed through an automated clearing house.

**E. Conducting Affairs through a Pattern of Racketeering.**

294.    Defendants conducted the affairs of the ABFP Enterprise or participated in the affairs of the ABFP Enterprise, directly or indirectly, though a pattern of racketeering activity (wire fraud, mail fraud and financial institution fraud) in violation of 18 U.S.C. § 1962(b) and (c).

295.    At all relevant times, Defendants devised and carried out a scheme to conduct the affairs of the ABFP Enterprise to intentionally defraud investors in Pennsylvania and throughout the United States, including the Plaintiffs and the Classes, to enter into Subscription Agreements and make payments for the purchase of ABFP merchant cash investments, for which Defendants received upfront commissions and fees, and then entrusted the remaining funds (*i.e.*, Plaintiffs' and the Classes' principal investments) to Par Funding. In turn, Par Funding made cash advances cash to hundreds if not thousands of small businesses that lacked any creditworthiness and would have been unable to obtain any form of conventional bank funding. Par Funding made such cash advances without obtaining any documentation from such merchants concerning their ability to repay such cash advances. Par Funding engaged in these practices for the purpose of trapping such merchants in a repetitive cycle of taking out new cash advances to repay the prior advances when they came due.

296.    As alleged herein, Defendant Vagnozzi and ABFP promote the sale of ABFP Merchant Cash Advance Investments (as well as life settlement, litigation funding, and real estate investments) through AM radio advertising, which direct potential investors to contact non-party

ABFP using a toll-free telephone number, as well as communications through the internet, email, U.S. mail and other interstate delivery services, and wire transfers, and therefore, it was reasonably foreseeable that interstate emails, telephone calls, and wire transfers would be used in furtherance of the scheme, and, in fact, intestate emails, telephone calls and wire transfers are used in furtherance of the scheme.

297.    Specifically, the ABFP Enterprise directed, approved or ratified ABFP's use of AM radio advertising, the internet, interstate email, telephone calls, and other communications to intentionally defraud investors in Pennsylvania, New Jersey, Delaware and other states, including Plaintiffs and the Classes, to enter into Subscription Agreements for the purchase of ABFP Merchant Cash Advance Investments (as well as life settlement, litigation funding, and real estate investments) that were extraordinarily risky and were highly vulnerable to market forces, including recession, and the stock market.

298.    As part of this scheme, by the use of AM radio, interstate emails and telephone calls, the ABFP Enterprise targets and solicits unsophisticated individual investors to participate in private placement offerings of ABFP investments. Defendants' use of AM radio commercials, interstate emails and telephone calls intentionally create the false impression that the ABFP Merchant Cash Advance Investments are safe, low-risk investments in fixed income debt instruments by:

(i) misrepresenting the creditworthiness of the merchants who enter into merchant cash advance agreements with Par Financial, and hence, the risk that such merchants will default on their cash advances;

(ii) representing that the ABFP Merchant Cash Advance Investments are safe and stable investments because Vagnozzi and ABFP "worked with one of Philadelphia's

largest law firms to put together [the] investment," when, in fact, Defendants Pauciulo and Eckert Seamans were intimately involved in every aspect of the ABFP Enterprise's fraudulent scheme;

(iii) falsely promising that the ABFP Merchant Cash Advance Investments would pay Plaintiffs and the Class "a 10 percent return with an interest check sent to you monthly and 100 percent of your principal will be returned to you after just one year;"

(iv) falsely representing that ABFP Merchant Cash Advance Investments are "fully insured" by "one of the largest insurance companies in the world," when in fact, Plaintiffs' and the Classes' investments were, at all times, entirely at risk; and

(v) deceptively advising Plaintiffs and the Classes, who were unrepresented by counsel, that legal action would be futile and that the only means of recovering their investments in ABFP Merchant Cash Advance Loans was to agree to enter into a restructuring agreement with Par Funding, an illiquid entity, despite that Defendants Pauciulo and Eckert Seamans were deeply conflicted that

299.     Upon the sale of a ABFP Merchant Cash Advance Investment to an investor, the ABFP Enterprise furthers the scheme by using interstate wires to fund the merchant cash advances and electronic interstate bank withdrawals to repay the amounts owed under the Merchant Cash Advance Agreements to Par Funding. The Merchant Cash Advance Agreements, in turn, were transferred from Par Funding to ABFP pursuant to separate promissory notes and ultimately distributed to investors, all via interest wires and electronic bank withdraws. This conduct continued until March 2020, when the merchants defaulted on their notes and triggered a collapsed of the ABFP merchant cash investments and the previously undisclosed risks of the ABFP

Merchant Cash Advance Investments were realized, leaving ABFP investors without monthly interest payments and the prospect of a complete loss of their principal investment.

300.     The ABFP Enterprise again used interstate e-mails, video transmitted over the internet and telephone calls to fraudulently induce ABFP merchant cash investors to enter into one or more restructuring agreements with Par Funding, which they knew was then illiquid and likely to seek bankruptcy protection. In a misguided bid to avoid being sued by ABFP investors, Defendant Vagnozzi caused Defendants Pauciulo and Eckert Seamans to provided false and misleading legal advice (despite obvious conflicts of interest) to Plaintiffs and the Class, who were not represented by legal counsel, about their rights with respect to the ABFP merchant cash investments and prospects of obtaining a monetary recovery from Defendants through litigation.

301.     Upon information and belief, Plaintiffs and the Classes relied upon Defendants' false and misleading statements and material omissions concerning the ABFP Merchant Cash Investments (as well as life settlement, litigation funding, and real estate investments) in making their decisions to purchase such investments.

302.     Defendants' conduct constitutes "fraud by wire" within the meaning of 18 U.S.C. § 1343 and "fraud by mail" and "investment fraud," which are "racketeering activit[ies]" as defined by 18 U.S.C. 1961(1). Its repeated and continuous use of such conduct to participate in the affairs of the ABFP Enterprise constitutions a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

**F.  Injury**

303.     As a direct and proximate cause of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs and the Class suffered, and continue to suffer, substantial losses of their savings and investments and/or property as Plaintiffs and the Class are no longer receiving monthly interest

payments (or greatly diminished payments) and cannot and likely will not receive the repayment of their principal as promised by the ABFP Enterprise, and they will continue to suffer such financial and economic injury for the foreseeable future.

**COUNT II**

**NEGLIGENT MISREPRESENTATION AS TO ALL DEFENDANTS**

304.     Plaintiffs repeat and re-allege each of the allegations set forth herein as if fully stated herein.

305.     For purposes of this count only, in the alternative, Plaintiffs specifically disclaim any allegations of fraud, and allege only negligence.

306.     As set forth herein, each of the Defendants had a duty, as a result of a special relationship, *i.e.*, the offering of securities to investors across the country in the form of subscription agreements for unregistered securities, to give accurate information.

307.     Defendant Vagnozzi is the owner and a control person of non-parties ABFP and ABFP Management Company, LLC; and the Entity Defendants, and in that capacity, orchestrated the offerings and sales of unregistered securities by through these entities, to Plaintiffs and the Classes. As such, Vagnozzi owed Plaintiffs a duty of candor.

308.     Each of the Entity Defendants was an issuer that offered and sold unregistered securities to investors including Plaintiffs. As such, each of these Defendants owed Plaintiffs and the Classes a duty of candor.

309.     Defendants Pauciulo and Eckert Seamans, legal counsel to Defendants Vagnozzi, ABFP, ABFP Management, because of their key role in structuring the ABFP Merchant Cash Advance Investments (as well as life settlement, litigation funding, and real estate investments), which included preparing the offering materials distributed to investors, and overseeing the distribution of such offering materials to investors, served as de facto underwriters of each of the

164

merchant cash advance investments, and orchestrated and facilitated each of these unregistered securities offerings. Moreover, Defendants Pauciulo and Eckert Seamans exercised control and oversight of the information that was disseminated to Plaintiffs and the Classes concerning their investments. As such, each of these Defendants owed Plaintiffs and the Class a duty of candor.

310.    Because of their positions with ABFP and its affiliates, Defendants had access to material non-public information concerning ABFP and Par Funding, and they knew the adverse facts specified herein.

311.    Defendants Pauciulo and Eckert Seamans, because of their positions as legal counsel to Vagnozzi, ABFP, ABFP Management, and their role as the de facto underwriter of each of the Merchant Cash Advance Investments offerings, possessed unique and specialized expertise and information concerning ABFP, including unfettered access to the material non-public information specified herein. Such information was available to Plaintiffs only when Defendants chose to reveal it.

312.    Defendants occupied a special position of confidence and trust such that Plaintiffs' reliance on their statements in the ABFP Merchant Cash Advance Investments (as well as life settlement, litigation funding, and real estate investments), including Private Placement Memoranda, Subscription Agreements, periodic reports, and other materials provided to investors was reasonable. Put another way, Defendants had a duty to speak truthfully and with care in these circumstances, where the relationship is such that in morals and good conscience, Plaintiffs had the right to rely on Defendants for accurate and correct information and their reliance was reasonable.

313.     As alleged herein, Defendants made multiple false and misleading representations and omissions of material fact that they should have known were incorrect. Defendants' false and misleading statements.

314.     Defendants knew that Plaintiffs desired the information supplied in the representations for a serious purpose, *i.e.*, to decide whether to invest in the in the ABFP Merchant Cash Advance Investments offerings (as well as life settlement, litigation funding, and real estate investments).

315.     All investors in the ABFP Merchant Cash Advance, life settlement, litigation funding, and real estate investments offerings received a Private Placement Memoranda, Subscription Agreements, Notes, and Limited Partnership Agreements that were substantially similar in all material respects. Each investor in an ABFP Merchant Cash Advance Investment offering was required to represent, and did in fact represent, that he or she "has received, read and fully understands the [Private Placement] Memorandum. Investor further acknowledges that Investor is basing Investor's decision to invest in the LP Interests solely on the [Private Placement] Memorandum and Investor has relied only on the information contained therein and has not relied upon any representations made by any other person."

316.     Plaintiffs' specific reliance on Defendants' misrepresentations and omissions, as reflected in the Private Placement Memoranda and Subscription Agreements required in order to invest in a ABFP Merchant Cash Advance Investments offerings (as well as life settlement, litigation funding, and real estate investment offerings), was justifiable in that Defendants were issuers of securities under strict legal obligations to be truthful in their statements made to induce investors to rely on such statements and invest in the ABFP funds.

317.     Because of the Defendants' exclusive control over information relating to the operations, financial condition and controlling persons of the ABFP funds, Plaintiffs were required to rely, and certify their reliance, only on the offering documents and information provided by Defendants. Plaintiffs would have been unable to discover the truth, regardless of any level of due diligence or independent research they might have conducted. There were no independent means of verification available to Plaintiffs and the Class of the true facts regarding the operations, financial condition and controlling persons of the ABFP funds.

318.     Plaintiffs intended to rely and act upon the information provided by Defendants. Plaintiffs reasonably relied on Defendants' misrepresentations and omissions to their detriment; namely, they decided to invest in the ABFP funds, and as a result of their reliance, suffered damages.

## COUNT III
## BREACH OF FIDUCIARY DUTY AS TO DEFENDANT VAGNOZZI

319.     Plaintiffs re-allege and incorporate the allegations set forth herein as if fully stated herein.

320.     Defendant Vagnozzi and his corporate alter egos, ABFP and ABFP Management, were, at all relevant times, control persons, managers, general managers, and majority owners of the ABFP Entity Defendants and owed a fiduciary duty to Plaintiffs and the Classes.

321.     Plaintiffs and the Classes were fully dependent upon Defendant Vagnozzi's and non-parties ABFP's and ABFP Management's, ability, skill, knowledge, and goodwill to invest their money appropriately and thereafter diligently oversee and manage that money and certified by signing the Subscription Agreements and Limited Partnership Agreements that they recognized these Defendants as their fiduciaries.

322.     Moreover, by virtue of their superior skill and knowledge, their discretion on how to invest the investors' money, their exclusive oversight over the investors' money, the fact that they had been entrusted by Plaintiffs and the Classes with their money, Defendant Vagnozzi and non-parties ABFP and ABFP Management were the investors' fiduciaries.

323.     Defendant Vagnozzi and non-parties ABFP and ABFP Management breached their fiduciary duties to Plaintiffs and the Classes by failing to truthfully, accurately, and completely disclose: (i) the nature of their investment in ABFP funds, (ii) failing to disclose the true risks of investing in ABFP funds, as set forth at length above, (iii) failing to truthfully disclose the alternatives to accepting the Exchange Notes offerings, including pursuing litigation, (iv) failing to disclose the prospects of recouping their principal by agreeing to accept the Exchange Notes offering, (v) failing to properly oversee, manage safeguard the Plaintiffs' and the Classes' money and diligently invest it, and (v) failing to disclose to investors that distributions were not paid from partnership operations, but instead from other investors' funds.

324.     As a direct and proximate consequence of Defendant Vagnozzi's and non-parties ABFP's and ABFP Management's, conduct as described in the foregoing and throughout this Complaint, Plaintiffs and the Classes have lost a significant portion of the money they invested in the ABFP funds. As a result of Defendant Vagnozzi's breaches of fiduciary duty, Plaintiffs and the Classes have suffered damages in an amount to be determined at trial.

**COUNT IV**
**CIVIL CONSPIRACY AGAINST ALL DEFENDANTS**

325.     Plaintiff re-alleges and incorporates the allegations set forth herein as if fully stated herein.

326.     Defendants combined to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means. Defendants acted maliciously, without legal justification, and

with the intent of injuring Plaintiffs. As such, Defendants have engaged in a civil conspiracy. In the course of their civil conspiracy, Defendants committed one or more unlawful, overt acts. Such unlawful, overt acts include Defendants' conduct described above. Such actions by Defendants subject such Defendants to joint and several liability.

## COUNT V
## COMMON LAW FRAUD AND FRAUDULENT INDUCEMENT

327.    Plaintiffs re-alleges and incorporates the allegations set forth herein as if fully stated herein.

328.    Plaintiffs and the Classes were defrauded by Defendants, as that cause of action is delineated by the common law in the Pennsylvania.

329.    Plaintiffs were the recipients of multiple misrepresentations and omissions of material fact, as set forth herein.

330.    Defendants knew that their statements to Plaintiffs and the Classes were materially false when made. Defendants concealed from investors the truth about Par Funding's business and its affiliates, including that Par Funding:

- has not implemented a meaningful underwriting process of the merchant cash advance loans to determine the borrowers' ability to repay the loans;

- often approves loans in less than 48 hours, without conducting an on-site inspection of the business;

- funds loans without obtaining information showing the business' profit margins, debt schedules, accounts receivable, or expenses;

- has a 1% - 2% default rate, as Vagnozzi and his associates falsely claim to prospective investors, thereby concealing Par Funding's true loan default rate of up to 10% from prospective investors;

- had filed more than 800 lawsuits against small businesses for defaulted Loans by August 2019 for more than $100 million;

- had filed more than 1,000 lawsuits by November 2019 seeking over $145 million in missed payments;

- had filed more than 1,200 lawsuits by January 2020, seeking $150 million in delinquent payments;

- provided insurance to borrowers to cover defaults, when in fact Par Funding did not offer small businesses insurance on their loans;

- was founded by LaForte, a twice-convicted felon who, prior to founding Par Funding, was imprisoned for grand larceny and money laundering and ordered to pay $14.1 million in restitution; and

- has a history of regulatory violations and fines, including: (a) the November 2018 penalty of $499,000 from Pennsylvania Securities Regulators ; (b) the December 2018 Cease-and-Desist Order from the New Jersey Bureau of Securities against Par Funding based on its offer and sale of unregistered securities ; and (c) the February 2020 Emergency Cease-and-Desist Order issued by the Texas State Securities Board against Par Funding and others, alleging fraud and registration violations in connection with its securities offering through an Agent Fund in Texas.

331.   Additionally, Defendants misrepresented and concealed Vagnozzi's extensive history of regulatory violations and penalties, including:

- the May 2019 Pennsylvania Securities regulatory Order that required him to pay a $490,000 fine for the sale of Par Funding investments in violation of state law;

- the claim filed in February 2020 by the Texas Securities Regulators against ABFP for fraud in connection with the Par Funding offering, which remains pending;

- the July 14, 2020 Consent Order filed by the SEC against Vagnozzi and ABFPfor various federal securities laws violations; and

- the SEC Action seeking temporary and permanent injunctions of ABFP and Vagnozzi's operations, appointment of a receiver, and freezing assets.

332.    Based on their positions as control persons, officers, directors, managers, majority owners, attorneys, and/or underwriters -- each of whom offered and sold unregistered securities in the form of promissory notes and partnership units to investors including Plaintiffs and the Class -- Defendants were uniquely knowledgeable on the true practices and procedures of Par Funding, LaForte, Vagnozzi, ABFP, ABFP Management, and the ABFP Entity Defendants, as well as the risks inherent in investing in unregistered securities issued by the ABFP Entity Defendants, as described at length herein.

333.    Armed with such knowledge, Defendants had a full understanding of the truth, yet they disseminated material falsehoods to create a misleading and false picture of investing in unregistered securities issued by the ABFP Entity Defendants with the intention to induce Plaintiffs and the Classes to rely on such statements and invest in the ABFP funds.

334.    In addition, as alleged herein, a fiduciary relationship exists between Defendants Vagnozzi, Pauciulo, and Eckert Seamans and Plaintiffs and the Class. Based on such special, fiduciary relationship, Defendants Vagnozzi, Pauciulo, and Eckert Seamans also defrauded Plaintiffs and the Classes by omitting the material information alleged herein which was necessary to make their statements not misleading.

335.    Defendants made those materially false statements and omissions for the purpose of inducing Plaintiffs to rely on such statements and invest in the ABFP funds. Plaintiffs and the Classes did in fact rely on such representations by Defendants. Plaintiffs and the Classes would not have otherwise agreed to invest in the ABFP funds had they been aware of Defendants' materially false statements and omissions, alleged herein.

336.    Defendants also made the materially false statements and omissions alleged herein for the purpose of inducing Plaintiffs and the Classes to accept the Exchange Note offerings, which include broad releases of claims and waivers of the right to bring a class action, and did in fact induce Plaintiffs and the Class to rely on such materially false statements and omissions in accepting the Exchange Note offerings.

337.    The Private Placement Memorandum and Subscription Agreement that each ABFP investor received were substantially similar in all material respects. The Subscription Agreements required each investor in an ABFP fund to represent, and did in fact represent, that he or she "has received, read and fully understands the [Private Placement] Memorandum. Investor further acknowledges that Investor is basing Investor's decision to invest in the LP Interests solely on the [Private Placement] Memorandum and Investor has relied only on the information contained therein and has not relied upon any representations made by any other person."

338.    Plaintiffs' specific reliance on Defendants' misrepresentations and omissions, as reflected in the Private Placement Memorandum requirements and signed Subscription Agreements required in order to invest in a ABFP funds, was justifiable in that Defendants were issuers of securities under strict legal obligations to be truthful in their statements made to induce investors to rely on such statements and invest in the ABFP funds.

339.   Because of the Defendants' exclusive control over information relating to the operations, financial condition and controlling persons of the ABFP funds, Plaintiffs were required to rely, and certify their reliance, only on the offering documents and information provided by Defendants. Plaintiffs would have been unable to discover the truth, regardless of any level of due diligence or independent research they might have conducted. There were no independent means of verification available to Plaintiffs and the Classes of the true facts regarding the operations, financial condition and controlling persons of the ABFP funds.

340.   As a direct result of Defendants' false and misleading statements and omissions, their intent to induce Plaintiffs and the Classes to rely on such statements and omissions and invest in the ABFP funds, and Plaintiffs' justifiable reliance thereon, Plaintiffs and the Classes suffered damages in an amount to be determined at trial and punitive damages because the conduct of the Defendants alleged herein was not in good faith or in the best interests of the partnerships and constituted gross negligence, fraud and willful and wanton conduct.

## COUNT VI
## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

341.   Plaintiffs reallege and incorporate the allegations set forth herein as if fully stated herein.

342.   All Defendants were enriched at the expense of Plaintiffs and the Classes in that they received benefits, commissions, fees and other monetary benefits from the invalid sale of unregistered securities in the ABFP funds to investors, used investor funds for their own personal purposes, as alleged herein, and engaged in improper related party transactions and conflicts of interests to the detriment of investors, as alleged herein.

343.   It is against equity and good conscience to permit Defendants to retain such benefits, commissions, fees and personal benefits resulting from the sale of unregistered securities

to investors without a valid exemption from registration. Securities may only be sold if they are registered or exempt from registration pursuant to a valid exemption from registration. Defendants sold invalid unregistered securities to investors and received money and benefits at the expense of the investors in the ABFP funds. Defendants' receipt of such benefits as a result of inducing Plaintiffs and the Class to invest in the fraudulent and unregistered ABFP funds and subsequent use of investors' funds for personal purposes are not governed by any contract between investors and Defendants.

344.    Plaintiffs and the Classes were damaged by Defendants' unjust enrichment and seek disgorgement, restitution and return of the funds they invested in the invalid unregistered securities offerings and the commissions, fees and other benefits retained by the Defendants which equity and good conscience make it improper for Defendants to retain.

**COUNT VII**
**AIDING AND ABETTING FRAUD BY ALL DEFENDANTS**

345.    Plaintiffs reallege and incorporate the allegations set forth herein as if fully stated herein.

346.    As alleged herein, all Defendants have committed fraud with respect to the offering and management of the invalid unregistered securities offerings of the ABFP funds.

347.    As alleged herein, all Defendants had knowledge of the fraud and substantially assisted in the achievement of the fraud.

348.    Each Defendant, with knowledge of the fraud, aided and abetted the other Defendants in perpetrating the fraud.

349.    As a direct result of each Defendant's aiding and abetting the fraud of the other Defendants, Plaintiffs and the Classes suffered damages in an amount to be determined at trial and seek punitive damages.

## COUNT VIII

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY BY ALL DEFENDANTS

350.    Plaintiffs reallege and incorporate the allegations set forth herein as if fully stated herein.

351.    As alleged herein, Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, and non-parties ABFP and ABFP Management breached their fiduciary duties to Plaintiffs and the Classes.

352.    By orchestrating the offering and sale of unregistered securities without a valid exemption from registration, all Defendants knowingly assisted and participated in the breaches of fiduciary duty by Defendants, including Vagnozzi, Pauciulo and Eckert Seamans, and non-parties ABFP and ABFP Management.

353.    As a direct result of each Defendant aiding and abetting the other Defendants' breaches of fiduciary duty, Plaintiffs and the Classes suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a)    Determining that Defendants are jointly and severally liable;

b)    Ordering Defendants to repay Plaintiffs and the Classes all principal, interest and fees previously paid to Defendants in connection with the ABFP Merchant Cash Investments (Spartan Income Fund, LLC, Pisces Income Fund LLC, Capricorn Income Fund I, LLC, and Merchant Services Income Fund, LLC); the ABFP life settlement funds (Pillar Life Settlement Funds 1-8); the ABFP litigation funding investments (Atrium Legal Capital funds 1-4); ABFP real estate investments

(including Woodland Falls Investment Fund, LLC); and other alternative asset
investments (including Fallcatcher, Inc. and Promed Investment Co., L.P.)

c)    Awarding Plaintiffs and the Classes direct and consequential damages, including
      prejudgment interest;

d)    Awarding Plaintiffs and the Classes treble damages;

e)    Awarding Plaintiffs and the Classes their attorney's fees and costs incurred in this
      action; and

f)    Granting further relief, in law or equity, as this Court may deem appropriate and
      just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all claims that may be so tried.

Dated: November 12, 2020                 Respectfully submitted,

                              By:  _____/s/ Eric Lechtzin_____
                                   Eric Lechtzin (PA ID 62096)
                                   Marc H. Edelson (PA ID # 51834)
                                   **EDELSON LECHTZIN LLP**
                                   3 Terry Drive, Suite 205
                                   Newtown, PA 18940
                                   Telephone: (215) 867-2399
                                   Facsimile: (267) 685-0676

                                   Email: elechtzin@edelson-law.com
                                   Email: medelson@edelson-law.com

                                   Robert J. Kriner, Jr.*
                                   Scott M. Tucker*
                                   Tiffany J. Cramer*
                                   **CHIMICLES SCHWARTZ KRINER &**
                                   **DONALDSON-SMITH LLP**
                                   222 Delaware Avenue, Suite 1100
                                   Wilmington, DE 19801
                                   Tel.: 302-656-2500
                                   Fax: 302-656-9053
                                   rjk@chimicles.com
                                   ScottTucker@chimicles.com

Steven A. Schwartz (PA ID # 50579)
**CHIMICLES SCHWARTZ KRINER &**
**DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610-642-8500
Fax: 610-649-3633
steveschwartz@chimicles.com

Jeffrey C. Schneider*
Jason Kellogg*
Victoria J. Wilson*
**LEVINE KELLOGG LEHMAN**
**SCHNEIDER + GROSSMAN LLP**
201 South Biscayne Boulevard
Miami Center, 22nd Floor
Miami, FL 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789
jcs@lklsg.com
jk@lklsg.com
vjw@lklsg.com

and

Scott L. Silver*
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone: 954.755.4799
ssilver@silverlaw.com

*ATTORNEYS FOR PLAINTIFFS*

*Pro Hac Vice* Application Forthcoming